MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: fpetersen@mcrazlaw.com
irothschild@mcrazlaw.com

By: Frederick J. Petersen, #19944
Isaac D. Rothschild, #25726
22003-1/mbt

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| DAVID K. CROWE and COLLEEN M. CROWE, | No. 4:19-bk-04406-BMW |
| Debtors. | |

**AMENDED DISCLOSURE STATEMENT IN SUPPORT OF AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED AUGUST 14, 2019 PROPOSED BY DAVID K. CROWE AND COLLEEN M. CROWE**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1
    A.   Purpose of this Document ................................................................. 2
    B.   Confirmation Procedures.................................................................... 3
    C.   Disclaimers........................................................................................ 3
II.  BACKGROUND ............................................................................................ 5
    A.   Description of Debtors' Employment and/or Business............................. 5
    B.   Events Leading to Chapter 11 Filing.................................................... 6
    C.   Significant Events During the Bankruptcy.............................................. 8
    D.   Assets of the Debtor ........................................................................ 17
III. SUMMARY OF THE PLAN OF REORGANIZATION........................................... 19
    A.   Non-Voting Classes........................................................................... 20
    B.   Classified Claims............................................................................... 21
    C.   Cramdown and Absolute Priority Rule .................................................. 27
    D.   Acceptance or Rejection of Amended Plan. .......................................... 28
    E.   Means of Effectuating the Amended Plan............................................. 28
    F.   Feasibility ....................................................................................... 30
    G.   Liquidation Analysis ......................................................................... 31
    H.   Debtors' Disposable Income .............................................................. 32
    I.   Disbursing Agents ........................................................................... 33
IV.  TREATMENT OF MISCELLANEOUS ITEMS .................................................... 33
    A.   Executory Contracts and Unexpired Leases.......................................... 33
    B.   Retention of Jurisdiction .................................................................. 34
    C.   Procedures for Resolving Contested Claims.......................................... 36
    D.   Notices Under the Amended Plan ........................................................ 37
V.   EFFECT OF CONFIRMATION OF PLAN........................................................... 37
    A.   Discharge......................................................................................... 37
    B.   Re-vesting of Property in Debtors....................................................... 38
    C.   Modification of Amended Plan ............................................................ 38
    D.   Post-Confirmation Conversion/Dismissal.............................................. 38
    E.   Post-Confirmation Quarterly Fees ...................................................... 39

# I.  **INTRODUCTION**[1]

David K. Crowe and Colleen M. Crowe ("Debtors" or "Proponent") are the debtors in a Chapter 11 bankruptcy case. On April 12, 2019, the Debtors commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the Bankruptcy Code. This document is the *Amended Disclosure Statement in Support of the Amended Chapter 11 Plan of Reorganization Dated August 14, 2019 Proposed By David K. Crowe And Colleen M. Crowe* (the "Amended Disclosure Statement"), and it is provided to help you understand the *Amended Chapter 11 Plan of Reorganization Dated August 2, 2019 Proposed By David K. Crowe And Colleen M. Crowe* (the "Amended Plan") filed separately with the Court and attached as Exhibit 1.

Under the Bankruptcy Code, the Debtors, and under some circumstances, creditors and other parties in interest, may propose a plan. The plan may provide for the Debtors to reorganize their debts, to liquidate by selling assets of the estate, or a combination of both. The Debtors are proposing the Amended Plan sent to you along with this document.

The Debtors propose a reorganizing plan. The Debtors will make payments under the Plan over time from their exempt assets, and from a new business venture. Mr. Crowe is employed by EnerTech-AI Texas, LLC ("EnerTech-AI"). As an employee, Mr. Crowe will be paid a salary of $200,000.00 per year. This salary will allow the Debtors to make their Plan payments.  Additionally, the Debtors will pledge $50,000.00 of their otherwise exempt assets to make Effective Date payments. The Effective Date of the proposed Amended Plan is thirty days from an Order confirming the Amended Plan. If there are no objections to the Amended Plan, the Effective Date is anticipated to be October 31, 2019.

---

[1] Unless otherwise indicated, capitalized terms herein correspond with capitalized terms in the Amended Plan.

### A. Purpose of this Document

This Amended Disclosure Statement summarizes what is in the Amended Plan. It also provides information relating to the Amended Plan and the process the Bankruptcy Court follows to determine whether or not to approve the Amended Plan.

> **READ THIS AMENDED DISCLOSURE STATEMENT CAREFULLY TO LEARN**
>
> **(1)     WHO CAN VOTE FOR OR AGAINST THE PLAN;**
>
> **(2)     WHO CAN OBJECT TO THE PLAN;**
>
> **(3)     THE PROPOSED TREATMENT OF YOUR CLAIM, i.e. what you will receive if the Plan is confirmed, AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN A CHAPTER 7 LIQUIDATION;**
>
> **(4)     THE HISTORY OF DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**
>
> **(5)     WHAT THE BANKRUPTCY COURT WILL CONSIDER WHEN DECIDING WHETHER OR NOT TO CONFIRM THE PLAN;**
>
> **(6)     THE EFFECT OF CONFIRMING THE PLAN; AND**
>
> **(7)     FEASIBILITY OF THE PLAN.**

Be sure to read the Amended Plan as well as the Amended Disclosure Statement. If there are any inconsistencies between the Amended Plan and the Amended Disclosure Statement, the Amended Plan provisions will govern. This Amended Disclosure Statement cannot tell you everything about your rights in this case. You should consider consulting with a lawyer to obtain advice on how the Amended Plan will affect you and what is the best course of action for you.

This Amended Disclosure Statement is provided to each creditor whose claim has been scheduled by Debtors or who has filed a proof of claim against Debtors. Under the

Code, your acceptance of the Amended Plan may not be solicited unless you receive a copy of this Amended Disclosure Statement.

Bankruptcy Code §1125 requires a disclosure statement to contain "adequate information" concerning the plan. The term "adequate information" is defined as, "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Amended Plan. See 11 U.S.C. §1125(a)(1).

### B. Confirmation Procedures

Persons Potentially Eligible to Vote on the Amended Plan:

In determining acceptance of the Amended Plan, votes will only be counted if submitted by a Creditor whose Claim (1) is scheduled by Debtors as undisputed, non-contingent, and unliquidated, (2) was filed prior to the hearing on confirmation of the Amended Plan and to which no objection has been filed, (3) has been temporarily allowed by the Bankruptcy Court for voting purposes, or (4) has been allowed by the Court. The Ballot Form you received does not constitute a proof of claim. The Clerk of the Bankruptcy Court will not provide this information by telephone.

THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS AMENDED DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. IF, HOWEVER, THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON DEBTORS AND ON ALL CREDITORS IN THIS CASE.

### C. Disclaimers

The financial data relied upon in formulating the Amended Plan is based on the records and opinions of the Debtors as well as their knowledge of the debts. The information

contained in this Amended Disclosure Statement is provided by the Debtors. The Proponent represents that everything stated in this Amended Disclosure Statement is true and correct to the best of Debtors' knowledge. No other statements or information are authorized except as contained in this Amended Disclosure Statement.

BECAUSE THE DEBTORS EXPRESS NO TAX ADVICE, IN NO EVENT WILL THESE DEBTORS OR THEIR PROFESSIONAL ADVISORS BE LIABLE FOR ANY TAX CONSEQUENCES OF THE PLAN. CREDITORS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THE PLAN.

NO REPRESENTATIONS CONCERNING ANY OF THESE DEBTORS OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS AMENDED DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS TO OBTAIN YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED. THE DEBTORS ARE UNABLE TO REPRESENT THAT THE INFORMATION HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH THE INFORMATION DISCLOSED IS ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION, AND BELIEF.

THE BANKRUPTCY COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE COURT ENDORSES OR APPROVES THE PLAN, BUT ONLY THAT IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS TO MAKE AN INFORMED DECISION WHETHER TO ACCEPT OR REJECT THE PLAN.

In addition to the disclosures the Debtors make herein, included as Exhibit 6 are Controverting Statement of Turbine Powered Technology, LLC (Dkt. 132) and the Official

Committee of Unsecured Creditors' Controverting Statements to Debtors' Amended

Disclosure Statement (Dkt. 133).

**PLEASE NOTE THAT THE APPROVAL OF THIS AMENDED DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY, OR DESIRABILITY OF THE PLAN.**

## II.     BACKGROUND

### A.     Description of Debtors' Employment and/or Business

Mr. David Crowe is a control engineer in the business of designing, installing, and fine-tuning control systems for turbine engines used for aviation, and other industrial applications, including oil and gas production by hydraulic fracturing. He is an owner and Chief Executive Office of Arizona Turbine Technology, Inc. and CE-Systems, Inc. ("CE-Systems). He has committed himself full-time to these businesses and as recently as 2017 was making in excess of $130,000.00 per year from his work. At the time of the bankruptcy filing, David Crowe was unemployed. Since the bankruptcy filing, Mr. Crowe began employment at EnerTech-AI where he is making $200,000.00 per year. Mrs. Colleen Crowe is not currently employed.

Mr. Crowe's employment with Arizona Turbine Technology, LLC ended prior to the Petition Date. He received one post-petition payment for pre-petition work. He then began his employment with his current employer. As Mr. Crowe testified at his 341 creditors meeting, CE-Systems transferred certain technology to EnerTech-AI for CE-Systems' interest in EnerTech-AI. The other members also transferred certain assets. EnerTech-AI then received a $2,550,000.00 loan. As a result, EnerTech-AI has adequate funds available to operate and pay Mr. Crowe his salary, but as a start-up is not believed to have equity in excess of its debt.

### B.     Events Leading to Chapter 11 Filing

On January 6, 2017, the 16th Judicial District Court for the Parish of West St. Mary in Louisiana entered an injunction by default against Arizona Turbine Technology, Inc., Arizona Turbine Technology, LLC, and four other Defendants (Kent Ellsworth, Kenneth Braccio, Advanced Turbine Services, and Turbine Integrated Power Solutions). Notably, the Debtors are not named as enjoined parties. The Order Granting Preliminary Injunction is attached as Exhibit 2 and provides, in summary, that certain Defendants are enjoined and restrained from actions that breach the following agreements and that concern software and/or hardware for industrial turbine engine controls for T-55 and TF40 engines, particularly for use in hydraulic fracturing equipment:

- Vendor Agreement by and between Advanced Turbine Services and Turbine Powered Technology, LLC;

- Employment Agreement and Non-Disclosure Agreement between Turbine Powered Technology, LLC and Kenneth Braccio;

- Non-Disclosure Agreement between Green Field Energy Services, Inc. and Tucson Embedded Systems, Inc.; and

- Turbine Driven Equipment License Agreement between Turbine Powered Technology, LLC and Green Fields Energy Services, Inc.

Turbine Powered Technology, LLC ("Turbine Powered Technology") has suggested the Debtors' proposed plan is not feasible because it relies upon use of Turbine Powered Technology's trade secrets. Turbine Powered Technology was invited to describe their trade secrets to accompany this Disclosure Statement and Turbine Powered Technology elected not to include any description of its trade secrets.

Although David Crowe, who is a Defendant in the lawsuit, was not named in the injunction or enjoined from any actions except in his role as an officer and then employee of Arizona Turbine Technology, Mr. Crowe's business was stopped as no third-parties would

do business with him. Significant contracts were cancelled, and projects were halted out of fear of the injunction. As a result, the Crowe's family income was reduced to $30,384.62 in 2018. The Crowes have decimated their savings and have not been able to pay their obligations including unsecured creditors, legal bills, and taxes as they come due. In danger of defaulting on their mortgages and car loans, the Debtors filed bankruptcy.

Since the filing, David Crowe was employed by EnerTech-AI. David Crowe's employment at EnerTech-AI depends in part on his ability to devise and deploy digital controls use in turbine-powered hydraulic fracturing in oil and gas production. The salary of $200,000.00 per year will allow Mr. Crowe to pay back allowed unsecured claims and to pay at least his disposable income for five years and receive a discharge.

The Debtors are Plaintiffs and Defendants in several pending matters described in detail below. The breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, fraudulent conveyance, interference with contract, fraudulent concealment, fraudulent misrepresentation, and defamation by third parties have caused damages to the Debtors which have also prevented the Debtors from being able to pay their obligations current. As and when recoveries are made in such pending litigation, proceeds will be used to repay creditors.

CE-Systems transferred certain technology to EnerTech-AI for CE-Systems' interest in EnerTech-AI. For a detailed description of the transferred technology and additional information, please refer to Sections II.A., II.C.4., and II.D.

On April 2, 2019, Jeremy Nicolaides lent $1,575.00 to the Debtors who, in exchange, granted Mr. Nicolaides a UCC security interest in a Hyster Lift Truck that is valued at $8,000.00. The UCC was filed with the Arizona Secretary of State on April 3, 2019.

On April 2, 2019, Kenneth Braccio, Michael Sherwood, and Elden Crom lent $20,000.00 to the Debtors who, in exchange, granted Mr. Braccio, Mr. Sherwood, and Mr.

Crom a UCC security interest in various tools, equipment, and furniture. The UCC was filed with the Arizona Secretary of State on April 3, 2019.

### C.  Significant Events During the Bankruptcy
#### 1.  Bankruptcy Proceedings

This Amended Disclosure Statement and Amended Plan are being filed pursuant to representations made by the Debtors in their *Response To Objections To Disclosure Statement Filed By: 1)  Turbine Powered Technology, LLC, 2)  Official Committee Of Unsecured Creditors, and 3)  Lindsay Brew* (See Docket No. 112), the representations made to the Court at hearing on July 17, 2019, and the direction of the Court in its *Order for an Amended Disclosure Statement* (See Docket No. 114).

The Debtors filed a *Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Estate Holds a Substantial or Controlling Interest* and an errata thereto.  (Docket Nos. 42 and 78). These filings include detail about the assets and affairs of the entities owned by the Debtors. The Debtors file their Operating Reports each month. (Docket Nos. 38, 82, 117) The Debtors filed their schedules at the same time as the Petition and they subsequently amended them to note the existence of their family trust created for estate planning purposes. (Docket Nos. 1, 25, 26, 83)  There are no assets in the family trust that were not originally listed on the Debtors' schedules.

Turbine Powered Technology has filed an adversary complaint against the Debtors alleging willful and malicious injury; embezzlement and larceny; fraud; and material, willful false statements by Debtors. The complaint restates many of the claims asserted in the lawsuit brought in Louisiana for which the preliminary injunction was issued.  The complaint has not been served upon the Debtors.  The Debtors dispute the allegations in the Complaint.

## A. Employment of Professionals.

The Debtors obtained court approval of the employment of Mesch Clark Rothschild as bankruptcy counsel. After hearing on objections to Meade Young, LLC's ("Meade Young") employment and additional disclosure, the Debtors obtained court approval of the employment of Meade Young as special counsel to represent them in the following cases currently being litigated in Louisiana and Arizona, with fees and costs to be paid on a contingency subject to further order by this Court:

1. Arizona Turbine Technology, Inc., et al. v. Turbine Powered Technology, LLC, et al., W.D. La. Civil Action No. 2017-386;

2. Turbine Powered Technology, LLC v. David Crowe, et al., W.D. La. Civil Action No. 2017-801, removed from the 16th JDC for the Parish of West St. Mary, State of Louisiana, No. 130379; and

3. Crowe et ux. v. Tucson Embedded Systems, Inc., et al. Pima Co. Superior Court, Tucson, Arizona, No. C-2017-4933.

Meade Young represents Debtor David Crowe, Ken Braccio, Advanced Turbine Services, LLC, and Arizona Turbine Technology, Inc. under a 40% contingency-fee contract and joint representation agreement.

Meade Young has subcontracted with Taylor Townsend to assist in the above pending litigation. In that role, Meade Young is entirely responsible for all fees and costs incurred by Mr. Townsend. The Debtors are not, and never will be, responsible for fees and costs incurred by Mr. Townsend. As a subcontractor to Meade Young, Mr. Townsend also represents Debtor David Crowe as well as co-parties Kenneth Braccio and Arizona Turbine Technology, Inc., creditors of the Debtors. The fee agreement between Meade Young and Mr. Townsend provides that Mr. Townsend will share in the Meade Young 40% contingency fee.

The Committee (as described below) obtained court approval to employ the law firm of Jennings, Strouss & Salmon, P.L.C. as its counsel. The Debtors have reserved their rights to object to the fees of Jennings, Strouss, and Salmon, P.L.C. based on concerns in the formation of the Committee.

## B. Unsecured Creditors Committee.

The United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee"). After an amendment, the current members of the Committee are Lindsay Brew of Miller, Pitt, Feldman & McAnally, Dennis Kenman of Tucson Embedded Systems, Inc. ("Tucson Embedded Systems") and Ted McIntyre of Turbine Powered Technology.

## C. Team Vesco Agreement.

The Debtors sought court approval for the Debtors to enter into a post-petition agreement for services between EnerTech-AI, David Crowe, and Team Vesco Racing ("Team Vesco"). After hearing, the Court ordered that it will exercise permissive abstention as to the narrow issues raised in the context of the motion: (a) whether Mr. Crowe is subject to the injunction and (b) if so, whether the contract with Team Vesco necessitates the use of the enjoined technology. The Court also ordered that: 1) the Debtors may proceed at their discretion in the state court action[2] to obtain such determination and if the Debtors choose not to proceed, the stay as it relates to the Debtors in the state court action remains in place; and 2) in the event the judge in the state court action determines that Mr. Crowe is not subject to the injunction, or even if he is, that the contract with Team Vesco would not require the use of the enjoined technology, then the Debtors may submit a form of order approving the relief requested.

To date the Debtors have not sought to proceed further in the state court action for matters related to the Team Vesco Agreement.

---

[2] *Turbine Powered Technology, LLC vs. David Crowe, et al.*, Case No. 130379 pending in the 16th Judicial District Court for the Parish of West St. Mary in Louisiana.

### D. Stay Relief.

The Debtors sought stay relief to pay certain amounts owed to the Arbitrator in an arbitration between Tucson Embedded Systems and the Debtors (Docket No. 55). Tucson Embedded Systems filed a limited objection (Docket No. 57). The Debtors and Tucson Embedded Systems stipulated, in part, to allow the arbitrator to draw down a retainer of $4,191.75 (Docket No. 98). Tucson Embedded Systems sought stay relief to allow the arbitrator in a pending action to issue a ruling on a fully briefed and argued Motion for Summary Judgment. (Docket No. 55).[3] The Debtors opposed the requested relief. (Docket No. 84). The Court ruled that based on the issue before the Court, the stay is not applicable. The Court entered its Order authorizing the Arbitrator to proceed with his ruling on July 29, 2019 (Docket No. 124). The Court reserved all parties' rights as to matters not brought before the Court. As of the date of this Disclosure Statement, the arbitrator has not entered a ruling. The Court did not rule on the Debtors' related Motion to Compel Turnover filed against Tucson Embedded Systems, which is still pending.

### E. Plan and Disclosure Statement.

The Court entered an *Order Setting And Notice Of: 1. Hearing To Consider Approval Of Disclosure Statement; and 2. Deadline For Filing Proof Of Claim (*Docket No. 49). The Debtors served a copy of the Order, together with the initial Plan and Disclosure Statement, on all creditors and parties in interest. Three creditors objected to approval of the initial Disclosure Statement and the Debtors responded to those objections. After hearing on July 17, 2019, the Court entered an *Order for Amended Disclosure Statement* (Docket No. 114).

### F. Adversary Proceeding

On July 22, 2019, Turbine Powered Technology filed an adversary complaint for non-dischargeability for the full amount of their claim of not less than $30,014,536.82

---

[3] *David and Colleen Crowe vs. Tucson Embedded Systems, Inc.,* Case No. C20174904 pending in Pima County Superior Court in Arizona.

pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(4), 523(a)(6) and 727(a)(4). As of this date, the Complaint has not been served. The Debtors dispute the asserted claims.

## 2. Other Legal Proceedings

In addition to the bankruptcy proceedings discussed above, Debtors are involved in three significant non-bankruptcy legal proceedings. The Debtors are willing to engage in mediation on any of these proceedings using the Bankruptcy Court's Alternative Dispute Resolution program during the bankruptcy, if not resolved the Debtors intend to pursue all these claims post-confirmation for the benefit of the Debtors' Estate:

i) **Crowe v. Tucson Embedded Systems, Inc., Dennis and Marisol Kenman, Sean and Carol Mulholland, Antonio and Shirly Procopio.**

   a) **Venue**: Arbitration in Pima County, Arizona, before Peter Collins.

   b) **Status**: Based on the record before the Court, the Court determined that the stay is not applicable to this action.

   c) **Claims Asserted**: Breach of Contract for Purchase Term Sheet - $62,500.00, legal fees, and interest against Tucson Embedded Systems for failure to pay on Term Sheet; Breach of Contract (Tucson Embedded Systems), Breach of Covenant of Good Faith and Fair Dealing (Tucson Embedded Systems), Fraudulent Conveyance (All Defendants), Interference with Contract (All Defendants), Fraudulent Conveyance (All Defendants), Fraudulent Misrepresentation (All Defendants) relating to term sheet, confidentiality agreement, and concurrent deal made with Turbine Powered Technology – alleged damages $10,600,000.00 and punitive damages.

   d) If the Debtors are successful as Plaintiffs, this action may generate proceeds to pay all currently allowed secured and unsecured claims in full upon collection. If the Debtors are not successful, there may be attorney's fees that the Debtors are required to pay as an unsecured claim against the bankruptcy

12

estate.

e)    When the stay is lifted, this matter will continue to be pursued on a contingency basis, with the attorney advancing costs so the cost to the Estate is minimal, if any.

**ii)    Crowe, et al v. Turbine Powered Technology, LLC, et al.**

a)    **Venue**: United States District Court Western District of Louisiana, 17-cv-0386.

b)    **Status**: This matter has been stayed as it relates to the Debtors.

c)    **Claims Asserted**: The Debtors, along with co-plaintiffs, have brought claims against Turbine Powered Technology, Marine Turbine Technology, LLC, Ted McIntyre, II, and Evanston Insurance Company for damages under the Louisiana Unfair Trade Practices Act, for defamation, and for tortious interference with business expectancy. The Plaintiffs assert damages in an amount not less than $100,000,000.00.

d)    If the Debtors, as Plaintiffs, are successful there will be sufficient resources to pay all allowed claims secured and unsecured claims upon collection.

e)    When the stay is lifted, this matter will continue to be pursued on a contingency basis, with the attorney advancing costs so the cost to the Estate is minimal, if any.

**iii)    Turbine Powered Technology, LLC v. Crowe, et al.**

a)    **Venue**: United States District Court Western District of Louisiana, 19-cv-0475.

b)    **Case Status**: This matter has been stayed as it relates to the Debtors.

c)    **Claims Asserted**: Indemnification against Tucson Embedded Systems and Plaintiffs in Reconvention for a wrongful injunction against Turbine Powered Technology in the amount

not less than $100,000,000. Additionally, the Debtors may have or may seek leave of the Bankruptcy Court to amend their counterclaims to include a prayer for a declaratory judgment that the Debtors have not infringed upon patent 078.

d)  This lawsuit involves multi-million dollar claims by the Plaintiff against the Defendants and counterclaims by the Defendants against the Plaintiff. If the Debtors are successful in their counterclaims there will be sufficient funds to pay all claims secured and unsecured in full. If the Debtors are not successful there may be significant damages levied against the Debtors. Such a damage award would leave insufficient funds including the Debtors' net disposable income and new value contribution to pay all creditors in full.

e)  When the stay is lifted, this matter will continue to be pursued on a contingency basis, with the attorney advancing costs so the cost to the Estate is minimal, if any.

### 3. Actual and Projected Recovery of Preferential or Fraudulent Transfers

$0.00 is estimated to be realized from the recovery of fraudulent and preferential pre-petition transfers. The Debtors and their professionals are still investigating potential preferential or fraudulent transfers but are not aware of any, as all the Debtors' payments were made in the ordinary course and no preferences or fraudulent payments are expected. The Debtors' Statement of Financial Affairs lists all payments made within ninety days of the bankruptcy to creditors or within one year to creditors that are insiders. For additional information, please refer to Sections II.A., II.C.4., and II.D. herein.

### 4. Procedures Implemented to Resolve Financial Problems

In an effort to remedy the problems that led to the bankruptcy filing, Debtors have undertaken affirmative steps in anticipation of emerging from bankruptcy.

Mr. Crowe has ceased employment with Arizona Turbine Technology. Although he remains an owner of that entity, the Debtors are conducting no business through Arizona

Turbine Technology, or on behalf of Arizona Turbine Technology until at least after all related litigation is resolved.

Mr. Crowe has started employment with EnerTech-AI, in which the Crowes' entity, CE-Systems has a 40% ownership interest. The other owners of EnerTech-AI are DFNCM II, LLC (40%) and Chris Boswell (20%). David Crowe will receive a salary of $200,000.00 per year.

The Debtors will provide 25% of their interest in CE-Systems to Elden Crom - a key employee of EnerTech-AI.

In exchange for the 40% interest in EnerTech-AI, CE-Systems transferred certain cloud-based software developed after the imposition of the injunction that monitors the performance of certain fracturing pumps. Specifically, CE-Systems transferred cloud based applications that analyze data; window based applications including "Pumpdown," "MultiPumpMgr" and "Data Scope"; Aviation ATDEC FADEC; "CloudGateway"; "DataCon"; Conventional Pump Control software and hardware designs that match the 10 Ecostim Conventional PumpDown Pumps and Industrial Generator packages. The transferred conventional pump controls are standard in the industry and contain no proprietary information. The FADEC (full authority digital engine controller) is modified pursuant to a patent that is pending as no. 62,635,085 and a rapid prototype aviation platform being marketed to Honeywell. Any and all information, practices, or technology claimed by Turbine Powered Technology in its suit against the Debtors remained in CE-Systems and/or Arizona Turbine Technology, and was completely segregated from the future business of EnerTech-AI.

Enertech-AI intends to develop controls to utilize natural gas as a transition fuel to reduce the carbon footprint of turbines used in the hydraulic fracturing for oil and gas production and other industrial uses. Enertech-AI also intends to work on improvements to engine controls used in the aviation industry, then further develop such controls for various

industrial uses. Enertech-AI has not and will not use any technology owned by any of the Defendants in the lawsuit described above, *Turbine Powered Tech. LLC v. Crowe et al*, Western District of Louisiana, 19-475. In addition to others, EnerTech-AI intends to purchase T53 generators and turbine services and parts for the oil and gas industry from John Arruda and Turbine Marine, Inc. EnerTech-AI will upgrade these units with their existing cloud enabled turbine controls for deployment.

As David Crowe is not an enjoined Defendant, Enertech-AI has, and since David Crowe was employed, will continue to develop digital controls for turbine-powered hydraulic fracturing equipment and other industrial equipment. Enertech-AI will sell, transfer or use hydraulic fracturing equipment and computer programs related to several turbine engines including but not limited to T53, TF40 or T-55 digital control systems. EnerTech-AI will perform services and provide goods related to turbine engine controls for hydraulic fracturing including but not limited to T-55 and/or TF40 engines. This includes using, selling, transferring and disclosing information, goods and/or services which contain or are based on the TF40 and/or T-55 engine controls including controllers, FADECs, electronic fuel valves, digital industrialized controls and mechanical or analytical work, and engineering/customer support associated with the aforementioned controls and engines.

EnerTech-AI will work with and sell engines packages that use digital controls with electronic fuel valves and industrial digital engine controllers for industrialized non-aero and aero use and controls related to hydraulic fracturing and power generation.

Enertech-AI will design, lease, and sell new equipment based on turbines for industrial use and the oil and gas industry. These systems will include generators and hydraulic fracturing equipment.

EnerTech-AI is not limiting its potential customers.

EnerTech-AI will use digital control systems for T53, TF40, or T-55 engines, but these are not the intellectual property of any other party including any of the other Louisiana Defendants and Turbine Powered Technology and/or Green Field Energy Services, Inc.

EnerTech-AI will not contact for business purposes or hire any Green Field Energy Services, Inc.'s management employees.

Except for purchasing non-proprietary turbine engines, turbine engine parts, turbine services from Kenneth Braccio, Advanced Turbine Services, LLC et al., EnerTech-AI will not work in concert or participation with any of the enjoined Defendants from the *Turbine Powered Technology, LLC v. Crowe* case. The Defendants in the *Turbine Powered Technology, LLC v. Crowe* case are not enjoined from selling turbines, turbine parts, or turbine services. These procedures for implementing the Amended Plan are proposed in good faith, not by any means forbidden by law.

### 5. Current and Historical Financial Conditions

The Debtors were current on all obligations until the imposition of the injunction on the Debtors' business by the Louisiana state court in *Turbine Powered Technology, LLC v. Crowe et al,* now removed to the Western District of Louisiana. in the Louisiana court. The Debtors have not been able to make some of their required payments to unsecured creditors since the imposition of the injunction.

The Debtors have filed will continue to file Monthly Operating Reports prior to Confirmation of the Debtors' Amended Plan of Reorganization. To review the Debtors' performance post-petition, Creditors should review Monthly Operating Reports filed in this case.

### D. Assets of the Debtor

As of the Petition Date, the Debtors own a residence located at 3650 W. Camino Christy, Tucson, Arizona 85742 valued at $450,000 based on the estimate of David Crowe

and based on sales of similar houses in the neighborhood. The Debtors own a 2012 MKZ-Hybrid with 123,000 miles – the Debtors value this vehicle at $3,205, the Debtors own a 2008 Toyota Tacoma with 150,000 miles – the Debtors value this vehicle at $4,000, the Debtors own a 2016 Toyota Tacoma with 66,000 miles – the Debtors value this vehicle at $12,469, the Debtors own a non-motorized boat valued at $500, and the Debtors own a Hyster Lift Truck valued at $8,000. The Debtors also own household goods and furnishings valued at $3,000, electronics valued at $200, certain workout equipment valued at $250, wardrobes valued at $500, a wedding ring and costume jewelry valued at $400, six pets with no material value, cash on the Petition Date of $250, ten bank accounts totaling $66,916, two brokerage accounts with $40,700 and stock in Southwest Airlines of $14,175.48.

The Debtors own 100% of CE-Systems which owns 40% of EnerTech-AI. CE-Systems also owns a Turbine Pump Controller for use in hydraulic fracing operations subject to a license with Arizona Turbine Technology and an iTpc Turbine Controller for use in hydraulic fracing operation subject to a license with Arizona Turbine Technology. These two assets contain information that is subject to the pending litigation in Louisiana and were excluded from the transfer to EnterTech-AI.

The assets of EnerTech-AI include trailer mounted turbine-driven high-pressure pumps for use in hydraulic fracturing for oil and gas operations. An adverse party in the litigation discussed in this Amended Disclosure Statement, Turbine Powered Technology, claims these systems as its exclusive trade secrets in the lawsuits described above. However, the units now owned by Enertech-AI were sold pursuant to a different bankruptcy court process, free and clear of all liens, claims and interests.

The Debtors own 100% of Arizona Turbine Technology whose assets include licenses from CE-Systems to sell digital control systems and litigation claims. Arizona Turbine Technology's other assets are counter-claims against Turbine Powered Technology

both for monetary relief and also seek declaratory relief with regards to claims to ownership of technology used by the Debtors' companies.

The Debtors own 100% of Vida Gasline, LLC, which assets consist of $13,000.00 in liquid assets and $25,000.00 in real estate. The real estate value is based on the Debtors opinion of value and based on the closest active listing for vacant land as well as comparable sales. The liabilities are $0.00.

The Debtors have three retirement accounts with a value totaling $510,386.56. The Debtors claim an exemption for all such value.

The Debtors have claims against Tucson Embedded Systems including but not limited to $62,500.00 pursuant to a buy-out and for reimbursement for attorneys' fees of $28,212.50. The Debtors have numerous other claims against Tucson Embedded Systems that remain subject to litigation in contract and tort.

The Debtors also may have claims against Lindsay Brew for breach of fiduciary duty and perjury related to an affidavit filed in the Tucson Embedded Systems action prior to it being referred to arbitration.

The business values herein are based on the Debtors opinion and their knowledge of the debts and assets of each business.

## III.   SUMMARY OF THE PLAN OF REORGANIZATION

The Amended Plan classifies Claims in various Classes. The Amended Plan states whether each Class of Claims is Impaired or Unimpaired. The Debtors attach hereto as Exhibit 3 an analysis of filed proofs of claim and scheduled liabilities. The Amended Plan provides the treatment each Class will receive as follows:

## A.     Non-Voting Classes

Certain types of Claims are not entitled to vote. They are not considered Impaired and they do not vote on the Amended Plan because they are entitled to specific treatment provided for them under the Bankruptcy Code.

### 1.     Class 1—Administrative Expenses and Fees

Administrative Expenses are Claims for costs or expenses of administering Debtors' Chapter 11 case, which are allowed under Bankruptcy Code §503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case and are considered Administrative Expenses.

The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date of the Amended Plan, unless a particular claimant agrees to different treatment. The Bankruptcy Court must approve all professional compensation and expenses.

Each Professional Person requesting compensation in the case pursuant to Bankruptcy Code §§327, 328, 330, 331, 503(b) and/or 1103 shall file an application for allowance of final compensation and reimbursement of expenses not later than sixty (60) days after the Confirmation Date.

Nothing herein shall prohibit each Professional Person from requesting interim compensation during the course of this case pending Confirmation of the Amended Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

The Administrative Claims to be paid on the Effective Date, or as otherwise agreed by such Claimants are anticipated to total approximately $125,000.00 and are broken down as follows:

| Description | Estimate |
| --- | --- |
| Debtors' Estimated Administrative Attorneys' Fees and Costs After Applying Retainer | $50,000.00 |

| | |
|---|---|
| Debtors' Estimated Adversary Attorney Fees and Costs | $50,000.00 |
| Debtors' Estimated Administrative Case U.S. Trustee Quarterly Fees | $1,300.00 |
| Committee's Estimated Administrative Case Attorneys' Fees and Costs | $25,000.00[4] |
| **Estimated Total** | **$126,300.00** |

**B.    Classified Claims**

### 1.    Classes of Secured Claims

Secured Claims are Claims secured by liens on property of the estate.

The following represents all Classes containing pre-petition Secured Claims and their treatment under the Amended Plan.

### Class 2—Secured Claim of Quicken Loans Against Residence

| Class | Name of Creditor | Description of Collateral | Payment Terms |
|---|---|---|---|
| **2** | Quicken Loans | 3650 W. Camino Christy, Tucson, Arizona 85742 | Monthly principal and interest according to loan terms--Unchanged from contractual terms |

Quicken Loans holds a valid first position purchase money lien against the Debtors' residence located at 3650 W. Camino Christy, Tucson, AZ 85742 in the approximate amount of $140,167.76.

*The Class 2 claim of Quicken Loans will be allowed in its outstanding amount and repaid according to its terms. This Creditor's legal, equitable, and contractual rights*

---

[4] This is an estimate from the Debtors as to reasonable fees and costs for Committee Counsel. Committee Counsel provided an estimate of fees and costs totaling $100,000, which the Debtors do not believe reasonable, and reserve all rights to contest reasonableness of if later asserted in that amount.

*remain unchanged with respect to the above collateral. Quicken Loans will continue to be*
*paid according to its contractual terms, with no changes, until paid in full.*

**The Class 2 Quicken Loans Secured Claim is not Impaired and is not entitled to vote**.

### Class 3—Secured Claim of USAA Against Residence

| Class | Name of Creditor | Description of Collateral | Payment Terms |
|-------|------------------|--------------------------|---------------|
| 3 | USAA | 3650 W. Camino Christy, Tucson, Arizona 85742 | Monthly principal and interest at 5% per annum, amortized over 15 years |

USAA holds a valid second position lien against the Debtors' residence located at 3650 W. Camino Christy, Tucson, AZ 85742 in the approximate amount of $120,694.97. The lien arose from a home equity line of credit. The loan currently calls for monthly interest only payments and must be renewed annually.

*The Class 3 Claim of USAA will be converted to a fixed rate, fully amortizing loan. USAA will be repaid, in full, with interest at the rate of 5% per annum. USAA will be paid monthly principal and interest payments, amortized over a 15-year period.*

**The Class 3 USAA Secured Claims is Impaired and entitled to vote**.

### Class 4—Secured Claim of USAA against Toyota Tacoma

| Class | Name of Creditor | Description of Collateral | Collateral Value and Basis of Valuation | Payment Terms |
|-------|------------------|--------------------------|------------------------------------------|---------------|
| 4 | USAA | 2016 Toyota Tacoma | $12,469.00 (Debtor's Opinion of Value based on wear and tear) | Secured Claim equal to current value-- Monthly payments for 60 months at 5% interest |

USAA holds a valid lien against the Debtors' 2016 Toyota Tacoma in the approximate amount of $22,967.05. Debtors contend the value of 2016 Toyota Tacoma is less than the amount of the Claim.

*The Class 4 Claim of USAA will be allowed and paid in an amount equal to the value of the 2016 Toyota Tacoma, as established by Bankruptcy Court order or by stipulation of the Parties. The Debtors assert the current value is $12,469.00. The Debtors will pay the allowed Secured Claim in full with interest at a rate of 5% per annum from the Effective Date through 60 equal monthly payments. Payments will be due on the 15th day of the month, starting on the first full month following the Effective Date. Any remaining amount due to USAA will be allowed and treated as a General Unsecured Claim and will be treated in Class 8 below.*

**The Class 4 Claim of USAA is Impaired and entitled to vote**.

**Class 5 Secured Claim of Jeremy Nicolaides against Hyster Lift Truck**

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|-------|------------------|-----------|-----------|---------------|-----------------|------|
| **5** | Jeremy Nicolaides | Hyster Lift Truck Model H80XM | $1,575.00 | 5% | $69.10 | 24 months |

Mr. Nicolaides holds a valid first position lien against the Hyster Lift Truck Model H80XM in the amount of $1,575.00. Mr. Crowe uses this equipment in the businesses that he owns. The loan calls for monthly interest only payments with the principal payable on demand.

*The Class 5 Secured claim of Mr. Nicolaides will be allowed and repaid over a fixed term. The Debtors will pay the allowed Secured Claim in full with interest at a rate of 5% per annum from the Effective Date through 24 equal monthly payments. Payments will be due on the 15th day of the month, starting on the first full month following the Effective Date.*

**The Class 5 Claim of Jeremy Nicolaides is Impaired and entitled to vote**.

### Class 6 Secured Claim of Kenneth Braccio, Michael Sherwood, and Elden Crom

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|-------|------------------|-----------|-----------|---------------|-----------------|------|
| **Class 6** | Kenneth Braccio, Michael Sherwood, and Elden Crom | Welding Table, Work Benches, sensors, air compressor, generator, band saw, drill press, grinders, shelving units, refrigerator, valves, high volume water strainer, 12 CAN communication hubs ("Tools") | $20,000.00 | 5% | $377.42 | 60 months |

Mr. Braccio, Mr. Sherwood, and Mr. Crom hold a valid first position lien against various tools and equipment owned by the Debtors in the amount of $20,000.00. Mr. Crowe uses this equipment in the businesses that he owns. The loan calls for monthly interest only payments that are due on demand.

*The Class 6 Secured claim of Mr. Braccio, Mr. Sherwood, and Mr. Crom will be allowed and repaid over a fixed term. The Debtors will pay the allowed Secured Claim in full with interest at a rate of 5% per annum from the Effective Date through 60 equal monthly payments. Payments will be due on the 15th day of the month, starting on the first full month following the Effective Date.*

**The Class 6 Claim of Kenneth Braccio, Michael Sherwood, and Elden Crom is Impaired and entitled to vote**.

### 2. Classes of Unsecured Claims

### Class 7 Priority Tax Claims

Priority Tax Claims are Claims of governmental units for certain income, employment, and other taxes described under Bankruptcy Code §507(a)(8). These Claims

24

are entitled to priority and must be paid pursuant to Bankruptcy Code §§1129(a)(9)(C) and (D). These Claims are to be treated as follows:

| Class | Name of Creditor | Claimed Amount Owed and Tax Period | Payment Terms |
|-------|------------------|-----------------------------------|---------------|
| 7 | Internal Revenue Service | Claim filed for $33,100 for Tax Year 2018 | Repay allowed claim in full with 5% interest amortized over 60 equal monthly payments (approximately $622.75 per month). |
| 7 | ADOR | Claim Filed for $1,728.60 | Repay allowed claim in full with 5% interest amortized over 60 equal monthly payments. |

The Class 7 Priority Tax claims consist of any tax amounts owing for tax years 2018. The Debtors filed an extension, so have not yet filed their 2018 tax returns. Such claims will be allowed in amounts owed upon completion of such returns.

*The Class 7 Allowed Priority Tax Claims of the IRS and the ADOR will be allowed and paid in full along with interest at a rate of 5% per annum from the Effective Date through 60 equal monthly payments. Payments will be due on the 15th day of the month, starting on the first full month following the Effective Date.*

**These Claims are Impaired and Entitled to Vote.**

### Class 8 General Unsecured Claims

General Unsecured Claims are not entitled to priority under Bankruptcy Code §507(a). General Unsecured Claims include various unsecured obligations, as well as various obligations arising from ongoing litigation. General Unsecured Claims are only entitled to be treated under this Class 8 when such claims are allowed, either by agreement

of the Debtors, or a final order which is not subject to appeal, from the Bankruptcy Court. Total Scheduled and filed general unsecured claims are $30,573,198.66. $30,334,536.82 of such total represent disputed claims filed by Tucson Embedded Systems and Turbine Powered Technology. In addition to disputing these claims, the Debtors have asserted claims against such creditors which will also offset any claim by such parties. The Debtors believe allowable claims will total less than $200,000.

*Allowed Class 8 General Unsecured Claims will be paid from contributions of the Debtors over a period up to 5 years. Debtors will commit all of their projected non-disposable income for the next 60 months of $2,456.33 per month to payment of creditors. Such amounts will be used to pay any outstanding administrative expenses, then pay priority unsecured creditors (approximately $657.26 per month), and then distributed pro rata to General Unsecured Creditors. General Unsecured Creditors are expected to receive approximately $107,935.20 plus an Effective Date payment of at least $10,000.00 for a total of $117,935.20. To the extent additional Effective Date cash is available, it will also be paid to General unsecured Creditors.*

*Significant benefit is also contributed through the claim disallowance process related to claims filed by Tucson Embedded Systems and Turbine Powered Technology. In addition, General Unsecured Claims will be paid 25% of all gross proceeds recovered from the claims against Turbine Powered Technology, Tucson Embedded Systems, and Brew, as described in Section II.D above. Allowed General Unsecured Creditors will be paid from quarterly distributions of approximately $5,397.21 per quarter. If the Debtors make a greater payment in any quarter, such overpayment amount will credit against the last payments due under the Amended Plan, such that additional payments shorten the repayment period.*

*General Unsecured Claims will be entitled to a pro rata share of each quarterly distribution. If all General Unsecured Claims are paid in full before $117,935.20 plus 25%*

*of gross litigation proceeds are distributed to this class of creditors, payments will continue as if such claims accrued interest at a rate of 4% per annum from the Effective Date.*

*To the extent any General Unsecured Claims are not yet allowed, the Debtors will ask the Court to estimate those claims and the related pro-rata distribution for such claims will be held in a trust account until those claims are allowed at which time they will be distributed to the claimholder or disallowed at which time they will be distributed pro-rata to the remaining allowed claim holders.*

*Payments will be due on the 15th day following each calendar quarter, starting on the first full month following the Effective Date. The first and last quarterly payments will be prorated depending on the Effective Date relative to such calendar quarter.*

**Class 8 General Unsecured Claims are Impaired and entitled to vote.**

### C. Cramdown and Absolute Priority Rule

If a Class of Creditors does not accept the Amended Plan, Debtors will seek to obtain Confirmation through the cramdown provisions of Bankruptcy Code §1129(b). This means that the Amended Plan must be fair and equitable to the Class that does not accept the Amended Plan. The test for whether the Amended Plan is fair and equitable is found under Bankruptcy Code §1129(b).

The balance of this section only applies if a Class of Unsecured Claims does not accept the Amended Plan. In that instance, Debtors will seek Confirmation of the Amended Plan pursuant to Bankruptcy Code §1129(b). The Absolute Priority Rule is contained in Bankruptcy Code §1129(b)(2)(B).[5] If a Class of Unsecured Claims has not voted to accept the Amended Plan, the Absolute Priority Rule provides that Debtors may not retain property unless the holders of Claims in the Class are paid in full or unless a New Value Contribution is paid by the Debtors to aid confirmation of the Amended Plan.

---

[5] The 9th Circuit Court of Appeals has determined that the Absolute Priority Rule applies to individual chapter 11 cases. See *In re Zachary*, 811 F. 3d 1191 (9th Cir. 2016).

As a New Value Contribution, and to aid confirmation of their Amended Plan, the Debtors will contribute not less than $50,000.00 from other exempt assets and commit all projected disposable income for five years to pay its creditors.

## D. Acceptance or Rejection of Amended Plan.

Each Impaired Class of Creditors with Claims against Debtors' estate shall be entitled to vote separately to accept or reject the Amended Plan. A Class of Creditors shall have accepted the Amended Plan if the Amended Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the Allowed Claims of such Class that have voted to accept or reject the Amended Plan.

In the event that any Impaired Class of Creditors shall fail to accept the Amended Plan in accordance with Bankruptcy Code §1129(a), the Debtors reserve the right to request that the Bankruptcy Court confirm the Amended Plan in accordance with Bankruptcy Code §1129(b).

## E. Means of Effectuating the Amended Plan

### 1. Funding for the Amended Plan

The Amended Plan will be funded by the following:

a) Net Cash from liquidating non-exempt stock and brokerage accounts, after deducting 20% to pay estimated capital gains taxes. Such amount is anticipated to total approximately $40,000;

b) Cash from the Debtors' accounts, after reserving $25,000 for future business operations. Such amount is expected to total $41,000.

c) $50,000.00 of cash contributed by the Debtors raised from encumbering or liquidating otherwise exempt assets, all of which is new value from the Debtors, and will be made available to make Effective Date Payments;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

     d)     Projected disposable income from the 60 months following the Effective Date of not less than $147,379.80, or until all claims are paid in full whichever comes first.  Projected disposable income is calculated and set forth in greater detail in the attached Exhibit 4.

     Total funding of the Plan will total $278,379.80.

     **2.**     **Non-Exempt Assets Retained by the Debtors**

| <u>Asset Description</u> | <u>Approximate Liquidation Value</u> |
|---|---:|
| Home Equity in excess of $150,000 homestead Exemption | $38,365.69 |
| 2016 Toyota Tacoma | $0.00 |
| Boat | $500.00 |
| Tools | $0.00 |
| Checking and Savings Accounts | $25,000.00 |
| Hyster Lift Truck | $6,425.00 |
| Brokerage Account | $00 |
| Southwest Airlines Stock | $00 |
| 100% Interest in CE-Systems, Inc | $0.00 |
| 100% Interest in Arizona Turbine Technology, Inc. | $0.00 |
| 40% Interest in EnerTech-AI Texas, LLC | $0.00 |
| 100% Interest in Vida Gasline, LLC | <u>$35,500.00</u> |
| Other Personal Property | <u>$500.00</u> |
| **Total:** | **$106,290.69** |

### 3. Exempt Assets Retained by Debtors

| Asset Description | Equity Value |
|---|---|
| Home Equity-Debtors' Residence located at: 3650 W Camino Christy, Tucson, AZ | $150,000.00 |
| 2012 MKZ-Hybrid with 123,000 miles | $3,205.00 |
| 2009 Toyota Tacoma with 150,000 miles | $4,000.00 |
| Household Furnishings | $3,000.00 |
| Household Electronics | $1,000.00 |
| Clothing | $500.00 |
| Jewelry | $400.00 |
| Animals | 0.00 |
| Tools | $12,000 |
| Retirement Accounts | $510,386.56 |
| **Total:** | **$681,286.56** |
| **(Subject to $50,000 New Value Contribution)** | |

### F. Feasibility

A requirement for Confirmation is that the Amended Plan must be feasible, which means that Plan Confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Amended Plan, unless such liquidation or reorganization is proposed in the Amended Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date of the Amended Plan to pay all the claims and expenses that are entitled to be paid on the Effective Date. The second aspect considers whether the Debtors will have or earn enough cash over the life of the Amended Plan to make the required Amended Plan payments. The Effective

Date feasibility of Debtors' Amended Plan is discussed the Debtors' projections attached as Exhibit 4.

The Debtors contend that their financial projections are feasible in light of the financial records maintained by them prior to and during the pendency of the bankruptcy case. Debtors' projected income is consistent with earnings when allowed to conduct business before the filing of this bankruptcy case. Projected expenses have been reduced, in an effort to improve the ability to make Amended Plan payments. As set forth in the financial projections attached hereto as Exhibit 4, the Debtors project that their post-Confirmation income will exceed their living expenses and Amended Plan payments. Furthermore, as discussed above, Debtors have started a new business which may result in increased income. Accordingly, the Debtors believe, on the basis of the foregoing, that the Amended Plan will be feasible.

### G. Liquidation Analysis

A requirement for confirmation is that the Amended Plan meets the "Best Interest of Creditors Test," which requires the Debtors to provide a liquidation analysis. Under this test, if a claimant is in an Impaired Class and that claimant does not vote to accept the Amended Plan, then that claimant must receive or retain under the Amended Plan property of a value not less than the amount that such holder of such claim would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtors' assets are usually sold by a Chapter 7 trustee. Secured Creditors are paid first from the asset sales proceeds on which the Secured Creditor has a lien. Administrative claims are paid next. Then Unsecured Creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured Creditors receive a proportionate distribution based on the amount of their Allowed Claims, along with all other creditors holding claims of the same priority.

A liquidation analysis detailing anticipated sale values and related expenses is attached as Exhibit 5. For the Bankruptcy Court to confirm the Amended Plan, it must find that all Creditors who do not accept the Amended Plan will receive at least as much under the Amended Plan as such holders would receive under Chapter 7 liquidation. The Debtors maintain that this requirement is met because in a liquidation, general unsecured creditors would likely receive only $94,953.57. The Debtors estimate that will pay general unsecured creditors not less than $117,935.20 over the life of the Amended Plan. This amount could significantly increase if litigation against Turbine Powered Technology and Tucson Embedded Systems is successful.

### H. Debtors' Disposable Income

| MONTHLY CASH INFLOWS | |
|---|---:|
| Salary David Crowe | $16,666.67 |
| Payroll Deductions | ($7,396.34) |
| **Total Individual Income** | **$9,270.33** |
| **MONTHLY CASH OUTFLOWS** | |
| 1st Mortgage Quicken Loans | $1,324.78 |
| 2nd Mortgage USSA | $949.39 |
| Secured Business Expenses | $446.52 |
| Vehicle Ownership Expense (USAA) | $235.31 |
| Vehicle Ownership Expense (2nd Car) | $497.00 |
| Actual Dependent Expenses | $600.00 |
| Food and Personal Care | $646.00 |
| Housekeeping Supplies | $64.00 |
| Apparel & Services | $142.00 |
| Personal Care Products and Services | $69.00 |

| | |
|---|---|
| Miscellaneous | $281.00 |
| Healthcare | $104.00 |
| Housing Expense | $549.00 |
| Vehicle Operating Costs | $440.00 |
| Charitable Contributions | $466.00 |
| **TOTAL HOUSEHOLD EXPENSE** | **$6,814.00** |
| | |
| **DEBTORS' DISPOSABLE INCOME** | **$2,456.33** |

The Debtors estimate that they will not make more than $157,379.80 in payments to unsecured creditors over the life of the Amended Plan.

**I.      Disbursing Agents**

Debtors will serve as the Disbursing Agents without compensation and without posting a bond.

**IV.      TREATMENT OF MISCELLANEOUS ITEMS**

**A.      Executory Contracts and Unexpired Leases**

**1.      Assumptions**

The Debtors are not aware of any executory contracts that they are a party to.

On the Effective Date, any of the unexpired leases and executory contracts that have not previously been assumed shall be deemed rejected, subject to the right of the Debtors to seek authority to assume such contracts upon becoming aware of the same. **If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Amended Plan within the deadline for objecting to the Confirmation of the Amended Plan.**

### 2.    Claims Bar Date for Rejected Contracts and Leases

On the Effective Date, all executory contracts not assumed shall be deemed to be rejected. The Order confirming the Amended Plan shall constitute an order approving the rejection of the leases or contracts that have not previously been rejected. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Amended Plan within the deadline for objecting to the Confirmation of the Amended Plan. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION UNDER THE PLAN OF A LEASE OR CONTRACT IS THIRTY (30) DAYS FROM THE EFFECTIVE DATE OF THE PLAN**. Any Claim based on the rejection of executory contracts or unexpired leases will be barred if the proof of Claim is not timely filed, unless the Bankruptcy Court later orders otherwise.

### B.    Retention of Jurisdiction

Notwithstanding confirmation or the Effective Date having occurred, the Court shall retain and have full jurisdiction as is allowed under Title 28 of the United States Code, the Bankruptcy Code, or other applicable law to enforce the provisions, purposes, and intent of the Amended Plan, including, without limitation, any proceedings related to:

1.    Determination of the allowance, classification, or priority of claims and interests, costs, attorney's fees, and payment of post-petition interest, or objections thereto;

2.    Construing, implementing, enforcing, executing, or consummating the Amended Plan, the confirmation order, any other order of the Court, any document attached as an exhibit to the Amended Plan or contemplated by the Amended Plan, or any other matter referred to in the Amended Plan;

3.    Determination of all matters that are pending before the Court in the Chapter 11 Case prior to the Effective Date or that may arise after the Effective Date;

4.      Determination of any and all applications for allowance or requests for payment of administrative claims, including, without limitation, requests for allowance and payment of compensation and expense reimbursement of professional persons;

5.      Determination of motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and determination of the allowance of any claims resulting from the rejection of executory contracts and unexpired leases;

6.      Determination of all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted prior to the closing of the Chapter 11 Case;

7.      Modification of the Amended Plan pursuant to §1127 of the Bankruptcy Code, prior to the Effective Date, remedy of any defect or omission in the Amended Plan or confirmation order, reconciliation of any inconsistency within the Amended Plan and the loan documents, so as to carry out the intent and purpose of the loan documents;

8.      Issuance of injunctions or taking such other actions or making such other orders as may be necessary or appropriate to restrain interference with the Debtors by any party with the Amended Plan or its execution or implementation by any person, including the interference of the business of EnerTech-AI because of the involvement of David K. Crowe for any claims or causes of action that arose Pre-Petition;

9.      Issuance of such orders in aid of consummation of the Amended Plan and the confirmation order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person, to the full extent authorized by the Bankruptcy Code;

10.      Ordering the assumption or rejection of executory contracts or leases to which the Debtors are a party, which have not previously been resolved;

11.      Any determination necessary or appropriate under §505 of the Bankruptcy Code or any other determination relating to priority tax claims, taxes, tax

35

refuds, tax attributes, and tax benefits affecting the Debtors, their estate, or the Property through the end of the fiscal year in which the Effective Date occurs;

12.     Entry of a final decree closing this Chapter 11 Case;

13.     Determination of such other matters, and for such other purposes, as may be provided in the confirmation order.

14.     The Bankruptcy Court shall retain jurisdiction of this case pursuant to the provisions of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Amended Plan.

15.     In addition, the Bankruptcy Court shall retain jurisdiction to implement the provisions of the Amended Plan in the manner as provided under Bankruptcy Code §1142(a)-(b). If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if Debtors or the Reorganized Debtors elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**C.     Procedures for Resolving Contested Claims**

**If Debtors disagree with the amount of any secured or unsecured claim, Debtors must separately file an objection to any claim it is not accepting and the Debtors reserve the right to do so**. Objections to Secured Claims must be filed prior to the deadline for filing objections to Confirmation. Objections to Unsecured Claims, except for those Claims more specifically deemed Allowed in the Amended Plan, may be filed by Reorganized Debtors or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims, the Disbursing Agents will hold in a separate interest-bearing reserve account such funds as would be necessary to

make the required distribution on the Claim as listed either in Debtors' schedules or the filed proof(s) of claim or as otherwise estimated by the Court.

### D. Notices Under the Amended Plan

All notices, requests or demands with respect to the Amended Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by U.S. mail, postage prepaid by Proponent to the address identified in a party's proof of claim filed in this case and to the address identified in a party's notice of appearance filed with the Court, and if sent to the Proponent, addressed to: Isaac D. Rothschild , Mesch Clark Rothschild, 259 N. Meyer Avenue, Tucson, Arizona 85701.

## V. EFFECT OF CONFIRMATION OF PLAN

### A. Discharge

Under Bankruptcy Code §1141(d)(5), an individual Debtor will not be discharged from any debts unless and until: (i) Debtor completes all payments under the Amended Plan and obtains an order of the Bankruptcy Court granting a discharge; (ii) the Bankruptcy Court grants a limited ("hardship") discharge as allowed under Bankruptcy Code §1141(d)(5)(B); or (iii) the Bankruptcy Court orders otherwise for cause. Notwithstanding the other terms of this paragraph, non-dischargeable debts under Bankruptcy Code §523 will not be discharged.

If Confirmation of the Amended Plan does not occur, the Amended Plan shall be deemed null and void. In such event, nothing contained in the Amended Plan shall be deemed to constitute a waiver or release of any Claims against Debtors or their estate or any other Persons, or to prejudice in any manner the rights of Debtors or their estate or any Person in any further proceeding involving Debtors or their estate. The provisions of the Amended Plan shall be binding upon Debtors and all Creditors, regardless of whether such

Claims are Impaired or whether such parties accept the Amended Plan, upon Confirmation thereof.

### B. Re-vesting of Property in Debtors

Upon the Effective Date, all Assets of the Debtors, including litigation claims, will re-vest in the Reorganized Debtors, free and clear of all liens, claims, and encumbrances other than as expressly provided for in the Amended Plan. After the Effective Date, the Reorganized Debtors shall implement the Amended Plan as provided for therein and in the Amended Disclosure Statement. After the Effective Date, the Reorganized Debtors shall be further responsible for (a) making all payments contemplated under the Amended Plan, (b) making all reporting and other filings as required by the United States Trustee, and (c) closing the Chapter 11 case.

### C. Modification of Amended Plan

The Amended Plan may be modified upon application of the Debtors or corrected prior or subsequent to Confirmation, or prior to consummation, after notice and hearing, as provided by law including without limitation 11 U.S.C. §1127. The Debtors may modify the Amended Plan at any time before Confirmation. The Bankruptcy Court, however, may require a new disclosure statement or re-voting on the Amended Plan if the Debtors modify the Amended Plan before Confirmation. The Debtors may also seek to modify the Amended Plan at any time after Confirmation as long as: (i) the Amended Plan has not been substantially consummated; and (ii) the Bankruptcy Court authorizes the proposed modification after notice and a hearing.

### D. Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under Bankruptcy Code §1112(b), after the Amended Plan is confirmed, if there is a default in performing under the Amended Plan. If the Bankruptcy Court orders the case converted

to Chapter 7 after the Amended Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Amended Plan, will re-vest in the Chapter 7 estate, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during this case.

**E.    Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. §1930(a)(6) continue to be payable to the office of the United States Trustee post-Confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

DATED: August 14, 2019

_____s/ David M. Crowe_____
DAVID M. CROWE

_____s/ Colleen M. Crowe_____
COLLEEN M. CROWE

MESCH CLARK ROTHSCHILD

By ___s/Frederick J. Petersen, #19944___
        Frederick J. Petersen
        Isaac D. Rothschild
        Attorneys for Debtors

39

1  Notice of Electronic Filing ("NEF")
   electronically served on the date of filing
2  upon the registered CM/ECF Users herein
   as evidenced by the NEF.
3
4  Copy emailed August 14, 2019 to:

5  | Synchrony Bank | Turbine Powered Technology, LLC |
6  | c/o PRA Receivables Management, LLC | c/o Its Managing Member, Ted McIntye, II |
   | PO Box 41021 | 298 Louisiana Road, Port of West St. Mary |
7  | Norfolk, VA 23541 | Franklin, LA 70538 |
   | E-mail: claims@recoverycorp.com | Email: legal@marineturbine.com |

8  | D.C. Panagiotis | |
   | The Panagiotis Firm | |
9  | 1540 W. Pinhook Rd. | |
   | Lafayettte, LA 70503 | |
10 | Email: dan@panalaw.com | |

11  26H1721

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26