MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: fpetersen@mcrazlaw.com
       irothschild@mcrazlaw.com
       ecfbk@mcrazlaw.com

By:    Frederick J. Petersen, # 19944
       Isaac D. Rothschild, # 25726
       22003.1/mbt

Attorneys for Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| DAVID K. CROWE and COLLEEN M. CROWE, | No. 4:19-bk-04406-BMW |
| Debtors. | **MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY** |

David K. Crowe and Colleen M. Crowe ("Debtors"), through undersigned counsel, move this Court for sanctions against Turbine Powered Technology, LLC ("TPT") for violation of the automatic stay pursuant to 11 U.S.C. § 363(k).

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

1.      The Debtors filed a voluntary Chapter 11 bankruptcy on April 12, 2019.

2.      On January 5, 2017, the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana ("Louisiana Trial Court") issued an Order Granting a Preliminary Injunction enjoining "Kent Ellsworth, Kenneth Braccio, Arizona Turbine Technology, LLC, Arizona Turbine Technology, Inc., Advanced Turbine Services and Turbine Integrated

Power Solutions and each of them and their agents, servants, employees, attorneys and all persons in active concert and in participation with them." (Exhibit 1, pg. 1.)

3. No Injunction was ever issued naming David Crowe nor Colleen Crowe, personally.

4. On May 26, 2017, Defendants David Crowe, Kenneth Braccio, Arizona Turbine Technology, Inc., Advanced Turbine Services, LLC, and Donald I. Foley filed a Motion to Dissolve the Preliminary Injunction. (Exhibit 2.)

5. On July 17, 2017, the Louisiana Trial Court issued its written Judgment and Reasons for Judgment denying the Motion to dissolve the Preliminary Injunction. (*See* Exhibit 3, pg. 1.) However, prior to its issuance, the Defendant's filed a Notice of Removal to the Western District of Louisiana, thereby divesting the court of jurisdiction and rendering the judgment null as a matter of law. (*See* Exhibit 4 pg. 3.)

6. On March 26, 2018, after the case was remanded back to state court, the Louisiana Trial Court denied the Motion to Dissolve the Preliminary Injunction in a Hearing on TPT's Motion for Contempt. (Exhibit 5, pg. 118.)

7. On March 26, 2018, after the Louisiana Trial Court denied the Motion to Dissolve, Defendants moved for appeal which was immediately granted. (Exhibit 5, pg. 118.)

8. On July 26, 2018 Appellants, David Crowe, Arizona Turbine Technology, Inc., Kenneth Braccio, and Advanced Turbine Services, LLC, submitted their brief to the First Circuit Court of Appeal, State of Louisiana ("Louisiana Appellate Court"). (Exhibit 6.)

9. Oral argument was held November 1, 2018. (*See* Exhibit 4, pg. 3.)

10. On September 5, 2019, the Louisiana Appellate Court reversed the judgment of the Louisiana Trial Court denying the Motion to Dissolve the Preliminary Injunction. (Exhibit 7.)

1    11.    On October 1, 2019, TPT filed its Writ of Certiorari or Review to the Court of

2    Appeal—First Circuit ("Writ of Certiorari") to the Supreme Court of Louisiana. (Exhibit 4.)

3    In its Writ, TPT argues that the Court of Appeals violated the automatic stay when it issued

4    its opinion with regard to Mr. Crowe.  (Exhibit 4 pg. 18-19.)

5    **II.    LEGAL ARGUMENT**

6
     **A.    TPT Violated the Automatic Stay by Filing the Writ of Certiorari that**
7         **Requests Relief Against Crowe.**

8        When a debtor files a petition for relief with the bankruptcy court, the automatic stay

9    immediately goes into effect. 11 U.S.C. § 362(a); *Gruntz v. City of Los Angeles*, 22 F.3d

10   1074, 1081 (9th Cir. 2002). The automatic stay operates as an injunction against several

11   actions against the debtor, enumerated in 11 U.S.C. § 362(a). *Gruntz*, 22 F.3d at 1082. In

12   particular, the automatic stay prohibits "the commencement or continuation . . . of a judicial

13   . . . proceeding against the debtor that was or could have been commenced before the

14   commencement of the case under this title." 11 U.S.C. § 362(a)(1). By its plain language,

15   the automatic stay "prohibits the continuation of judicial actions." *Gruntz*, 309 F.3d at 1214.

16   Any actions taken in violation of the stay are void. *Id.* at 1082.

17       One of the main purposes of the automatic stay is to "give[] the debtor time to devise

18   a reorganization plan and '[] be relieved of the financial pressures that drove him into

19   bankruptcy.'" *Johnston v. Parker*, 321 B.R. 262, 273-74 (D. Ariz. 2005) (*quoting Benedor

20   Corp. v. Conejo Enters. (In re Benedor Corp.)*, 96 F.3d 346, 351 (9th Cir. 1996)). "The

21   scope of protections embodied in the automatic stay is quite broad, and serves as one of the

22   most important protections in bankruptcy law." *Eskanos & Adler, P.C. v. Leetien*, 3019 F.3d

23   1210, 1214 (9th Cir. 2002); *See also Gruntz*, 22 F.3d at 1081-82.

24       In its Writ of Certiorari, TPT argues that the Louisiana Court of Appeals violated the

25   automatic stay by rendering its decision on the Motion to Dissolve the Preliminary

26   Injunction. (Exhibit 4 at pg. 18-19.) TPT specifically asserts that "[t]he judgment [of the

Louisiana Appellate Court] should not have been issued as to Crowe" because of the automatic stay. (Exhibit 4 pg. viii.) In TPT's Reply in Support of its Motion for Relief from the Automatic Stay, TPT makes clear that its purpose in filing the Writ of Certiorari was to maintain the injunction against Crowe. (DK 3:15-18.) TPT admitted that it seeks to reach "a determination that Crowe is subject to the Injunction" in the Louisiana State Court action and related proceedings. (DK 5:13-15.)

Immediately after TPT filed the Writ of Certiorari, Debtors' counsel contacted TPT's counsel by letter notifying them of the violation and requesting that TPT correct its actions. (Exhibit 8.) In TPT's response to that letter, TPT admitted that "[i]f TPT had not filed the Writ . . . TPT's injunction against Mr. Crowe would lapse." (Exhibit 9.) Thus, it is manifestly evident that, through TPT's Writ of Certiorari, TPT seeks a determination that the Preliminary Injunction applied to Crowe personally. However, the Preliminary Injunction issued by the Louisiana Trial Court did not apply to Crowe and listed the enjoined parties as follows:

> Kent Ellsworth, Kenneth braccio, Arizona Turbine Technology, LLC, Arizona Turbine Technology, Inc., Advanced Turbine Services and Turbine Integrated Power Solutions and each of them and their agents, servants, employees, attorneys and all persons in active concert and in participation with them.

(Exhibit 1 pg. 1.)

The Louisiana Trial Court never issued a preliminary injunction listing Crowe as an enjoined party. As such, the Louisiana Appellate Court's decision was not a judicial action against Crowe personally and did not violate the automatic stay. However, in asking the Louisiana Supreme Court to determine that the Louisiana Appellate Court violated the stay, TPT requests a decision that the Preliminary Injunction applied to Crowe. This request is one of first impression and plainly involves the commencement or continuation of a judicial proceeding against the Debtor. While TPT was free to file the Writ of Certiorari as to the

non-debtor third parties listed in the Preliminary Injunction without violating the automatic stay, by seeking to have the Preliminary Injunction apply to Crowe personally, TPT decidedly violated the automatic stay.

**B.     TPT Did Not Obtain Relief from the Automatic Stay Prior to Filing the Writ of Certiorari that Requests Relief Against Crowe**

Although TPT has filed a Motion for Relief from the Automatic Stay, such relief has not been granted. (DK 144.) Earlier in this bankruptcy, Debtors sought leave of court to enter into a post-petition contract with Team Vesco Racing. (DK 47.) TPT objected on the basis that doing so would violate the Preliminary Injunction. (DK 58.) At issue in the presentation to this Court was whether the Preliminary Injunction applied to Crowe or not. This Court issued an Order exercising permissive abstention on the limited issue as to whether Crowe was subject to the Preliminary Injunction related to the Vesco contract, and solely in the context of the Motion to Enter into Post-Petition Contract Outside the Ordinary Course of Business with Team Vesco Racing. (DK 108.) This Court lifted the stay for **Debtors** to proceed, in their discretion, in the State Court Action to obtain that determination. (DK 108.) However, this Court specifically provided that "[i]f the Debtors choose not to proceed, the stay as it relates to the Debtors in the State Court Action remains in place." (DK 108.)

This Court's decision to permissively abstain in a very narrow context did not authorize TPT to file the Writ of Certiorari seeking a broad determination against Crowe. This Court's decision to permissively abstain "[may] not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy." "Even where the [bankruptcy] court has abstained pursuant to Sec. 1334(c), the stay granted under Sec. 362 must be modified in order to allow the resolution of claims other than in the court with

jurisdiction over the bankruptcy." *Pursifull v. Eakin*, 814 F.2d 1501, 1505-06 (10th Cir., 1987).

To the extent that this Court's order did modify the stay, stay relief was limited to permit only the Debtors to proceed in the State Court Litigation, not TPT. (DK 108.) As such, TPT cannot justify its decision to violate the stay based on this Court's previous modification of the stay. *See Railroad Dynamics, Inc. v. A. Stucki Co.*, 61 B.R. 103, 104 (E.D. Pa. 1986) (denying motion for clarification of district court's order as exceeding scope of stay relief where stay was lifted only for limited purposes.).

There can be no dispute that TPT filed the Writ of Certiorari seeking relief against Crowe in plain violation of the automatic stay.

### C. TPT has a Duty to Withdraw its Writ of Certiorari Seeking Relief Against Crowe

When the automatic stay has been violated, the offending party has an affirmative obligation to discontinue the offending conduct. *In re Reeser*, No. 05-61614-7, 2005 Bankr. LEXIS 3126, *12 (Bankr. D. Mont. 2005). As provided above, TPT violated the automatic stay by filing the Writ of Certiorari to the Louisiana Supreme Court. As such, TPT has an obligation to withdraw its Writ of Certiorari.

### D. Sanctions for Violation of the Stay are Appropriate

Where an individual is injured by a willful violation of the automatic stay, the individual may recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In the context of 11 U.S.C. § 362(k)(1), "willful" means the "[offending party] knew of the automatic stay and that the [offending party's] actions which violated the stay were intentional." *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989). An award of attorneys' fees pursuant to 11 U.S.C. § 362(k) includes fees incurred in seeking to

end the violation as well as fees incurred for prosecuting an action for damages. *America's Servicing Co. v. Schwartz-Tallard*, 803 F.3d 1095, 1099, 1101 (9th Cir. 2015).

As stated above, immediately after TPT filed the Writ of Certiorari, Debtors' counsel sought to end the violation by contacting TPT's counsel and informing them of their violation of the stay. (Exhibit 8.) Debtors' counsel informed TPT of their affirmative obligation to end the violation and withdraw its Writ of Certiorari, as it relates to Crowe. (Exhibit 8.) Rather than withdraw the Writ of Certiorari, TPT's counsel replied and stated that the filing of the Writ was necessary in order to maintain the "[i]njunction against Mr. Crowe." (Exhibit 9.) TPT also stated that it would not withdraw the Writ, thus necessitating this Motion. (Exhibit 9.)

TPT has been actively involved in this bankruptcy case and therefore cannot claim it was unaware of the automatic stay. In fact, the existence of the stay and its application to Crowe was referenced several times in TPT's Writ of Certiorari. (Exhibit 4.) ("Defendant Crowe filed for Chapter 11 personal bankruptcy on April 14, 2019. . . At that point the automatic stay under 11 U.S.C. 362 came into effect.") By filing the Writ of Certiorari Seeking Relief Against Crowe, TPT willfully violated the stay such that an award of damages is appropriate. Such damages include fees and costs already incurred and to be incurred in seeking to remedy the violation, as well as potential actions before the Louisiana Supreme Court to cure any void decisions that may be issued.

## III.    CONCLUSION

TPT violated the automatic stay by filing the Writ of Certiorari and seeking a determination by the Louisiana Supreme Court that the Injunction applied to Crowe. In doing so, TPT has caused debtors to incur actual damages in seeking to end the violation. Debtors will incur further damages in having to defend the action during the pendency of this bankruptcy.

WHEREFORE, Debtors respectfully request this Court enter an order,

1       1.     Finding Turbine Powered Technology, LLC in violation of the automatic stay;

2       2.     Awarding sanctions for actual damages, including an award of attorneys' fees;

3 and

4       3.     Awarding such other relief the Court deems just and appropriate.

5

6 DATED:  November 14, 2019            MESCH CLARK ROTHSCHILD

7

8                         By    s/Frederick J. Petersen, # 19944

9                             Frederick J. Petersen
                               Isaac D. Rothschild

10                     Attorneys for Debtors

11 Notice of Electronic Filing ("NEF")

12 electronically served on the date of filing
upon the registered CM/ECF Users herein

13 as evidenced by the NEF.

14 COPIES served as indicated below on
November 14, 2019:

15

| | |
|---|---|
| Synchrony Bank<br>c/o PRA Receivables Management, LLC<br>PO Box 41021<br>Norfolk, VA 23541<br>Email: claims@recoverycorp.com | Turbine Powered Technology, LLC<br>c/o Its Managing Member, Ted McIntye, II<br>298 Louisiana Road, Port of West St. Mary<br>Franklin, LA  70538<br>Email:  legal@marineturbine.com<br>Email:  ted@marineturbine.com<br>Member, Committee of Unsecured Creditors |
| Tucson Embedded Systems<br>Attn:  Dennis Kenman<br>5620 N. Kolb Rd., Ste 160<br>Tucson, AZ 85750<br>Email: contracts@tucsonembedded.com<br>Member, Committee of Unsecured Creditors | Lindsay Brew<br>Miller, Pitt, Feldman & McAnally<br>One S. Church Ave., Ste 900<br>Tucson, AZ  85701<br>Email:  lbrew@mpfmlaw.com<br>Member, Committee of Unsecured Creditors |

26P1057

Exhibit 1

16TH JUDICIAL DISTRICT COURT FOR THE PARISH OF WEST ST. MARY

STATE OF LOUISIANA

DOCKET NO. 130379                                    DIV. "F"

TURBINE POWERED TECHNOLOGY, LLC

VERSUS

DAVID CROWE, KENNETH BRACCIO, DANIEL FOLEY, GEORGE
JACKSON, KENT ELLSWORTH, ARIZONA TURBINE TECHNOLOGY, LLC,
ARIZONA TURBINE TECHNOLOGY, INC., ADVANCED TURBINE
SERVICES, & TURBINE INTEGRATED POWER SOLUTIONS

FILED: ⌐JAN 0 6 2017                    CHARLENE M. LeBLANC
                                                        DEPUTY CLERK
*********************************************************************

**ORDER GRANTING PRELIMINARY INJUNCTION**

This Cause came on for hearing upon the application of plaintiff for a Preliminary

Injunction on January 3, 2017, the Court already having entered a temporary restraining

order as prayed for in the Verified Petition on file herein, and it appearing from the

allegations of said Petition and attachments, and the evidence entered into the record at

said hearing, that plaintiff is entitled to such relief in order to prevent immediate and

irreparable harm, it is hereby:

**ORDERED** that Defendants **Kent Ellsworth, Kenneth Braccio, Arizona**

**Turbine Technology, LLC, Arizona Turbine Technology, Inc., Advanced**

**Turbine Services and Turbine Integrated Power Solutions** and each of them

and their agents, servants, employees, attorneys and all persons in active concert and in

participation with them be enjoined and restrained from the date hereof from:

(a)     Actions which contravene, assist, promote or constitute any breach, whether past,

present, or future, of any of the following agreements annexed to the Verified Petition

and/or the Application for Temporary Restraining Order and Preliminary Injunction:

    (i)     The Vendor Agreement by and between Advanced Turbine Services and

        Turbine Powered Technology;

    (ii)     The Employment Agreement and Non-Disclosure Agreement between

        Turbine Powered Technology, LLC and Kenneth Braccio;

    (iii)     The Non-Disclosure Agreement between Green Field Energy Services, Inc.

1

SCANNED

JAN 1 1 2017
520
Crowe 006002

and Tucson Embedded Systems, Inc.;

(iv) The Turbine Driven Equipment License Agreement between Turbine Powered Technology, LLC and Green Field Energy Services, Inc.;

(b) The use or conveyance of any and all licenses related to software and/or hardware for industrial turbine engine controls for T-55 and TF40 engines, particularly for use in hydraulic fracturing equipment;

(c) Copying, selling, alienating, transferring, and/or providing goods or services for digital engine controls for turbine-powered hydraulic fracturing equipment;

(d) Representing that any of the Defendants owns digital engine control systems and/or packages for turbine powered hydraulic fracturing equipment;

(e) Assembling, shipping, distributing and selling any further digital engine control packages and/or related goods and services for use relating to turbine powered hydraulic fracturing equipment;

(f) Using any other trade practices whatsoever including those complained of herein that tend to unfairly compete with or injure plaintiff's business and the goodwill appertaining thereto;

(e) Assembling, shipping, distributing and selling any further digital engine control packages, related goods, and services for use related to Team Vesco racing.

(f) Transferring any and all property, assets, and accounts in any of the Defendants' care, custody and control which is or was attributable to proceeds and/or revenue from Energy New Technologies International, Inc., Eco-Stim Energy Solutions, Inc., sales of engines and engine controls systems used to control T-55 and/or TF40 turbine engines, and for contractual services for engineering and consulting work performed in support of digital engine controls for equipment which contains TF40 or T-55 engines.

(g) Using any turbine engine digital control systems for TF40 or T-55 engines which arose from or relate to consulting services, contract(s) or employment between any of the Defendants and Turbine Powered Technology, LLC and/or Green Field Energy Services, Inc.

(h) Sales, transfers, and/or use of hydraulic fracturing equipment and related

2

SCANNED

JAN 1 1 2017

Crowe 006003

computer programs related to or derived from TF40 or T-55 digital control systems.

(i)     Entering into or performing any services pursuant to any and all contracts to provide goods and/or services relating to T-55 and/or TF-40 engine controls for hydraulic fracturing.

(j)     Engaging in any further actions which do or may assist any of the other Defendants to engage in transactions related to TF40 and T-55 engine controls, equipment or sales.

(k)     Use, sale, transfer and/or disclosure of any information, goods, and/or services which contain or are based on the TF40 and/or T-55 turbine engine digital controls, however denominated, including:

> industrial turbine engine control systems ("Controllers"), iDEC, industrial digital engine controls other than for T-53 engines, "Controller-Turbine Fracking Solution", FADEC, industrial platform controllers for turbine-powered pumping equipment, "iTxc line of controls" including iTpc (Industrial Turbine Pump Controller), any and all controls purportedly licensed by Turbine Integrated Power Systems, digital engine controls which use an electronic fuel valve, any related digital industrialized controls, and any mechanical or analytical work associated with the above referenced controls, engine models or derivatives, or other engineering / customer support activity related therein.

(l)     Doing any act or thing in breach of any employee nondisclosure agreement which governs or governed the contractual relationship between Turbine Powered Technology, LLC and the Individual Defendants.

(m)     Contacting any present or former customer of Turbine Powered Technology, LLC or of Green Field Energy Services, Inc.

(n)     Contacting or hiring any of Green Field Energy Services, Inc.'s past technical, sales, or support personnel who might have knowledge of Plaintiff's trade secrets regarding Plaintiff's turbine engine controls data or the identities of Plaintiff's present or former customers.

(o)     Using or transferring any and all proceeds of engine packages sold using digital

SCANNED

JAN 1 1 2017

Crowe 006004

controls with electronic fuel valves and industrial digital engine controllers for any industrialized non-aero use, and particularly any controls relating to hydraulic fracturing;

(p)     Transferring any and all rights to intellectual property related to turbine engine powered hydraulic fracturing equipment and controls; and

(q)     Using T-55 and TF40 digital engine controls on the Team Vesco racing project.

IT IS FURTHER ORDERED that, pursuant to the terms of the contracts annexed to the application for injunctive relief, the applicant shall not be required to post a security bond.

IT IS FURTHER ORDERED that this Order shall be effective against the Defendants named herein, as well as their officers, agents, employees, and counsel, and those persons in active concert or participation with them, from the time they receive actual knowledge of the order by personal service or otherwise.

IT IS FURTHER ORDERED that copies of this order be served upon the defendants forthwith, but inability to obtain such service promptly upon any of the defendants shall not operate to stay or postpone said hearing as to defendants who are served with this Order prior to such hearing.

SO ORDERED at _____Franklin_____, Louisiana at _8_ : _30_ (A.M.)/ P.M. on this _5th_ day of _Jan_____, 2017.

_____
DISTRICT JUDGE

RECEIVED AND FILED

JAN 0 6 2017

Charlene McRae
Dy. Clerk of Court

4SCANNED

JAN 1 1 2017

# Exhibit 2

TURBINE POWERED TECHNOLOGY, LLC

VERSUS

DAVID CROWE, et al

## MOTION TO DISSOLVE PRELIMINARY INJUNCTION AND FOR DAMAGES

**NOW COME** defendants in the above-titled action, David Crowe, Kenneth Braccio, Arizona Turbine Technology, Inc., Advanced Turbine Services, LLC, and Donald I. Foley ("Defendants"), through undersigned counsel, and for its separate response to the petition with respect to the prayer for injunctive relief therein and preliminary injunction entered pursuant thereto, hereby move as follows:

1.  Defendants filed this motion to dissolve or modify the preliminary injunction currently in effect. This motion is presented in accordance with La. C.C.P. article 3607.

2.  As grounds, defendants state that under applicable law, the continuation of the preliminary injunction cannot be justified. In further support of this motion, defendants rely on positions stated in the attached Memorandum in Support of Motion to Dissolve Preliminary Injunction and for Damages

3.  For the reasons set out in the Memorandum, the preliminary injunction should be dissolved, and the Defendants should be awarded damages in accordance with La. Code Civ. Proc. art. 3608. Alternatively, the plaintiffs should be required to furnish a cash deposit or a surety bond to guarantee payment.

WHEREFORE, defendants pray that an order issue commanding Turbine Powered Technology, LLC to show cause why the preliminary injunction should not be dissolved, and why the defendants should be awarded damages in accordance with La. Code Civ. Proc. art. 3608, and why, alternatively, the TPT should not be ordered to furnish security in the form of a cash bond.

Respectfully submitted,

**Young, Cotter & Meade LLC**

_____

Adam G. Young, 30124
John Alden Meade, 29975

315 South College Rd., Ste. 163
Lafayette, Louisiana 70503
337-261-8800
337-234-3133 (fax)

adam@ycmlawfirm.com

**Ramsay, Skiles & Streva**

S. Patrick Skiles, 26517
1915 Highway 182
Morgan City, Louisiana 70380
(985) 395-9247
(985) 395-3898 (fax)
pskiles@rsslawoffice.com

Counsel for defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record by facsimile, email and/or U.S. Mail, postage prepaid and properly addressed on this 24th day of May, 2017.

_____

Adam G. Young

# STATE OF LOUISIANA

## 16th JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. MARY

DOCKET NO. 130379                                        DIV. "F"

### TURBINE POWERED TECHNOLOGY, LLC
### VERSUS
### DAVID CROWE, et al

### ORDER

Considering the foregoing Motion to Dissolve Preliminary Injunction and For Damages, it is hereby ordered that Turbine Powered Technology, LLC show cause on the date and time set forth below why the relief prayed for by the defendants should not be granted, the preliminary injunction be dissolved, and a judgment of damages entered against them; and show cause why, alternatively, they should not be ordered to post security in the form of a cash bond for any remaining injunctions in accordance with the law.

Respondents to show cause at: _____.

Thus done and signed this _____, at Franklin, Louisiana.

_____
Judge, 16th Judicial District Court

## STATE OF LOUISIANA

### 16th JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. MARY

DOCKET NO. 130379                                      DIV. "F"

### TURBINE POWERED TECHNOLOGY, LLC

### VERSUS

### DAVID CROWE, et al.

### MEMORANDUM IN SUPPORT OF
### MOTION TO DISSOLVE PRELIMINARY INJUNCTION AND FOR DAMAGES

**May it please the court**, through undersigned counsel defendants David Crowe, Arizona Turbine Technology, Inc., Kenneth Braccio, Donald I. Foley, Jr., and Advanced Turbine Services, LLC respectfully submit the following Memorandum in Support of their Motion to Dissolve Preliminary Injunction and for Damages.

## I.     Factual and Procedural Background

The plaintiff applied for and received a TRO with the filing of the original petition. The TRO was made a preliminary injunction after a hearing held before the defendants were able to answer. The TRO and the subsequent preliminary injunction apply to a broad range of conduct, and seek to prevent the defendants, and Arizona Turbine Technology, Inc. in particular, from competing with TPT in the hydro-fracking marketplace. The defendants now bring this Motion to Dissolve the preliminary injunction, and show that there is no legal or factual basis to support any of the claims that TPT uses to justify injunctive relief.  Because this injunction has been unlawful from the outset, the wrongfully enjoined defendants are entitled to damages and attorneys' fees. La. Code Civ. Proc. art. 3608.

The injunction seeks to prohibit the defendants from doing business worldwide in the area of turbine-powered hydro-fracking. Importantly, it does not seek to prevent anything other than alleged future torts and/or alleged damage to TPT's property. Maintaining this injunction is contrary to law for the following reasons:

1.     TPT is not at risk of suffering irreparable harm absent the injunction;

2.     TPT has adequate remedy at law;

3.     TPT cannot show that they are likely to prevail on the merits;

4.     The requirement of security has not been met;

1

The absence of these elements requires the court to consider the injunction void *ab initio*. With that, the defendants have been wrongfully enjoined, and should be awarded damages and attorneys' fees, as provided by law.

This memorandum will show there is no legal basis to maintain this injunction. The injunction is based on exaggeration and on flimsy legal theories that cannot withstand the application of logic. This memorandum will further show that this entire case, and particularly this injunction, have been used as part of a plot by TPT's owner, Ted McIntyre, for the purpose of gaining an unfair and deceptive business advantage over his main competitor in the hydro-fracking industry, David Crowe. That plot forms the basis of the pending case in the Western District of Louisiana, *Arizona Turbine Technology, Inc. et al v. Turbine Powered Technology, et al*, No. 17-cv-0386. For the following reasons, the preliminary injunction should be dissolved:

## II.  Legal Standards

### A.  Injunctive Relief

Injunctive relief may only be granted when irreparable injury, loss or damage may otherwise result to the applicant, and in other cases specifically provided by law. La. Code Civ. Proc. art 3601. Injunctive relief is an equitable remedy, which is ordinarily only available when a party has no adequate legal remedy. *West v. Town of Winnsboro*, 211 So.2d 665, 670 (La. 1967). Absent specific authorization by law, an injunction will not issue without a showing of irreparable injury. *Greenberg v. De Salvo*, 254 La. 1019, 229 So.2d 83 (1969); *LaFreniere Park Foundation v. Friends of LaFreniere Park, Inc.*, 698 So.2d 449, 452 (La. App. 5th Cir. 1997) ("An injunction is a harsh, drastic, and extraordinary remedy, and should only issue where the party seeking it is threatened with irreparable loss or injury without adequate remedy at law.")

An injunction proceeding may not be used to redress a consummated wrong, or to undo what has already been done. *Verdun v. Scallon Bros. Contractors, Inc.*, 270 So.2d 512, 513 (1972). When a wrong has already been done, the proper civil remedy is damages, not injunction. *Id.* This limitation makes sense in light of the fact that "irreparable injury, loss, or damage" under Article 3601 is defined as such loss that cannot be adequately compensated in money damages, or is not susceptible of measurement by pecuniary standards. *Shaw v. Hingle*, 648 So.2d 903, 905 (La. 1995). Thus, the availability of money damages for a consummated act constitutes "adequate remedy at law." *See, LaFreniere Park Foundation, Id* at 452. Even where damages are difficult to calculate or the proper method of calculation is disputed, the availability of money damages

2

should preclude a finding of irreparable injury. *See, Pogo Producing Co. v. United Gas Pipe Line Co.*, 511 So.2d 809 (La. App. 4th Cir. 1987).

Although injunction is an equitable remedy, requests to enjoin future torts have been consistently ruled inappropriate. *See, Galle v. Coile*, 556 So.2d 957 (La. App. 3d Cir. 1990); *Hairford v. Perkins*, 520 So.2d 1053 (3d Cir. 1987). In *Hairford*, the plaintiffs filed a petition for injunctive relief and damages seeking to prohibit their neighbor from threatening the plaintiffs or from carrying a concealed weapon. There, the Third Circuit held:

> The jurisprudence is quite clear that the purpose of an injunction is not to afford a remedy for what has happened in the past, but to prevent the occurrence of actions in the future which are unlawful or injurious and pose irreparable injury. It is not sufficient for the plaintiffs to simply show that unlawful acts were committed in the past or that they fear these acts will be committed again. *Id.* [internal citations omitted.]

Even when the defendant has allegedly already consummated tortious acts, the *Hairford* and *Galle* cases show that the plaintiff seeking injunctive relief must show more than fear and apprehension that tortious acts will be committed again, and such a showing should include lack of adequate remedies at law.

Therefore, to maintain a preliminary injunction, the court must find: (1) the plaintiff is without adequate remedy at law; (2) the plaintiff will suffer irreparable injury, loss, or damage absent the preliminary injunction, and, (3) and the plaintiff will likely prevail on the merits of the case. *Id; See also; ANR Pipeline Co. v. Louisiana Tax Com'n,* 997 So.2d 105 (La.App. 1 Cir. 10/17/08), *rehearing denied, writ denied* 3 So.3d 484 (La. 3/6/09). Before issuing a preliminary injunction, the trial court should consider whether the threatened harm to plaintiff outweighs potential for harm or inconvenience to defendant, and whether the issuance of the preliminary injunction will disserve public interest. *Chandler v. State, Dept. of Transp. & Development*, 844 So.2d 905 (La.App. 1 Cir. 3/28/03).

The plaintiffs must show they are entitled to the relief sought as a matter of law. *Louisiana Ass'n of Self-Insured Employers v. Louisiana Workforce Com'n,* 92 So.3d 397 (La.App. 1 Cir. 3/28/12); *Guilbeaux v. Guilbeeaux*, 981 So.2d 913 (La.App. 3 Cir. 4/30/08), "because the plaintiff had an adequate remedy at law, an injunction would not issue," at 918-919; *citing, Greenberg v. DeSalvo*, 229 So.2d 83, 88 (La.1969), *cert. denied*, 397 U.S. 1075, 25 L.Ed.2d 809 (1970). Therefore, in order to maintain an injunction in this case, TPT must show both that absent the continuation of the preliminary injunction they will be subject to irreparable harm, **and** that they

3

are without an adequate remedy at law, **and** that they are substantially likely to prevail on the merits.

## B.    The Requirement of Security

La. Code Civ. Proc. art. 3610 clearly provides as follows:

> A temporary restraining order or preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law. The security shall indemnify the person wrongfully restrained or enjoined for the payment of costs incurred and damages sustained.

The purpose of an injunction bond is to protect parties against whom an injunction is sought. *See, Glidden v. Loe*, 192 So.2d 633 (La.App. 2nd Cir. 1966). When it appears that the security given on obtaining an injunction is insufficient, the court may permit additional security to be given. *Cotton v. Christen*, 110 La. 444 (La. 1903). Attorneys' fees are expressly included in this calculation of such damages by La. Code Civ. Proc. art. 3608:

> Attorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits.

The amount of security should be enough to indemnify the party enjoined from damages potentially caused by the injunction, including mental anguish and attorneys' fees. In *Arco Oil & Gas Co. v. DeShazer*, 728 So.2d 841 (La. 1999), the Louisiana Supreme Court pointed out that that damages for mental anguish may be awarded for wrongful issuance of a TRO or preliminary injunction. In *Davis v. Town of St. Gabriel*, 809 So.2d 537 (La. App. 1st Cir. 2/15/02), the First Circuit found that a $500 bond on an injunction preventing the construction of a truck stop was insufficient, and increased the amount to $100,000. The Louisiana Supreme Court held, in 1927 that $25,000 was not an excessive bond when a state construction project was enjoined. *Reynolds v. Louisiana Highway Commission*, 111 So. 622 (La. 1927)[1].

Failure to require security is fatal to a preliminary injunction. An inunction issued without requiring a bond to be furnished is invalid, and is subject to being vacated. *Lambert v. Lambert*, 480 So.2d 784 (La.App. 3rd. Cir. 1985). The issuance and maintenance without bond at the instance of a litigant demanding enforcement of a contract affecting certain property is unauthorized by law, and amounts to an abuse of process. *See, Milling v. Sulphur Timber & Lumber Co.*, 44 So. 307 (La. 1907).

---

[1] In real terms, $25,000 dollars in 1927 is approximately equivalent to $343,000 in 2016 dollars.

### C.    Dissolution or Modification of Preliminary Injunction

The court may dissolve or modify a preliminary injunction on only two days' notice to the adverse party. La. Code Civ. Proc. art. 3607. An injunction can be dissolved when good cause exists for its dissolution. *Houston River Canal Co. v. Reid*, 53 So. 887 (La. 1910). A showing that continuing an injunction would not result in irreparable harm constitutes good cause to dissolve an injunction. *Salomon v. Equitable Life Assur. Soc. of U. S.*, 13 So.2d 329 (La. 1943.)

### D.    Award of Damages and Attorneys' Fees

Article 3608 broadly permits "damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on reconventional demand." Economic damages and general damages, e.g. "mental anguish" may be awarded for the wrongful issuance of injunctive relief. *Arco Oil & Gas Co.* at 842. Art. 3608 further allows that "attorney's fees for the services rendered in connection with the dissolution of a restraining order ... may be included as an element of damages...." *Hewitt v. Lafayette City-Parish Consol. Government*, 193 So.3d 149 (La. 5/27/16).

### III.    Argument for Dissolution of the Preliminary Injunction and For Attorneys' Fees

### A.    The Injunction Should Be Dissolved

Good cause exists to dissolve the injunction against the defendants as follows:

### 1.    TPT is not threatened with irreparable harm absent an injunction.

In order to prove that irreparable harm will befall a party from the non-issuance of a preliminary injunction, the petitioning party must show that "money damages cannot adequately compensate for the injuries suffered and the injuries 'cannot be measured by pecuniary standards.' " *Faubourg Marigny Imp. Ass'n, Inc. v. City of New Orleans*, 195 So.3d 606 (La.App. 4 Cir. 5/25/16), (quoting *Saunders v. Stafford*, 05–0205, p. 6 (La.App. 4 Cir. 1/11/06), 923 So.2d 751, 754). An award of damages, not injunctive relief, is the appropriate remedy for harm that does not involve irreparable injury. *See, e.g., A to Z Paper Co., Inc. v. Carlo Ditta, Inc.*, 720 So.2d 703, 708 (La.App. 4 Cir. 9/9/98).

In only one place in its lengthy petition does TPT allege that it faces "irreparable harm." Original Petition, Para. 158. But that paragraph of the Petition only puts forth the conclusion "Petitioners are indeed suffering irreparable harm as result of Defendants' actions." Nowhere does the Petition describe the irreparable harm, much less describe what makes it "irreparable." Importantly, TPT does not allege at all in its Application for TRO that it will suffer irreparable

harm in the absence of an injunction. Rather, TPT strains to argue that the requirement of showing irreparable harm does not apply to their request for injunction. Nevertheless, lost income is not irreparable loss. Property damage is not irreparable loss, either. *See, Faubourg Marigny Imp. Ass'n, Inc. v. City of New Orleans, supra.* It is clear that TPT is claiming nothing other than business losses and damage to its alleged intellectual property. TPT only claims that it stands to "incur damages to their extreme detriment." Original Petition, Para. 159. TPT's claims to harm are exclusively pecuniary in nature: "lost profits, amounts paid to vendors or suppliers, diminution of value of TPT, increased costs, loss of market and loss of business opportunities." Para. 159. These harms are all quintessentially compensable in damages and therefore not "irreparable." There are no details or other evidence whatsoever to prove that these fundamentally monetary claims would be irreparable. Therefore, these claims are insufficient to prove that irreparable harm will befall TPT in the absence of an injunction.

### 2.  La. Civil Code art. 1987 does not apply to this situation.

In an attempt to get around the requirement of irreparable harm, TPT alleges that the defendants are subject to "obligations not to do." La. Civ. Code art. 1987. La. Civ. Code art. 1987 requires a contractual obligation to proscribe certain conduct in order for it to alleviate a party of the requirement of showing irreparable harm. *Novelaire Technologies, L.L.C. v. Harrison*, 994 So.2d 5708 (La.App. 5 Cir. 8/19/08).

TPT attempts to invoke the following contracts to establish this obligation: the Vendor Agreement between ATS and TPT, the Employment Agreement between Braccio and TPT, the License Agreement between TPT and GFES, and the Non-Disclosure Agreement between TES and GFES. A close look at each of the contracts shows that they could not possibly form the basis for an "obligation not to do" on the part of the defendants. Therefore Art. 1987 cannot possibly operate in this case to relieve TPT of the requirement of showing irreparable harm.

**The Vendor Agreement:**  The Vendor Agreement does not contain any of the prohibitory terms that are contained in the injunction. Therefore, the Vendor Agreement does not create any obligation "not to do," as claimed by Paragraph 158 of the Original Petition. *See, Id..* Moreover, neither David Crowe, Arizona Turbine Technology, Inc., Donald Foley, nor Ken Braccio are parties to the Vendor Agreement. It is elementary that a person not party to a contract cannot be bound by its terms. Finally, the Vendor Agreement is expired according to its own terms. Therefore, the Vendor Agreement cannot possibly form the basis of any "obligation not to do."

**The Employment Contract for Ken Braccio:** Like the Vendor Agreement, the Employment Contract does not contain any of the prohibitory terms that are contained in the injunction. Therefore, the Vendor Agreement does not create any obligation "not to do," as claimed by Paragraph 158 of the Original Petition. *See, Id.* Moreover, neither David Crowe, Arizona Turbine Technology, Inc., Donald Foley, nor ATS are parties to the Employment Contract. It is elementary that a person not party to a contract cannot be bound by its terms. Finally, the Employment Contract is expired according to its own terms, and is otherwise not operative. Therefore, the Employment Agreement cannot possibly form the basis of any "obligation not to do."

**The License Agreement between TES and GFES, and the Non-Disclosure Agreement between TES and GFES:** As a result of Green Field Energy's Chapter 7 petition in the United States Bankruptcy Court for the District of Delaware, all executory contracts that Green Field was party to have terminated by operation of 11 U.S.C. § 365. Therefore, these contracts cannot possibly form the basis of any ongoing "obligation not to do," as claimed by TPT. Furthermore, even a cursory review of these contracts attached to the Original Petition reveal that they are not made between **any** of the defendants and TPT, and that none of them contain any of the prohibitory obligations that appear in the preliminary injunctions. Therefore, the defendants are not obligated "not to do" anything by those contracts. And therefore, La. Civil Code art. 1987 cannot apply. And therefore, in order to maintain the injunction TPT must be faced with irreparable harm, which it plainly does not face.

### 3.    TPT has adequate remedy at law

The availability of money damages constitutes "adequate remedy at law." *LaFreniere Park Foundation,* at 452. An injunction may not issue simply to enjoin future torts. *Galle,* at 958. TPT merely seeks to enjoin future torts: alleged conversion of intellectual property. In the event that defendants commit future torts, TPT has the legal remedy of tort law and damages. Therefore, TPT has adequate remedy at law. Because TPT has adequate remedy at law, the preliminary injunction is not appropriate and good cause exists to dissolve it.

### 4.    TPT cannot show a likelihood that it will prevail on the merits

In order to justify injunctive relief, TPT must show that it has a substantial likelihood of prevailing in the merits. *ANR Pipeline Co. v. Louisiana Tax Com'n,* at 105. At no point has TPT produced any evidence to show that it is likely that the defendants are trading on any secrets owned

7

by TPT. TPT has not offered any technical specifications or details to the court that would show either the extent of its ownership, nor the details showing that the defendants have traded on those same technical specifications, code, architecture, or otherwise. TPT has made vague, conclusory statements, but has not put forth specifics. Without something specific, TPT can't show a likelihood that it will prevail on the merits and win a permanent injunction.

TPT cannot provide specific details showing the extent of the defendant's alleged "misappropriation," because TPT does not fully understand either the extent of the applications of the technologies it claims to own, nor do they have any information regarding what the Arizona Turbine Technology, Inc. actually sells. In any event, it is not up to Arizona Turbine to show that their products are substantially distinct from that claimed by TPT. Rather, TPT must make a showing that it is substantially likely to prevail on the merits. Such a substantial showing would necessarily include (1) a detailed description of TPT's trade secrets or intellectual property claims, and (2) a showing of evidence of how exactly the defendants are infringing. These details are simply absent from the case.

TPT's inability to describe its claimed intellectual property with specificity is nothing new. As noted in previous memoranda in this case, TPT's claims against David Crowe and the other defendants herein are almost identical to claims it brought in 2014 against David Crowe's former company, TES. *See, Tucson Embedded Systems Inc. v. Turbine Powered Technology, LLC*, U.S. District Court, District of Arizona, No. CV-14-01868. In that case, the Court dismissed TPT's claims that David Crowe's former company, TES, had stolen TPT's trade secrets. In finding that TPT could not describe its intellectual property with sufficient specificity, U.S. Magistrate Judge MacDonald wrote:

> Here, [TPT] discusses retrofitting the original fuel system; modifying operational and control parameters including the use of BASLER equipment; modifying manifold and nozzle designs; and modifying starting, warning, and shutdown protocols as necessary changes to the T-53 for its purposes and that this information is [TPT's] protectable trade secret. Based upon the evidence put forth by [TPT], it would appear that it has invested significant time and resources to develop the T-53 for oil and gas industry applications; however, [TPT] has failed to provide enough detail about the alleged trade secrets for TES or this Court to adequately discern what might be legally protectable. Because the Court finds that [TPT] has not met its burden to prove a legally protectable trade secret exists, partial summary judgment in favor of TES is appropriate.
>
> *Tucson Embedded Systems Inc. v. Turbine Powered Technology, LLC*, U.S. District Court, District of Arizona, No. CV-14-01868, Order on Motion for Summary Judgment, Doc. 138.

Given that TPT was unable to prevail on the merits in that case, and that the current case offers even less detail about TPT's claimed intellectual property, it is not likely that TPT will be able to

8

prevail on the merits in this case. Without a showing of a likelihood of prevailing on the merits, the injunction must be dissolved.

In evaluating whether TPT can make a showing that it is likely to prevail on the merits, the Court should consider the following fact: prior to the institution of this lawsuit, TPT already affirmatively represented to a third party that it did not have trade secrets or intellectual property rights to the turbine frac units developed for Green Field. On October 10, 2014, TPT wrote to Eco-Stim Energy Solutions, Inc., because Eco Stim was buying turbine frack units from the liquidating agent for the Green Field bankruptcy estate. That letter expressly states that Eco-Stim "may operate the equipment as it sees fit without subjecting itself to any valid claims of infringement of TPT's intellectual property." That letter is attached hereto as Exhibit "A." This admission by TPT should, at a minimum, cast serious doubt on the idea that it has any likelihood of prevailing on the merits in this case.

Because TPT cannot show irreparable harm, because La. Civ. Code. art. 1987 does not apply, because TPT has adequate remedy at law, and because TPT cannot show a likelihood of prevailing on the merits, the preliminary injunction should be dissolved.

**B.    The Defendants should be Awarded Damages and Attorneys' Fees**

Under Louisiana law, a preliminary injunction is characterized as "wrongfully issued" for purposes of obtaining damages whenever it is subsequently dissolved on merits. *Pendarvis v. Ormet Corp.,* 135 F.3d 1036 (5th Cir. 1988). A "wrongful issuance" subject to a damages award is injunctive relief that has been issued when it should not have been issued because the plaintiff had no right to it. *Jackson v. Pfeifer*, 152 So.3d 998 (La.App. 4 Cir. 11/12/14). In this case, the temporary restraining order and preliminary injunctions have been wrongfully issued.

La. Code of Civil Procedure art. 3608 broadly permits "damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on reconventional demand." *Hewitt v. Lafayette City-Parish Consol. Government*, 193 So.3d 149 (La. 2016). "Art. 3608 further allows that 'attorney's fees for the services rendered in connection with the dissolution of a restraining order ... may be included as an element of damages....'" *Id.* Attorney fees awarded pursuant to La. Code Civ. Proc. art. 3608 are not limited to those incurred only for the dissolution of a preliminary injunction. *Id.*

The damages sustained by the defendants herein from the wrongful issuance of the TRO and preliminary injunction can be characterized generally as follows:

9

**Attorneys' fees and costs:**   defendants have incurred hundreds of hours in attorneys' fees and substantial direct costs as a result of responding to the wrongfully issued injunctions herein. The defendants will present evidence at the hearing of this Motion to substantiate these amounts.

**Damage to Business Reputation:**   the defendants, particularly Arizona Turbine Technology, Inc., have suffered serious damage to its business reputation, existing business relationships, and business expectancy. The extent of this damage is detailed by the complaint in the related case *Arizona Turbine Technology, Inc. v. Turbine Powered Technology*, U.S. District Court, Western District of Louisiana, No. 17-0386, which is attached hereto as Exhibit "B," and incorporated by reference. The defendants will present evidence at the hearing of this Motion to substantiate the extent of their business damages.

**General Damages:**   Each of the defendants have suffered mental anguish as a result of the wrongfully issued injunction. Therefore, the defendants should be appropriately compensated in damages. The defendants will present evidence at the hearing of this Motion to substantiate the extent of their general damages and mental anguish.

## IV.    Alternatively, The Defendants Should be Required to Post Adequate Security

In the event that the Court declines to dissolve the preliminary injunction as prayed for herein, it should, at the very least, require that adequate security be posted in the form of a cash bond. The amount of security should be enough to indemnify the party enjoined from damages potentially caused by the injunction, including mental anguish and attorneys' fees. *In Arco Oil & Gas Co. v. DeShazer*, at 842. As described above, the defendants also stand to lose business opportunities as a result of the continuation of this injunction. In the event that the injunction is not made permanent, then the defendants stand to recover attorneys' fees, mental anguish damages, and loss of business opportunities. Accordingly, TPT should be made to post a bond that would adequately compensate the defendants for these amounts.

It is undisputed that the transactions in question, as described in the Original Petition, and in the complaint in *Arizona Turbine Technology, Inc. v. Turbine Powered Technology* are routinely completed in the amounts of tens of millions of dollars. There should be no dispute either, that if the defendants are successful and defending the trial on the merits for the permanent injunction, they will have incurred many hundreds of hours of attorneys' fees, and thousands of dollars of direct costs. Under these circumstances, it is appropriate to require security from the plaintiff in a

minimum amount of two million dollars. If the plaintiff is unable or unwilling to risk this amount—which is far less than the value of the transactions at issue that it seeks to enjoin—then it should not be permitted to benefit from the preliminary injunction.

## IV.     Conclusion

TPT's request for an injunction in this case has been made in bad faith and represents an abuse of process. Instead of showing irreparable harm, they couched their arguments for an injunction in terms expired or null contracts to which the defendants are not even a party. The lack of evidence of irreparable harm, the lack of evidence of TPT's ability to prevail on the merits, and the obvious existence of other remedies at law, justify the dissolution of the preliminary injunction. On the dissolution of the preliminary injunction, the defendants should be awarded damages in the form of a money judgment calculated on the basis of damage to business reputation, lost business opportunity, mental anguish, and attorneys' fees. Alternatively, in the event the injunction is not dissolved, the defendants should be made to post bond in the amount of no less than two million dollars.

Respectfully submitted,

**Young, Cotter & Meade LLC**

Adam G. Young, 30124
John Alden Meade, 29975
315 South College Rd., Ste. 163
Lafayette, Louisiana 70503
337-261-8800
337-234-3133 (fax)
adam@ycmlawfirm.com

**Ramsay, Skiles & Streva**

S. Patrick Skiles, 26517
1915 Highway 182
Morgan City, Louisiana 70380
(985) 395-9247
(985) 395-3898 (fax)
pskiles@rsslawoffice.com

Counsel for defendants

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record by facsimile, email and/or U.S. Mail, postage prepaid and properly addressed on this 24th day of May, 2017.

Adam G. Young

**TURBINE POWERED TECHNOLOGY, LLC**
298 Louisiana Road, Port of West St. Mary
Franklin, LA 70538
Phone (337-924-0298)
Fax (337-924-0290)

October 10, 2014

Eco-Stim Energy Solutions, Inc.
2930 W. Sam Houston Pwky. N.
Houston, Texas 77043
Attn: J. Chris Boswell, President & CEO

Mr. Boswell:

Per our discussions regarding Eco-Stim Energy Solutions, Inc. ("Eco-Stim") use of Turbine Powered Technologies, LLC ("TPT") intellectual property as it relates to Eco-Stim's purchase of certain hydraulic fracturing equipment from Gordon Brothers Commercial and Industrial, LLC ("GB") as a result of the Greenfield Energy Services ("GFES") bankruptcy proceedings (the "Equipment"), please see the following.

To the best of our/TPT's knowledge, after diligent review and inquiry, the Equipment which Eco-Stim intends to purchase from GB is not subject to any conflicting license or right of use which would prevent Eco-Stim from using the equipment as contemplated. Your concerns are expressly addressed and alleviated by the GFES bankruptcy court filings cancelling all agreements by and between TPT and GFES. That cancellation order terminated any intellectual property rights previously held by GFES. I forwarded the underlying original license agreement by and between TPT and GFES to you, as well as the bankruptcy court Motions and Order cancelling that agreement.

This letter and the accompanying record proof of the statements herein should assure Eco-Stim that it may operate the equipment as it sees fit without subjecting itself to any valid claims of infringement of TPT's intellectual property. We hope this will be sufficient for your purposes, and we wish you good luck in your efforts to return the Equipment to active service in the energy industry.

With kind regards, I remain

Sincerely,

General Counsel

C: Ted McIntyre

EXHIBIT
4

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

Lafayette Division

| | |
|---|---|
| **ARIZONA TURBINE TECHNOLOGY, Inc.** | Docket No.  6:17-cv-386 |
| **ADVANCED TURBINE SERVICES, LLC** | Judge _____ |
| **DAVID CROWE** | Mag. Judge _____ |
| **KENNETH BRACCIO** Plaintiffs | |

Versus

**TURBINE POWERED TECHNOLOGY, LLC**

**MARINE TURBINE TECHNOLOGIES, LLC**

**TED MCINTYRE, II** Defendants

<u>COMPLAINT FOR DAMAGES</u>

Plaintiffs, Arizona Turbine Technology, Inc., Advanced Turbine Services, LLC, David Crowe, and Kenneth Braccio bring this action based upon personal knowledge as to the facts, investigation of counsel, and upon information and belief as to all matters, and allege as follows:

I.    <u>Nature of the Case and Introductory Statement</u>

1.    This action for damages stems from false and unlawful communications made by Ted McIntyre, II (hereinafter "McIntyre") regarding the business operations of Arizona Turbine Technology, Inc. (hereinafter "Arizona Turbine"), Advanced Turbine Services, LLC (hereinafter "ATS"), David Crowe, and Kenneth Braccio. McIntyre knowingly made false and misleading



EXHIBIT B

statements to the customers of Arizona Turbine and ATS to damage Arizona Turbine's relationship with its current and potential customers, and in order to gain a competitive advantage for two competing companies he owns, Turbine Powered Technology, LLC (hereinafter "TPT"), and Marine Turbine Technologies, LLC (hereinafter "MTT"). Namely, on multiple occasions in 2016 and in 2017 McIntyre communicated to Arizona Turbine's customers and potential customers that Arizona Turbine's business operations infringed on a patent owned by TPT, and otherwise communicated that Arizona Turbine's business practices were unlawful. On numerous other occasions in the same period, McIntyre made similar communications regarding David Crowe and Kenneth Braccio personally, as well as ATS, an affiliated company. These communications were made by McIntyre himself, and by agents working on McIntyre's behalf. At all times these communications lacked factual support, and those making such communications knew or should have known them to be lacking in support. This complaint will detail how all such communications were made, and how they were made with the intent of damaging Arizona Turbine's reputation and to prevent Arizona Turbine from gaining valuable contracts. Further, this complaint will show these communications resulted in actual reputational damage to Arizona Turbine, David Crowe, Kenneth Braccio, and ATS. Further, this complaint will show that these unlawful communications have prevented Arizona Turbine from gaining valuable contracts, and otherwise caused actual economic and non-economic damages to Arizona Turbine, ATS, David Crowe, and Kenneth Braccio. By this Complaint, Arizona Turbine now seeks an award of damages pursuant to the various state laws plead herein.

## II.   Jurisdiction and Parties

2.     Plaintiff, Arizona Turbine Technology, Inc., is an Arizona business corporation domiciled in Tucson, Arizona, and with its principal place of business in Tucson, Arizona.

3.      Plaintiff, David Crowe ("Crowe") is the CEO of Arizona Turbine and is domiciled in Tucson Arizona.

4       Advanced Turbine Services, LLC is a limited liability company domiciled in Wallingford, Connecticut, and with its principal place of business in Meriden, Connecticut.

5.      Plaintiff, Kenneth Braccio ("Braccio") is the owner of Advanced Turbine Services, LLC, and is domiciled in Phoenix, Arizona.

6.      Made Defendant herein is Ted McIntyre, II ("McIntyre") a person of full age of majority, domiciled in Franklin, Louisiana.

7.      Made Defendant herein is Turbine Powered Technology, LLC, ("TPT") a Louisiana limited liability company with its principal place of business in Franklin, Louisiana.

8.      Made Defendant herein is Marine Turbine Technologies, LLC, ("MTT") a Louisiana limited liability company wholly owned by McIntyre, and with its principal place of business in Franklin, Louisiana.

9.      Subject matter jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds the jurisdictional minimum.

10.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2).

### III.    Factual Background

11.     Since 1973 or before, various firms have repurposed turbine engines originally installed in military helicopters to supply the high levels of horsepower necessary to drive hydraulic fracturing pumps in America's shale oil & gas production industry.

12.     Turbine-powered hyrdo-fracturing units are smaller, cleaner, more efficient, and cheaper than the hydro-fracturing power units that preceded their use in the industry. Supplying turbine-

powered hydro-fracturing engines to shale oil & gas wells in the U.S. and around the world amounts to a very profitable business.

13.     From 2011 to 2013, Greenfield Energy Services, Inc., of Lafayette, ("Green Field") quickly became one of the leading companies repurposing military helicopter turbine engines for use in hydro-fracturing. During these years, Green Field operated a joint-venture with MTT, and during those years both companies owned TPT. This joint venture was concentrated in the development and supply of turbine-powered hydro-fracturing machines to shale oil and gas producers in the U.S.

14.     Green Field failed spectacularly in 2013, after its then-CEO Mike Moreno used a web of affiliated companies under his control to strip Green Field of its most valuable assets and walk away from obligations to fund the company. This scheme ended in a Chapter 7 bankruptcy in Delaware, and various litigations concerning Moreno, Greenfield's creditors, and the bankruptcy trustee proceed today in various forums in Lafayette, Delaware, and elsewhere. *See, In re Greenfield Energy Services, Inc. et al* 13-12783, Bankr. D. Del.

15.     In 2011 David Crowe was the CEO of Tucson Embedded Systems, Inc. (hereinafter "TES"). Green Field sought out Crowe's expertise to solve problems TPT/MTT had in controlling their turbines. Specifically, GFES needed Crowe's assistance to enable the turbines to reliably run on natural gas.

16.     In 2011 at the direction of Green Field, McIntyre issued a purchase order to ATS to purchase 25 turbine control units from TES.17. In 2013 Green Field contracted with TES to supply controls for TPT/MTT generators.

18.     In October 2013, TPT/MTT issued a purchase order to TES for 12 more generators controls for the newly acquired Green Field generators.

19.   In January 2014, TES sued TPT for non-payment on this supply-control contract with TPT. See, *Tucson Embedded Systems, Inc. v. Turbine Powered Technology, LLC*, District of Arizona, No. 14-01868.[1]

20.   Since the collapse of Green Field, MTT and TPT have continued to operate in the market supplying various goods and services related to turbine-power hydro-fracturing power sources.

21.   In 2014, Crowe left TES and founded Arizona Turbine to continue the development and improvement of turbine-powered sources for industrial applications, and to compete in that market. Since 2014, Arizona Turbine has brought forth new applications and products in the industrial turbine market.

## The '078 Patent

22.   In 2013, TES applied for U.S. Patent No. 9,429,078 ("the '078 Patent"), and was eventually awarded that patent. That patent is for a "multi-compatible digital engine controller," which entails the control of multiple variants of gas turbine engines without requiring a change in software and configuration data and/or a re-boot.

23.   David Crowe was indispensable in the development of that patent application and the systems behind it, and is therefore very familiar with the limits of that patent.

24.   Some of the limits of the '078 patent are as follows:

   a.   The '078 Patent does not apply to the Industrial Digital Engine Controller system, (known as the "IDEC"), developed by TES in 2012. The technology described by the '078 patent receives engine-specific data to determine the engine output, and was designed as a replacement to the IDEC. The IDEC was in operation 22 months prior to the application which led to the '078 patent.

   b.   The '078 patent does not apply to frac-pump controllers integrated with turbine controllers.

---

[1] TPT filed a counter-claim against TES alleging violation of the Arizona Trade Secrets Act, and such claim is similar in its factual allegations as the statements made by TPT against Arizona Turbine and described in this complaint. TPT's Arizona Trade Secrets Act counter-claim was dismissed on summary judgment on 4/11/2016. See, *TES v. TPT*, No. 14-01868, Doc. No. 138.

    c.    The '078 patent does not apply to generator controllers integrated with turbine controllers.

    d.    The '078 patent does not apply to technologies that control frac-pumps.

    e.    The '078 patent describes a product never built or developed by TES.

    f.    The '078 patent only applies to digital engine controls that enable compatibility with multiple gas turbine engine variants.

25.    In October 2016, as part of the settlement of the Arizona lawsuit between TES and TPT, TES assigned 51% of the ownership of the '078 Patent to TPT.

26.    At all relevant times, the limitations and specifications of the '078 patent were known, or should have been known, to McIntyre, TPT, and MTT.

**The Development of Arizona Turbine's Business**

27.    In 2016, Arizona Turbine had the opportunity to make several large, publicly traded companies valuable customers and/or enterprise partners. These companies include: EcoStim Energy Solutions, Inc., Vericor, Inc., and Honeywell International, Inc. These opportunities also represented opportunities for Advance Turbine Systems, Inc. ("ATS") to provide materials and other items necessary for Arizona Turbine to fulfill its contracts. ATS is largely owned and controlled by plaintiff Braccio

28.    EcoStim Energy Solutions, Inc. ("EcoStim") is a well stimulation and completion services company based in Houston. At all material times, EcoStim was a potential customer for products and services offered by Arizona Turbine.

29.    On or about June 2015, EcoStim and Arizona Turbine engaged in communications and negotiations toward finalizing contracts for Arizona Turbine to provide services and equipment

to EcoStim. These communications and negotiations included the opportunity for Arizona Turbine to refurbish EcoStim's frac-pumps and frac-spreads.

30.     Vericor Power Systems, Inc. ("Vericor") is a manufacturer of aeroderivative marine and industrial gas turbines based in Alpharetta, Georgia. At all material times, Vericor was and continues to be a potential customer for products and services offered by Arizona Turbine, and otherwise was a potential valuable source of business development for Arizona Turbine.

31.     On or about October 2016, Vericor and Arizona Turbine engaged in communications and negotiations toward finalizing contracts wherein Arizona Turbine would partner with Vericor in the development of certain frac-pump technology and/or intellectual property.

32.     Honeywell International, Inc. ("Honeywell") is a large multinational conglomerate, and a major U.S. Department of Defense contractor. At all material times, Honeywell International, Inc., or its subsidiaries, was a valuable source of potential business development for Arizona Turbine.

33.     As of the end of 2016, Arizona Turbine was engaged in the industrialization of the AGT-1500 turbine engine for use in the M1 Abrams series of tanks, the U.S. Army's main battle tank. Honeywell manufactures the AGT-1500, and holds the contract to refurbish some 3000 engines for the Department of Defense. As of November, 2016, Honeywell and Arizona turbine were engaged in communications and negotiations regarding Arizona Turbine contracting with Honeywell to provide valuable supplies and services in this project.

### Arizona Turbine's Products are Significantly Distinct from the Claims of the '078 Patent

34.     All the foregoing-described business opportunities revolved around Arizona Turbine integrating turbines into other products and/or machines, including its iTxc technology, and/or its TFM technology, as described in more detail in the following paragraphs.

35.     None of the foregoing-described business opportunities implicated the '078 patent in any way. The '078 patent concerns a self-configuring turbine controller. The design for Arizona Turbine's turbine controller, "the iTxc", which was offered in conjunction with all of the foregoing-described business opportunities, is configured around turbine-control theory that pre-dates the '078 patent by several decades.

36.     The claims of the '078 are limited to digital engine controllers ("DEC") that enable compatibility with multiple different gas turbine engine variants. The claims of the '078 patent is not directed to any DEC which does not enable this multi-compatibility.

37.     The claims of the '078 patent is limited to DECs that receive data from a gas turbine engine, and which respond to that data to improve control performance.

38.     No facts were known to McIntyre to support the reasonable belief that Arizona Turbine, ATS, Crowe, or Braccio directly or indirectly infringed on any claim of the '078 patent.

39.     The following paragraphs describe how the products marketed by Arizona Turbine, in conjunction with Crowe, Braccio, and/or ATS, do not in any way infringe on the '078 patent, either directly or indirectly.

40.     Arizona Turbine markets a single product that incorporates a DEC: the iTxc. The iTxc does not incorporate a DEC compatible with multiple variants of gas turbine engines.

41.     The iTxc has no need for, and does not receive, engine-specific data, as its DEC is not multi-compatible and cannot be used with multiple variants of gas turbine engines.

42.     The iTxc technology is limited to one engine and that engine's parameters, which is hard-coded into its DEC software. The iTxc DEC is not responsive to engine-specific data because it is designed to receive none. The iTxc is not capable of controlling a gas turbine engine it is not pre-programmed to manage.

43.     Besides the iTxc, Arizona Turbine's other principle product is a software program known as "Turbine Frac Manager," a/k/a "TFM."

44.     The claims of the '078 patent are not present in the TFM software in the following ways:

   a) TFM is not a digital engine controller, nor a physical device or implement of hardware, and it is not capable of controlling a gas turbine engine.

   b) TFM has no interface whatsoever with any gas turbine engine.

   c) TFM receives no information from, or relevant to, the operation of a gas turbine engine.

   d) TFM does not control or interact with any gas turbine engine.

   e) TFM does not function as a digital engine controller.

45.     At no time since TPT acquired and interest in the '078 patent, did Arizona Turbine, or any of the other plaintiffs herein, market any other product that could reasonably be believed to infringe on the '078 patent.

### McIntyre Seeks to Eliminate the Threat of Competition Posed by the Plaintiffs

46.     McIntyre's main business is MTT, which, like Arizona Turbine, designs, engineers, and manufactures gas powered turbines for various industrial applications, but primarily in the oil & gas industry.

47.     TPT/MTT, as a de facto joint venture, competes directly against Arizona Turbine for valuable contracts with EcoStim, Inc. and other customers.

48.     The industrial products and applications offered by Arizona Turbine are qualitatively better and more competitive than those offered by MMT, because of the superior knowledge, skill, and technical acumen brought to Arizona Turbine by Crowe.

49.     The growth and future success of Arizona Turbine represents a direct threat to MTT/TPT and McIntyre. EcoStim, Inc. and other companies have indicated their preference to contract

with Arizona Turbine rather than MTT/TPT because of Arizona Turbine's more competitive

price and superior reputation for quality.

50.    Because of this competitive threat, McIntyre sought to drive business away from Arizona

Turbine by communicating to Arizona Turbine's customers that Arizona Turbine had violated

TPT's patent, and that doing business with Arizona Turbine would expose those customers to

litigation.

51.    On November 10th, 2016, McIntyre sent an email to the President and CEO of EcoStim.

That correspondence alleges the following:

      a.    "David Crowe, Ken Braccio and their related companies are in direct violation of
           [the '078] patent.

      b.    Crowe and Braccio misrepresented ownership of technology owned by TPT.

      c.    AZ Tech and ATS are violating a restraining order by doing any work for
           EcoStim.

That email is attached to this complaint as Exhibit "A."

52.    On November 15th, 2016, Rick Clinton, the CEO of Vericor sent a message to Crowe

reading as follows: "Information brought to my attention suggests there is some dispute

regarding the design rights of the engine control system being used on your system. I'd prefer to

keep Vericor out of this sticky subject for now. Hope you can understand." (Attached as Exhibit

"B"). On information and belief, Mr. Clinton's perceptions regarding Arizona Turbine's rights to

its designs were formed by false and misleading information disseminated by McIntyre.

53.    On November 17th, 2016, McIntyre again emailed the president and CEO of EcoStim to

inform them that their work with Arizona Turbine et al. "will most certainly effect share prices

and the future of Ecostim's operating with regards to our patented control technology." That

email is attached hereto as Exhibit "C."

54.   On November 30th, 2016, an officer of EcoStim wrote to Crowe, regarding McIntyre's November 17th email, "this is very disturbing. Your ongoing dispute with Ted [McIntyre] is impacting our ability to raise capital. Please resolve as quickly as possible." That email is attached hereto as Exhibit "D."

55.   On various occasions during this time period, McIntyre called into EcoStim shareholder meetings to repeat these threats about his patent claims. On more than one occasion, McIntyre expressly indicated to EcoStim that he would not press any patent claims against Arizona Turbine if EcoStim contracted with TPT/MTT rather than Arizona Turbine.

56.   On January 13th, 2017, Greg Mier, acting as patent counsel for TPT sent a demand letter to EcoStim that contained the following vague and unsupported allegations:

   a.   That the '078 patent relates "to digital engine controllers that are compatible with turbine engines."

   b.   "We have reason to believe that [EcoStim] have used, sold, offered for sale, and/or licensed digital engine controllers in your line of business. We also have reason to believe that these activities constitute infringement of the '078 patent."

That correspondence is attached hereto as Exhibit "E".

57.   On January 17th, 2017, McIntyre again emailed officers of EcoStim, forwarding a temporary restraining order from the 16th Judicial District Court in St. Mary Parish that concerns contract allegations, and falsely stating that such restraining order is regarding "AZTTECH, ATS and the related parties involved with regards to our patented and proprietary IP." That correspondence is attached hereto as Exhibit "F".

58.   On information and belief, during this same period, from November, 2016 through January, 2017, McIntyre or his agents made similar allegations regarding patent infringement to Thomas Hart, the Vice President of Honeywell International's defense and space division, in Phoenix, Arizona. As a direct result of these communications to Honeywell, Arizona Turbine

was not awarded a contract to refurbish the Army's M-1 tank turbines, as described in paragraph 33, *supra.*

59.    McIntyre, TPT, and/or MTT did not have any good faith basis for making the communications to Arizona Turbine's customers as described above. At no time did McIntyre, Mier, TPT, and/or MTT possess any information to support their allegations that Arizona Turbine, ATS, Crowe, and/or Braccio had violated, or were likely to violate the '078 Patent, or that the plaintiffs were otherwise unlawfully making use of the any intellectual property owned by any of the defendants.

### IV.    Causes of Action

60.    The foregoing factual allegations are re-plead and incorporated hereto as if written *in extenso.*

61.    The foregoing described communications were false, made to the customers of Arizona Turbine and ATS in bad faith, and for the purpose of destroying Arizona Turbine's business relationship with these customers. Alternatively, each of these communications was made with a reckless disregard for the truth, and McIntyre knew or should have known that such communications would result in injury to Arizona Turbine, ATS, Crowe, and Braccio.

62.    As a direct result of the communications from McIntyre and his agents as detailed herein, David Crowe and Kenneth Braccio have suffered general and specific damages, including mental anguish and reputational damage.

63.    As a direct result of the communications from McIntyre and his agents as detailed herein, Arizona Turbine has suffered loss of revenue and other direct economic damages. Specifically, Arizona Turbine has not been awarded contracts with EcoStim, Vericor, Honeywell, and others,

and has otherwise suffered business loss because of McIntyre's communications as described herein.

64.     As a direct result of the communications from McIntyre and his agents as described herein, ATS has been deprived of the business opportunity to participate in contracts with Arizona Turbine, and from otherwise deriving benefits therefrom.

### Count One: La. R.S. 51:1409, The Louisiana Unfair Trade Practices Act

65.     McIntyre's conduct as described above constitutes unfair trade practices within the meaning of La. R.S. 51:1409, the Louisiana Unfair Trade Practices Act.

66.     A private right of action under the Louisiana Unfair Trade Practices and Consumer Protection Law extends to business competitors, consumers, and any other persons who assert a loss of money or property as a result of the use or employment by another person of an unfair or deceptive methods, acts, or practices. *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.* So.3d 1053 (La. 4/23/10).

67.     The elements of a cause of action under La. R.S. 51:1409 are: (1) an unfair or deceptive trade practice; (2) that impacts a consumer, business competitor, or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss. *Who Dat Yat, LLC v. Who Dat? Inc.,* 2011 WL 39043, at *3 (E.D. La. 2011).

68.     McIntyre's communications, as described above, have been unfair and deceptive, have impacted Arizona Turbine and ATS, and have caused ascertainable loss to Arizona Turbine, ATS, David Crowe, and Kenneth Braccio. Therefore, McIntyre should be made liable for damages, court costs, and attorney's fees under La. R.S. 51:1409.

### Count Two: Defamation Under Louisiana Law

69.    McIntyre's conduct as described in the foregoing paragraphs constitutes defamation under Louisiana Law: McIntyre made false statements of facts to third parties for the purpose of damaging the reputation of Arizona Turbine, ATS, David Crowe, and Kenneth Braccio, and injuring Arizona Turbine, ATS, David Crowe, and Kenneth Braccio.  Alternatively, McIntyre made false statements of facts that he knew or should have known to be false, and which he knew or should have known would result in injuries to Crower, Braccio, Arizona Turbine and ATS.

### Count Three: Unfair Competition Under Arizona Law

**70.**    McIntyre's conduct, as described in the foregoing paragraphs, constitutes unfair competition under the common law of the State of Arizona, and in violation of A.R.S. § 44-1522.

### Count Four: Bad Faith Patent Infringement Claim Under Arizona Law

71.    McIntyre's conduct, as described in the foregoing paragraphs, constitutes unfair and deceptive trade practices, in violation of A.R.S. § 44-1421 *et seq.*, the Arizona Patent Troll Prevention Act. As described in the foregoing paragraphs, McIntyre acted in bad faith in asserting patent infringement against Arizona Turbine, ATS, David Crowe, and Kenneth Braccio, and in communicating the same to EcoStim, Vericor, Honeywell, and others.

### Count Five: Tortious Interference with Business Expectancy Under Arizona Law

72.    McIntyre's conduct as detailed above constitutes tortious interference with business expectancy under Arizona Law. Arizona Turbine and ATS had valid business expectancy with EcoStim, Vericor, Honeywell, and others. McIntyre, MTT, and TPT had knowledge of the relationship or expectancy on the part of Arizona Turbine, ATS, and the other companies as described herein. McIntyre's conduct caused a termination of the relationship or expectancy

between Arizona Turbine, ATS, and the other companies as described herein, and which has resulted in damage to Arizona Turbine and ATS. McIntyre's actions were both intentional and improper. *See, ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.* F.Supp.2d 905 (D. Arizona, 2012).

## Count Six: Defamation Under Arizona Law

73.     McIntyre's conduct, and that of his agents, as detailed above constitutes defamation under Arizona Law, because it represents a tortious invasion of the interests and reputation of Arizona Turbine, ATS, David Crowe, and Kenneth Braccio. McIntyre's bad faith allegations that Arizona Turbine, ATS, Crowe and Braccio were in violation of the '078 Patent was knowingly false, and defames the plaintiffs.  McIntyre acted in reckless disregard of these matters, and/or acted negligently in failing to ascertain the truth with respect to this patent claim. *Yetman v. English,* 811 P.2d 323 (AZ, 1991).

## McIntyre, TPT, and MTT Should Be Jointly Liable for Damages

74.     At all material times, McIntyre acted in cooperation and coordination with TPT and MTT to carry out the injurious acts described herein, and did so for the mutual benefit of TPT, MMT, and himself. TPT and MTT otherwise actively aided and abetted McIntyre's conduct as described herein by allowing McIntyre to carry out the acts described herein in the name of TPT and MTT, materially supported McIntyre's unlawful activities described herein by allowing the use the offices and communications systems of MTT and TPT, and otherwise facilitated McIntyre's conduct. Accordingly, TPT and MTT should be jointly liable with McIntyre for all damages, pursuant to the laws of Louisiana and Arizona.

## VII. Request for Jury Trial

75.     Plaintiff prays that all claims herein be adjudicated in a trial by jury.

## VIII. Prayer of Relief

76.     Wherefore, Plaintiffs pray that Defendants be cited and made to answer this complaint.

Plaintiffs pray that after due proceedings are held a money judgment enter in favor of Plaintiffs

and against Defendants for general damages, actual economic damages, and attorneys' fees.

Plaintiff pray for all such further relief justified in the premises.


Respectfully submitted,

**Young, Cotter & Meade**

/s/ Adam G. Young, 30124
315 South College Rd., Ste. 163
Lafayette, Louisiana 70503
337-261-8800
337-234-3133 (fax)
adam@ycmlawfirm.com


John Alden Meade, 29975
Laura N. Buck, 34467
909 Poydras St., Suite 1600
New Orleans, Louisiana 70112
504-799-3100
504-814-1487 (fax)
jameade@ycmlawfirm.com
laura@ycmlawfirm.com

Exhibit 3

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## REASONS FOR JUDGMENT

This matter came before the Court on June 15, 2017, on Motion to Dissolve Preliminary Injunction and For Damages and other motions that were ruled upon by the Court, the Court took under advisement the Motion to Dissolve Preliminary Injunction and For Damages.

Turbine Powered Technology L.L.C. filed suit against David Crowe, Kenneth Braccio, Donald Foley, George Jackson, Kent Ellsworth, Arizona Turbine Technology, L.L.C., Arizona Turbine Technology, Inc., Advanced Turbine Services, L.L.C. and Turbine Integrated Power Systems, L.L.C. for breach of contract, misappropriation of intellectual property, violation of the Louisiana Unfair Trade Practices Act, Louisiana Uniform Trade Secrets Act and other claims after the Defendants misappropriated intellectual property belonging to Turbine Powered Technology, L.L.C. to the benefit of the defendants. Following the filing of the petition, Turbine Powered obtained a Temporary Restraining Order against the Defendants which was made a Preliminary Injunction after a hearing on the matter on January 3, 2017.

Article 3601 of the Louisiana Code of Civil Procedure states in part that an injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law.

The preliminary injunction is designed to and serves the purpose of preventing irreparable harm by preserving the status quo between the parties pending a determination on the merits of the controversy. Schwegmann Bros. G.S. Markets v. Louisiana Milk Com'n, 290 So.2d 312 (La. 1974).

Preliminary injunction is extraordinary remedy that may only be granted if plaintiff establishes four elements: (1) substantial likelihood for success on merits; (2) substantial threat that plaintiff will suffer irreparable injury if injunction is denied; (3) that threatened injury outweighs any damage that injunction might cause defendants; and (4) that injunction will not disserve public interest. Technical Indus. v. Banks, 419 F.Supp.2d (W.D. La. 2006).

Louisiana Code of Civil Procedure 3607 states in part that an interested person may move for the dissolution or modification of a temporary restraining order or preliminary injunction.

**SCANNED**

1

In the Technical Indus. v. Banks, *supra*, case, the plaintiff claimed that its method, technique, and procedure used to inspect pipe in the oil and gas industry, especially its Visonic TM, are trade secrets under Louisiana Law. The Court considered whether the plaintiff had a legally protectable trade secret, whether an express or implied contractual or confidential relationship existed between parties that obliged party receiving secret information not to disclose it; and whether the party receiving secret information wrongfully breached its duty of trust or confidence by disclosing or using information to plaintiff's injury. LSA-R.S. 51:1432-1433. The Court found that Technical had a trade secret under the law and that Banks engaged in a threatened misappropriation of it trade secret and, thus, Technical had a substantial likelihood for success under the Louisiana Uniform Trade Secrets Act.

At the hearing on the Motion to Dissolve, the Defendants argue that under La. Code of Civil Procedure Art. 3607 the defendants must show that there is no likelihood of irreparable harm, that there is an adequate remedy at law, that the plaintiff cannot prevail on the merits and that there is no bond. Therefore, at issue in this case is whether the requirements for granting an injunction were met at the time of the granting of the injunction.

David Crowe testified that he was not part of the Vendor Agreement between Turbine Powered Technology and Advanced Turbine Systems. However, he does know about portions of the agreement. He did not dispense with the requirements of showing irreparable harm or bond. He testified that Advanced Turbine Systems is an engine refurbishing company in Connecticut that did business with Tucson Embedded Systems. He was not a part of the agreement between Turbine Powered Technology and Kenneth Braccio, the owner of Arizona Turbine. He does know Braccio and has done business with him over the years and knows of the agreement between Turbine Powered Technology and Advanced Turbine Systems but he was not a part of the agreement.

He stated that the Non-Disclosure Agreement between Tucson Embedded Systems and Greenfield did not dispense with the requirement of showing harm or adequate remedy at law. He knew that Greenfield was in bankruptcy and that he worked for Greenfield. He further stated that Greenfield has not placed a demand upon him based upon the agreement nor has Tucson Embedded Systems made a demand upon him about the agreement.

David Crowe testified that he could not work for Vericore without violating the injunction. The injunction concerns the use or conveyance of license and if the injunction holds then he will not be able to get work.

SCANNED

2

David Crowe cannot identify the intellectual property in the injunction. There is further no reference to patent or copyrights. However, Tucson Embedded Systems owns the trademark for the Cruz Track controller, which is evidently like the controller used by Turbine Powered Technology. Since David Crowe left Tucson Embedded Systems he no longer uses the Cruz Track controller. If someone made a demand upon him about using the Cruz Track controller, he would stop using it. David Crowe states that the injunction is too broad. He believes that the injunction prohibits him from using controls for fracking in the oil and gas industry.

Crowe states he first met Kenneth Braccio when he worked for Honeywell but they are not business partners and not owners of Arizona Turbine Technology, Inc. David Crowe owns Arizona Turbine Technology, Inc. Arizona Turbine Technology, Inc. performed fracking technology with Eco-Stim in June 2013. Eco-Stim contacted him to re-engineer what was purchased from Greenfield. He worked on pump controls not engine controls.

Crowe is not aware of any damages to Turbine Powered Technology and Ted McIntyre. He did not disclose confidential information gained while employed by Greenfield or Turbine. He sold hydraulic fracturing equipment to Advanced Turbine Systems consisting of turbine engine controls. The sales by Tucson Embedded Systems did not relate to hydraulic fracturing. Crowe and the other defendants do not own Tucson Embedded Systems. He claimed he has worked on the technology since 1989 and he did not gain the technology from Turbine Powered Technology.

Crowe was formerly employed by Tucson Embedded Systems and Tucson Embedded Systems ceased doing business in October 2015. Tucson Embedded Systems wanted to be a part owner of Arizona Technology and he wanted full ownership in company so when he left Tucson Embedded he took full ownership of Arizona Technology and he signed agreements not to take technology from Tucson Embedded Systems. Crowe took the Eco-Stim contract which was proprietary in nature. Crowe gave the contracts with Raytheon and Honeywell to Tucson Embedded Systems. He is not in default with any of the agreements with Tucson Embedded Systems.

The Buyout Agreement states that Crowe was employed by Tucson Embedded Systems from 1997-2015 and that he worked on two projects with Ted McIntyre and Turbine Powered Technology, being IDEC and development of additional controls. He stated the parties developed intellectual property that is not the property of Turbine Powered but of Tucson Embedded Systems.

Ted McIntyre, owner of Turbine Powered Technology, testified that Turbine Powered Technology owns a license for agreement to use the technology and on October 10, 2014 he sent

SCANNED

a letter to Eco-Stim stating that the equipment purchased from Greenfield by Eco-Stim would not violate Turbine Powered Technology's intellectual property if used "as is."

The intellectual property is for turbine driven hydraulic fracturing in t55 and tf40 turbine engines and t53 engines and power generation in the oil and gas industry. Turbine Powered Technology has been assigned the rights to patent and trademarks for the intellectual property.

McIntyre testified that the claim is not a patent or copyright claim but is for intellectual property for which trade secrets is a part of. He is not suing under trademark rights. The trade secrets in the injunction is continued in the digital engine controls for turbine fracturing equipment. Crowe has violated the trade secrets by advertising on his website that he has the rights to the controls for turbines for oil and gas fracturing. He testified that Turbine Powered Technology is the first and only company to use turbine engines for fracturing in the oil and gas industry.

He stated that David Crowe was operating under a Vendor Agreement and that Crowe filed for patents after he learned the technology from Turbine Powered when he returned to Arizona. In litigation in Arizona, all the patents were assigned to Turbine Powered Technology.

When asked under cross-examination what was involved in taking an engine from aero use to hydraulic fracturing use, McIntyre went to great lengths to explain how the turbine engines work in the hydraulic fracturing use. He stated that the turbine engines consist of two shafts, one compressor and the power turbine which is driven by exhaust gas. In helicopter use, the output shaft rarely stalls and he developed a brake to stop the output shaft. He adapted turbines for non-traditional applications. He does high pressure pumping and water pumping by running turbines off speed. Controlling turbine is through fuel and determine power by how much fuel and it has exhaust going into engine. It took technology developed in house and patents, which are now assigned to him, which were derived from his work product.

On re-direct, David Crowe stated that there is no difference between turbine control in a helicopter and turbine control in fracturing. The difference is the development of a unique controller that uses gas and diesel. He states that it is calculating plungers and how to calculate pump by r.p.m. The controller controls the output on the shaft.

David Crowe states that the injunction impedes his business and that his damages are in the tens of millions of dollars.

The defendants had the burden of proof to show cause why the injunction should be dissolved or modified in this case. The defendants assert that the preliminary injunction seeks to prevent the defendants from competing with Turbine Powered Technology in the hydro-fracking

SCANNED

4

marketplace and that Turbine Powered Technology is not at risk of suffering irreparable harm absent the injunction; that Turbine powered Technology has an adequate remedy at law and that they cannot show that they are likely to prevail on the merits. Further the requirement of security has not been met by Turbine Powered.

Whereas, Turbine Powered Technology to maintain the injunction must show that absent the continuation of the preliminary injunction they will be subject to irreparable harm and that they are without an adequate remedy at law and that they are substantially likely to prevail on the merits.

At the hearing, Ted McIntyre testified that should the injunction lapse then the intellectual property that he has so closely held would be lost and if lost it can never be retrieved. Further any income derived from the intellectual property would be lost as well as losses to their business reputation.

In the alternative, the Defendants state that should the injunction stand, then the plaintiff must provide security unless an exception is provided by law. Louisiana Code of Civil Procedure art. 3610 states a preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law.

The Court finds that security is not necessary in this matter as all the agreements sued upon if security was not necessary and, in addition, as in the Technical case, *supra*, because this matter involves trade secrets no security is necessary under the law.

The Court has reviewed the record in this case as well as the testimony and evidence in the hearing on January 3, 2017 when the Preliminary Injunction was issued. Based upon that review and this hearing on the Motion to Dissolve Preliminary Injunction, the Court finds that Defendants failed to carry their burden of proof sufficiently to grant the Motion to Dissolve the Preliminary Injunction. Therefore, the Motion to Dissolve Preliminary Injunction is denied.

The Court assesses cost to Defendants.

DONE AND SIGNED this __17__ day of ___July___, 2017, at Franklin, St. Mary Parish, Louisiana.

_____
**GREGORY P. AUCOIN**
**DISTRICT JUDGE**

RECEIVED AND FILED

SCANNED

JUL 2 0 2017

JUL 17 2017
_____
**Dy. Clerk of Court**

5

TURBINE POWERED
TECHNOLOGY L.L.C.

16TH JUDICIAL DISTRICT COURT

VERSUS NO. 130379, DIV. "F"

PARISH OF ST. MARY

DAVID CROWE, ET AL

STATE OF LOUISIANA

*************************************************************************

## JUDGMENT

This matter came before the Court on June 15, 2017, on Motion to Dissolve Preliminary

Injunction and For Damages by David Crowe, Kenneth Braccio, Arizona Turbine Technology,

Inc., Advanced Turbine Services, L.L.C. and Donald I. Foley.

PRESENT:    Dan C. Panigiotis and Holden Hoggatt, Attorneys for Turbine Powered
Technology, L.L.C., and Ted McIntyre with Turbine Powered Technology.

Adam G. Young, John Alden Meade and S. Patrick Skiles, Attorneys for
David Crowe, Kenneth Braccio, Arizona Turbine Technology, Advanced
Turbine Service, L.L.C. and Donald I. Foley, and David Crowe.

The Court, having heard the arguments of counsel, testimony of witnesses and reviewed

the pleadings and memoranda finds in accordance with reasons for judgment filed herein.

IT IS ORDERED, ADJUDGED AND DECREED that the Motion to Dissolve Preliminary

Injunction and For Damages is denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that cost in this matter is

assessed to Defendants equally.

Done and signed this __17__ day of July, 2017, in Franklin, St. Mary Parish, Louisiana.

**GREGORY P. AUCOIN**
**DISTRICT JUDGE**

RECEIVED AND FILED

JUL 17 2017

Dy. Clerk of Court

SCANNED

APR 11 2018

6

Exhibit 4

# SUPREME COURT OF LOUISIANA

## NO. _____

TURBINE POWERED TECHNOLOGY, LLC

VERSUS

DAVID CROWE, KENNETH BRACCIO, DANIEL FOLEY, GEORGE JACKSON, KENT ELLSWORTH, ARIZONA TURBINE TECHNOLOGY, INC., ADVANCED TURBINE SERVICES, LLC AND TURBINE INTEGRATED POWER SYSTEMS, LLC

———————————

On application for Writ of Certiorari or Review to the Court of Appeal – First Circuit, Granting an Appeal from the Sixteenth Judicial District Court, Parish of St. Mary, State of Louisiana and Rendering Judgment
Docket Nos. 2018-ca-0881 and 2018-cw-0537 and
Docket No. 130379

———————————

**Application of Turbine Powered Technology, LLC for Writ of Certiorari or Review to the Court of Appeal – First Circuit**

D.C. PANAGIOTIS (#15032)
THE PANAGIOTIS FIRM
1540 W. Pinhook Rd.
Lafayette, LA 70503
Telephone: (337) 264-1516
Fax: (337) 264-1455
dan@panalaw.com

**Attorney for Turbine Powered Technology, LLC**

-CIVIL CASE-

<u>**INDEX**</u>

INDEX ......................................................... i

APPENDIX ..................................................... ii

TABLE OF AUTHORITIES AND CITATIONS ....................... iii

STATEMENT OF RULE 10 § 1(a) WRIT-GRANT
CONSIDERATIONS ............................................. v

    A.  Conflicts with this Court and other Louisiana Circuit Courts ........ v

    B.  Conflicts with Interpretation of Analogous Federal Law ........... vi

    C.  Leaves Significant Unresolved Issues of Law .................. vii

    D.  Makes Erroneous Interpretation or Application of Laws ......... vii

    E. Is a Gross Departure from Proper Judicial Proceedings ......... vii

MEMORANDUM IN SUPPORT OF WRIT APPLICATION ............ 1

STATEMENT OF THE CASE ..................................... 1

STATEMENT OF FACTS ........................................ 4

ASSIGNMENT OF ERRORS ..................................... 9

SUMMARY OF ARGUMENT ..................................... 9

ARGUMENT .................................................. 10

    1.    Art. 3612 prohibits any appeal from injunction orders after 15 days
        from the date such orders were entered ..................... 10

    2.    The Court below was without jurisdiction to review the original
        injunction order as the only judgment from which defendants
        appealed was the judgment denying the Motion to Dissolve
        issued on April 2, 2018 ..................................... 11

    3.    The Appellate Court applied the wrong standard of review
        to the Trial Court ......................................... 12

    4.    The Court below erred by failing to apply the proper burden of
        proof to defendants under art. 3607 which required defendants
        to show a change of circumstances in order to dissolve
        a preliminary injunction ................................... 15

    5     The Court below erred by failing to treat the Motion to Dissolve
        on its own merit as a separate proceeding apart from the
        original injunction ........................................ 16

    6.    The Appellate Court violated 11USC Sec. 362 ............... 18

CONCLUSION ................................................ 19

VERIFICATION .............................................. 20

|

## APPENDIX

Judgment denying Motion to Dissolve Preliminary Injunction
(Docket No. 130379; 16th JDC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 001

Ruling and Judgment on Appeal
(Docket No. 2018-ca-0118 and 2018-cw-0537;
First Circuit Court of Appeal) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 008

# TABLE OF AUTHORITIES

## Citations

_Allied Navigation Co. v. International Organization of Masters, etc._,
272 So. 2d 23 (La. App. 4th Cir. 1973) .......................... vi, 16

_A&M Records v. Napster, Inc._, 284 F. 3d 1091 (9th Cir. 2002) ............... vi, 15

_Arceneaux v. Domingue_, 365 So.2d 1330, 1333 (La. 1978) .......... 13

_Billedeaux Hearing Center, LLC v. Urban-Kingston_, No. 2015-653
(La. App 3d Cir. 01/13/16), 182 So. 3d 1280 ... ............ v, vi, 11, 12, 15, 17

_Burnham Broadcasting Company v. Williams_, No. 93-0409
(La. App. 4th Cir. 12/16/93); 629 So. 2d 1335, 1338 .......... 12

_Canter v. Koehring_, 283 So.2d 716, 724 (La. 1973) ..... 13

_Corumia v. Broadhurst_, 584 So. 2d 377, 379 (La. App. 3d Cir. 1991) ..... 17, 18

_Ex., JODI Props., LLC v. Cochran_, No. 205-1327, 2016 La. App. Lexis 236
(La. App. 1st Cir. 06/03/16) ........................................ v, 11

_Family Care Serv. V. Owens_, No. 45,505 (La. App. 2d Cir. 08/11/10),
46 So. 3d 234, 239 .. .......... 12

_Federal National Mortgage Association v. O'Donnell_, 446 So. 2d 395, 399
(La. App. 5th Cir. 1984) ..... 12

_Fireston v. Trean_, 442 So. 2d 757, 761 (La. App. 1st Cir. 1983) ..... 12

_General Motors Acceptance Corporation v. Daniels_, 377 So. 2d 346, 348
(La. 1979) ..... 12

_Gonsoulin v. Smith_, 360 So. 2d 215 (La. App. 4th Cir. 1978) ............. v, 11, 12

_In Re: Lazarus Burman Associates_, 161 BR 891 (Bankr. EDNY 1993) ..... 18

_Killeen v. Jenkins_, No. 98-C-2675 (La. 11/5/99), 752 So. 2d 146 ..... v, 10

_Lake Bistineau Preservation Society, Inc. v. Seals_, No. 40, 583 (La. App. 2d Cir.
2/10/06), 922 So. 2d 768, writ denied, 2006-0620 (La. 5/26/06), 930 So. 2d 27 . vii, 12

_McCartney v. Integra National Bank North_, 106 F. 3d 506 (3d Cir. 1997) ..... 18

_Minnis v. Transutates Petroleum, Inc._, 234 So. 2d 243 (La. App. 2d Cir. 1970) .. v, 11, 12

_Pro-Edge L.P. v. Gue_, 419 F. Supp. 2d 1064, 1089 (N.D. Iowa 2006) ............ vi, 15

_Rasford v. Bastrop Run Fire_, No. 44,915 (La. App. 2d Cir. 12/09/09),
26 So. 3d 963, 968 ..... 12, 16

Case 4:19-bk-04406-BMW   Doc 194   Filed 11/14/19   Entered 11/14/19 15:05:09   Desc
Main Document     Page 58 of 106

*River Parishes Fin. Serv. LLC v. Gaines*, No. 07-641 (La. App. 5th Cir. 02/06/08),
979 So. 2d 518, 521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989) . . . . . . . . . . . . . . . . . . . . . . . 13

*State Through La. State Bd. of Exam'rs of Psychologists of the Dep't of
Health & Huma Servs. v. Atterberry*, 95-0391 (La. App. 1 Cir. 11/09/95);
664 So. 2d 1216, 1220 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Watson v. State Farm Fire & Casualty Ins. Co.*, 469 So.2d 967 (La. 1985) . . . 13

*Webster Bus. Credit Corp. v. Bradlen Lumber Co.*, 2009 U.S. Dist. Lexis 25885,
2009 WL 708530 (W.D. Ark. 3/16/09) . . . . . . . . . . . . . . . . . . . . . . . . . . . vi, 15

*Werner Enterprises, Inc. v. Westend Dev. Co.*, 477 So. 2d 829
(La. App. 5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, 11

*Wolf Plumbing, Inc. v. Matthews*, No. 47, 822 (La. App. 2d Cir. 09/25/13),
124 So. 3d 494, 498 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Authorities:**

*Corpus Juris Secondum* . . . . . . . . . . . . . . . . . . . . . . . . . . . v, viii, 11, 17

La. Code of Civil Procedure Art. 3612 . . . . . . . . . . . . . . . . . . . . . . . v, vii, viii, 9, 10, 11, 19

La. Code of Civil Procedure Art. 3607 . . . . . . . . . . . . . . . . . . . . . vi, vii, viii, 4, 9, 10, 15, 16

La. Code of Civil Procedure Art. 963 . . . . . . . . . . . . . . . . . . . . . . 10, 17, 19

Fed. Rule of Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . vi, 10, 15

11 USC 362 . . . . 3, 9, 18, 19

## STATEMENT OF RULE 10 § 1(a) WRIT-GRANT CONSIDERATIONS

This case is appropriate for review by this Supreme Court on the grounds that the Appellate Court below has rendered an opinion and judgment which:

### A. Conflicts with this Court and other Louisiana Circuit Courts

1. La. Code of Civil Procedure Art. 3612 mandates a 15 day deadline for filing an appeal from the issuance of an Order or Judgment pertaining to a preliminary injunction. This Court in *Killeen v. Jenkins*, No. 98-C-2675 (La. 11/5/99), 752 So. 2d 146, affirmed that 15 day deadline. All other circuit courts have similarly affirmed the 15 day deadline and have *dismissed* appeals where that deadline has not been met.[1]

The defendants below failed to take a timely appeal from the Order granting the Preliminary Injunction in this matter on January 5, 2017. Eschewing Louisiana law and citing only the *Corpus Juris Secondum*, the Appellate Court ignored Article 3612 . The established precedent of this Court and all other courts, including itself, and improperly reviewed only the evidence of the original Order granting Preliminary Injunction and *not* the defendants' Motion to Dissolve the Preliminary Injunction filed months after the deadline had passed. This has created a ***conflict*** with this Court and between the other appellate courts of this state regarding the application of Art. 3612 which needs to be resolved.

2. The Appellate Court below also created a ***conflict*** with other circuit courts of this state by not reviewing the evidence produced at the trial on the Motion to Dissolve in the trial court below. In *Billeadeaux Hearing Center, LLC v. Urban-Kingston*, No. 2015-653 (La. App 3d Cir. 01/13/16), 182 So. 3d 1280, the Third Circuit was presented with an appeal from a Motion to Dissolve a Preliminary Injunction. That court noted that the defendant had not appealed the original Judgment granting the Preliminary Injunction and failed to take any action within the 15 day deadline. Because no appeal was timely taken, the Third Circuit found it was *without jurisdiction* to consider the trial court's granting of the

---

[1] *E.g., JODI Props., LLC v. Cochran*, No. 205-1327, 2016 La. App. Lexis 236 (La. App. 1st Cir. 06/03/16); *Morris v. Transtates Petroleum, Inc.*, 234 So. 2d 243 (La. App. 2d Cir. 1970); *Billeadeaux Hearing Center, LLC v. Urban-Kingston*, No. 2015-653 (La. App 3d Cir. 01/13/16), 182 So. 3d 1280; *Consolidata v. Smith*, 160 So. at 315 (La. App. 4th Cir. 1983); *Werner Enterprises, Inc. v. Westend Dev. Co.*, 477 So. 2d 829 (La. App. 5th Cir. 1985).

Preliminary Injunction. 182 So. 3d at 1282. That court found that the evidence on the Motion to Dissolve must stand on its own and the defendant presented "no new change of circumstances to support her Motion to Dissolve." *Id.* at 1283. The trial court was affirmed. Likewise, in *Allied Navigation Co. v. International Organization of Masters, etc.*, 272 So. 2d 23 (La. App. 4th Cir. 1973), an appeal was taken from a Motion to Dissolve a Preliminary Injunction. The Fourth Circuit noted that no timely appeal was taken from the original Judgment granting the Preliminary Injunction. Because a timely appeal was not taken, the court found that it was not appropriate to consider the merits of the original rule for preliminary injunction. 272 So. 2d at 25. The Motion to Dissolve was set apart and reviewed on its own. *Id.*

The failure of the Appellate Court below to consider defendants Motion to Dissolve on its own merit has created an ***irreconcilable conflict*** with the Third and Fourth Circuits.

### B. Conflicts with Interpretation of Analogous Federal Law

La. Code of Civil Procedure Art. 3607, allowing a party to bring a motion for the dissolution of a preliminary injunction, is based in part upon Fed. Rule of Civ. P. 65. Pursuant to Rule 65, a District Court may modify a preliminary injunction ***only*** in consideration of new facts or a change of circumstances warranting a different outcome than the court's previous issuance of the preliminary injunction. *A&M Records v. Napster, Inc.*, 284 F. 3d 1091 (9th Cir. 2002); *Webster Bus. Credit Corp. v. Bradley Lumber Co.*, 2009 U.S. Dist. Lexis 25885, 2009 WL 708530 (W.D. Ark. 3/16/09); *Pro-Edge L.P. v. Gue*, 419 F. Supp. 2d 1064, 1089 (N.D. Iowa 2006)(on a Motion to Dissolve the moving party much show a change of circumstances, which upon reevaluation, warrants a different outcome). The Louisiana Third Circuit in *Billeadeaux Hearing Center, LLC v. Urban-Kingston*, *supra*, followed that federal interpretation and affirmed the trial court denial of the defendant's Motion to Dissolve on the grounds that the defendant "presented no new change of circumstances to support her Motion to Dissolve." 182 So. 3d at 283. The Trial Court below also followed this interpretation, specifically finding that the "defendants failed to carry their burden of proof" and denied the Motion to Dissolve.

The Appellate Court below did not follow these precedents. In failing to require the defendants to show a change of facts or circumstances, the opinion below has created an irreconcilable **conflict** with the foregoing courts and interpretations.

### C. Leaves Significant Unresolved Issues of Law

L.C.C.P. art. 3607 has been cited and reported only a handful of times by the appellate courts and remains somewhat enigmatic. Only one appellate court has explained the interplay between art. 3612 and art. 3607. Prior to the opinion of the Appellate Court below, all other courts were uniform in their application of "abuse of discretion" being the standard for review of a trial court's decision. The decision below now creates confusion in this area of the law.

### D. Makes Erroneous Interpretation or Application of Laws

A judgment dissolving a Preliminary Injunction will not be overturned on appeal unless the record shows a clear abuse of the District Court's great discretion. *Lake Bistineau Preservation Society, Inc. v. Seals*, No. 40,583 (La. App. 2d Cir. 2/10/06), 922 So. 2d 768, writ denied, 2006-0620 (La. 5/26/06), 930 So. 2d 27. Nowhere in its opinion did the Appellate Court below apply that standard to the Trial Court. It appears that the First Circuit merely reviewed the facts surrounding the initial granting of the Preliminary Injunction and then substituted its own judgment in place of the Trial Court. This is an erroneous application of a well established standard of review.

The established precedent in Louisiana on a Motion to Dissolve is that a hearing is conducted, evidence taken, and the trial judge bases his decision upon the evidence before him, assessing the credibility of witnesses and exercising his discretion. By not applying those standards, the Appellate Court has erroneously interpreted Louisiana law.

### E. Is a Gross Departure from Proper Judicial Proceedings

1. In the case below, the defendants only appealed from the Trial Court's denial of their Motion to Dissolve by signing a Judgment adopting Reasons for Ruling on April 2, 2018. The defendants did not, and after 15 days could not, appeal from the original Judgment granting the Preliminary Injunction on January 5, 2017. In construing

defendants' motion and Art. 3607, the Court below found that the "sole question" to be determined at a hearing to dissolve a preliminary injunction is whether or not "on the facts disclosed, the Court should have granted the injunction in the first instance, finding that a "trial court should not consider arguments or evidence that could have been raised at the time the preliminary injunction was issued" citing only the *Corpus Juris Secondum*. This effectively **deleted Art. 3612** from the Code of Civil Procedure which only allows appeals to be taken from an Order granting a preliminary injunction within 15 days of the execution of that Order or Judgment. It also rendered superfluous the procedure of having to bring a contradictory motion under Art. 3607 and hear new evidence. In effect, the First Circuit has now allowed **unlimited time** for a party to appeal a Judgment granting a preliminary injunction; even when that Judgment was never properly before the Appeals Court in the first place. This is a gross departure from proper judicial proceedings.

2. During the pendency of the appeal and after oral argument, Defendant Crowe sought bankruptcy protection filing for Chapter 11 in the United States Bankruptcy Court, District of Arizona on April 22, 2019. At that point an Automatic Stay was entered pursuant to 11 USC 392. That stay has never been lifted. The Appellate Court below was therefore without jurisdiction to rule on Crowe's appeal. The judgment should not have issued as to Crowe, is improper and should be declared void *ab initio*.

viii

## MEMORANDUM IN SUPPORT OF WRIT APPLICATION

## STATEMENT OF THE CASE

Plaintiff/Petitioner, Turbine Powered Technology, LLC (TPT), filed its Verified Petition in 2016 requesting a Temporary Restraining Order and moving for a Preliminary Injunction alleging that the Defendants/Respondents were illegally using TPT's trade secrets, proprietary processes and intellectual property (IP) in the fields of hydraulic fracturing and power generation in the oil and gas industry to steal contracts away from TPT's existing clients and customers. R0010-0090. TPT also asserted deceptive trade practices as well as breach of contract and other claims. R0021-0040. TPT and its owner, Ted McIntyre, had developed specific processes, trade secrets and intellectual property after years of research and development creating new uses for reclaimed military turbine engines formerly used in aircraft and tanks. R0999. After investing millions of dollars of its own time and money, TPT was the only entity to ever run turbine engines for power frac pumps and electric generators remotely in the field, powered by well gas, that required neither an operator nor supervision. R1000-1004. It was this licensed process that garnered the World Oil Innovation Award in 2013. TPT soon discovered, however, that its customers were being enticed away by former subcontractors and a new entity, Arizona Turbine Technology, who professed ownership of TPT's innovative technology. The Court below reviewed the initial pleadings and attachments, granted a TRO and set a hearing on the application for preliminary injunction on January 3, 2017. R0091-0095.

The District Court conducted a hearing on January 3, 2017 wherein TPT presented its *prima facie* case for the preliminary injunction. R001. All Defendants/Appellants, except David Crowe, were served with the Notice but chose not to appear at the hearing. No objections were lodged. No request for a bond or other security was made. After taking 37 exhibits into evidence and testimonial evidence from the owner of TPT, Ted McIntyre and assessing his credibility, the court took the matter under advisement. It entered its Preliminary Injunction Order in favor of TPT on January 5, 2017. R0156-0159.

At that same time TPT moved for a preliminary default against all defendants that had been timely served, Kent Ellsworth, Kenneth Braccio, Arizona Turbine Technology,

1

LLC, Arizona Turbine Technology, Inc., Advanced Turbine Services and Turbine Integrated Power Systems, LLC. R0001. A hearing was set to confirm the default. In the interim, Long Arm service was made on Mr. Crowe. R0160-0166. All defendants then filed exceptions except Kent Ellsworth. No appeal was taken from the January 5, 2017 Judgment.

The confirmation hearing was conducted on March 6, 2017 with the court again taking testimony from Mr. Ted McIntyre, again assessing his credibility and again taking notice of the previous filing of Exhibits 1-37 admitted into evidence at the preliminary injunction hearing on January 3, 2017. R0002. The Court orally confirmed the default against defendant Ellsworth, granted permanent injunctive relief against him and took the issue of damages under advisement. *Id.* A final Judgment of Default was entered by the Court against defendant Kent Ellsworth on April 24, 2017 and awarded damages attributable to the violation of trade secrets among other claims in the amount of $30,239,464.00. R0239.

The District Court's Preliminary Injunction remained in place for over six months until the remaining defendants brought a Motion to Dissolve the Preliminary Injunction. A hearing on defendants' motion took place on June 17, 2017. R0005. Hours of testimony were heard. Numerous documents were put before the court and placed into evidence. The credibility of the witnesses was assessed. The court then took the matter under advisement. *Id.*

Anticipating that the court was going to deny the Motion to Dissolve, the defendants then improperly removed the case to the United States District court for the Western District of Louisiana. Defendants again moved to dissolve the Preliminary Injunction. The Federal Court denied that motion as premature pending resolution of a Motion to Remand.

While the case was pending in Federal Court, Judge Aucoin issued lengthy and well considered Reasons for Ruling and a Judgment denying defendants' Motion to Dissolve on July 17, 2017. That Judgment remained in abeyance waiting for remand.

United States Magistrate Judge Carol Whitehurst issued a Report and Recommendations in favor of remand on February 14, 2018. R0677-0700. District Judge

Dee Drell of the Western District of Louisiana affirmed the Magistrate Judge's recommendations and ordered the case remanded to the 16th JDC. R0552. He also reprimanded counsel for defendants for their tactics. R0701-0702.

On remand, TPT filed a Motion for Contempt against the defendants for continuing to negotiate contracts with TPT's former customers in the face of the trial court's Preliminary Injunction. A contempt hearing was held on March 26, 2018 resulting in a number of the defendants, chiefly David Crowe, Kenneth Braccio, Arizona Turbine Technology, Inc., Arizona Turbine Technology, LLC and Advanced Turbine Systems, all being found in contempt for violating the court's Preliminary Injunction. R006 and R0728. It was also discussed at that hearing that the Ruling issued by the court on July 17, 2017 upholding the Preliminary Injunction and denying the Motion to Dissolve was not properly entered into the record since it was issued after the Notice of Removal. The court corrected this procedural issue by orally denying the Motion to Dissolve at the hearing and by reissuing its Reasons attached to an Order denying the Motion to Dissolve on April 2, 2018. R0546-0551; R0718-0723. The Order on Contempt was entered on April 9, 2018 with the issue of damages reserved for additional briefing. The Court specifically found the aforementioned defendants in contempt for violating the Court's Preliminary Injunction.

It is from the Judgment of April 2, 2018 denying the Motion to Dissolve the preliminary injunction that defendants appealed. That was the sole issue before the Appellate Court. R0704. Oral argument was held on November 1, 2018.

Defendant Crowe filed for Chapter 11 personal bankruptcy on April 14, 2019. Based upon this, the defendants removed Case No. 130379 for the second time to US District Court designated as Civil Action No. 19-0475 that same day. At that point the automatic stay under 11 USC 362 came into effect.

The United States District Court for the Western District of Louisiana was again faced with deciding whether or not this case should remain in Federal Court or be remanded to State Court. The only basis of federal jurisdiction was the federal bankruptcy filed by defendant Crowe. After considering the issue, the Court, again through Magistrate Judge Whitehurst, found that equitable abstention was appropriate and that the case

should be remanded back to the 16ᵗʰ JDC for its ultimate disposition. Her Report and Recommendations were issued on August 12, 2019. The District Court reviewed the Magistrate Judge's Ruling, affirmed its conclusion for remand and ordered the case remanded on August 26, 2019. The case was remanded to the 16ᵗʰ JDC by the Federal Clerk of Court on August 27, 2019.

At that point the Court of Appeals was free to consider the appeal taken by all of the defendants except Mr. Crowe, who was a debtor in an ongoing bankruptcy proceeding in Arizona. Apparently the Appellate Court did not receive notice of the bankruptcy and went ahead and issued its opinion and Judgment on September 5, 2019. It is from that Judgment that TPT seeks this Writ.

<u>**STATEMENT OF FACTS**</u>[2]

TPT, by and through its co-founder Ted McIntyre, II ("McIntyre") spent over ten years and millions of dollars to fund, design and develop certain proprietary intellectual property, namely turbine engine technology with engine controls (technology) for turbine-powered hydraulic fracturing ("frac") operations. R0992,1000. McIntyre and TPT developed a revolutionary use for military helicopter (Chinook) engines in the oil and gas business. They "industrialized" and substantially modified TF40 and T-55 engines for non-aviation industrial use utilizing multiple types of fuels. R0999-1000. In making such adaptations, McIntyre and TPT had to create a brand new way of controlling such turbine engines for hydraulic fracturing and power generation. In particular, they developed new controls including a digital controller for a hydraulic frac unit using a turbine engine which, up until TPT created it in Franklin, LA at the Port of West St. Mary, had never been done before. R0991. McIntyre and TPT's trade secrets, confidential and proprietary information came from that development of finding a way to control a turbine engine for the fracturing and power generation usage in the oilfield. R0985, 0987-0991. This included controlling the speed of the output of the turbine and managing the system as it applied to constant and variable rates. R0989. TPT found a way to control the engine and pump and developed the

---

[2] The salient facts are taken from the testimonial and documentary evidence relied upon by the trial court below from Plaintiff's Verified Petition and attachments, the January 3, 2017 hearing on Preliminary Injunction, the March 6 2017 hearing on confirmation of default and the June 17, 2017 hearing on defendants Motion to Dissolve. All references are to the appellate record below.

knowledge to do so which no other person in the industry had. R0990-0991. In creating the first turbine driven frac equipment with digital controllers, research and development was undertaken using software and the imbedded information therein. R0994-0995. TPT took an engine that ran at 15,400 RPM and developed a reduction gearbox to control that engine including a brake for a jet engine which was normally free-wheeling. R0999. TPT's control system and proprietary designs enabled TPT to stop the output of the free-wheeling jet engine without a clutch, while the engine was running, which had never been done with a diesel or reciprocating engine. R1000. The information that TPT developed created set points, control shutdowns, bleed bands, closures, operating parameters, bleed valve parameters and the process of running a turbine engine on gaseous fuel, all of which was done at the Port of West St. Mary under TPT's strict supervision. R1003-1004, 1112-1113. This also included system operating parameters, temperatures, acceleration rates and things not known in the industry because this sort of operation had never been done before. R1113, 1118. TPT also developed the Frac Stack Pack (TM) which allowed the placement of the turbine over the top of the hydraulic fracturing pump, allowing TPT to put together two frac units on one trailer for the first time in the industry. R1000. This allowed TPT to develop the smallest footprint for this equipment in the industry. _Id._ TPT also adapted a T55 engine for use in a land speed racing car for Team Vesco. R1132-1134.

TPT granted an exclusive license for the technology to its affiliate company Green Field Energy Services, Inc. ("GFES") to market and employ it in the oilfield. R0096-0101. GFES owned 50% of TPT and was obligated to fund TPT's operations. R0981-0982. Green Field won the World Oil Award for Innovation in 2013 using TPT's licensed technology. R1100.

TPT and Defendant Advanced Turbine Services ("ATS"), executed a Vendor Agreement on October 4, 2011[3]. R0050-0071. ATS agreed to sell TF40 and T-55 engines and hardware for digital engine controls. The Agreement expressly provided _TPT owned all of the resultant intellectual property_. R0064-65. These engines were to be used to run

---

[3] Regarding ownership of intellectual property developed pursuant to the Vendor Agreement, ATS expressly agreed: "TPT shall approve in writing and in advance any changes or modifications to any Remanufactured Turbine Engine (including analog or FADEC Control) or Accessory Equipment, which change or modification affects the form, fit, function or performance of the same. With respect to all changes or modifications paid for and/or funded by TPT under this Agreement, _TPT shall own all "Intellectual Property"_". [Emphasis added.]

5

hydraulic frac equipment for GFES. The Vendor Agreement also provided: "ATS shall, during the term of this Agreement, make available to TPT and/or the end user, ATS expert technicians who are capable and competent in providing expert engineering support and/or expert technical field service and product support with respect to the Remanufactured Turbine Engines and Accessory Equipment." R0065. Per that obligation, ATS supplied the services of Tucson Embedded Systems ("TES"). R0945, 1001-1003. TES executed a Non-Disclosure Agreement with GFES effective June 16, 2013. R0108-0111. This NDA expressly covered affiliates such as TPT, covered TPT's IP exclusively licensed to GFES and remains in effect today. R0111. It also extended to TES employees such as David Crowe.[4] R0111. TES thereafter commenced work for TPT and Green Field as a subcontractor under the Non-Disclosure Agreement (the "TES NDA") *and* the Vendor Agreement. The Vendor Agreement prohibited modification, waiver, or assignment of its terms except by written instrument signed by the party against whom enforcement is sought. R0068. No such instrument was ever executed.

Defendant Kenneth Braccio ("Braccio") became a TPT employee on December 17, 2012. R0105-0107. A Non-Compete clause in the Employment Agreement provides: "During the term of your employment you shall not, either directly or indirectly, act as an employee, employer, consultant, advisor, agent, principal, partner, officer or director, or participate in any activity that is competitive in any manner whatsoever with the activities and business of TPT. Upon your orientation at TPT you will be required to sign a non-disclosure agreement." R0106. Braccio's position[5] required access to TPT's proprietary information. TPT and Braccio executed the "NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT" (the "Braccio NDA") dated January 7, 2013. R0103-0104. Section 2 of the Braccio NDA provides:

> "2.    Employee hereby agrees that the Confidential Information made available to him/her will be used solely for the purpose of performing Employee's employment duties, and that such information will be kept

---

[4] Section 15 provides in part: "This Agreement shall be binding upon each party, its affiliates, respective employees, agents, representatives, successors, and assigns."

[5] "Job Description: As the Vice President – OEM Engine Division, you have various job duties that require flexibility and the ability to manage multiple projects. Near term projects for which you will be directly responsible for include, but shall not be limited to, the development of the T-55, TF-40 and T53 OEM engine initiatives, assistance with gaseous and dual fuel conversions, power generation, employee technical training, sales and marketing, research and development, and any other projects that TPT requires.

confidential by Employee. In addition, without prior written consent of the Company, Employee will not, (1) copy or otherwise reproduce for, or distribute to, third parties, (ii) disclose to any person, by any means (including but not limited to any press release or other public dissemination), the fact that the Confidential Information has been made available to it."

Ultimately, the shale oil and gas market declined significantly, and GFES was liquidated in bankruptcy proceedings in Delaware. The Bankruptcy Court ordered that TPT was/is Green Field's successor, assign, technology licensor and affiliate. In the ensuing chaos of the bankruptcy (valued at over $1 billion dollars), the Defendants attempted to claim ownership of and/or use the frac technology. R0981-0982. The Defendants contacted the purchasers of the GFES equipment, "Eco-Stim" and claimed ownership and/or rights to possess the FracStackPack configuration and confidential engine controls data and technology from the TPT frac project. R1107. Defendants also began to publish news releases stating that they were now in the frac business and had owned and licensed the frac controls technology. R1101-1107.

But for the contracts with and for TPT beginning in 2011, none of the Defendants had previously engaged in any sort of hydraulic fracturing applications whatsoever. R0939. *None of them had any experience with oil and gas operations necessary to design engine controls for turbine powered frac equipment.* R1107, 1113. Nevertheless, despite multiple contracts and documents evidencing that TPT owns the engine controls technology, the Defendants represented *and still* represent to the world that they own the technology for TF40 and T-55 frac equipment and Team Vesco Racing. R1059-1068.

This series of breaches and deceptive acts falls under Section 12 of the TES/Green Field Non-Disclosure Agreement, which protected TPT's exclusively licensed IP and which provides:

> "The receiving party agrees that it would be difficult to measure the damages to the disclosing party from any breach by the receiving party of the obligations set forth herein relating to Proprietary Information, that *injury to the disclosing party from any such breach would be irreparable, and that money damages alone would be an inadequate remedy.* (Emphasis added.) Accordingly, the receiving party agrees that if it should actively and intentionally breach any term of this agreement, the disclosing party may be entitled, in addition to and without limitation of all other remedies it may have, to seek injunctions or other appropriate orders to restrain any such breach, without showing or proving any actual damages." R0110.

Thus it was agreed by David Crowe as then President of TES that such public

dissemination of the IP exclusively licensed by TPT to GFES will cause irreversible harm if not immediately stopped, as confidential information made public cannot be re-made confidential, and waived any objection to injunctive relief.

Braccio materially breached both his employment and non-disclosure agreements with TPT. Braccio provided Crowe, Crowe's new companies (AZTT, Inc. and AZTT, LLC), and Crowe and Braccio's new co-managed companies (including Turbine Integrated Power Systems, L.L.C.) with TPT's proprietary information. Together, the Defendants sought to commercialize it in the Well-Services business, which was forbidden by the Vendor Agreement. [6]

Braccio also breached Section 3 of the NDA by his failure to return confidential engine controls data supplied to him by TPT. Braccio's obligations under the Vendor Agreement and the NDA with TPT were ongoing, as: "All terms, conditions, undertakings and prohibitions contained in this Agreement shall survive the termination of Employee's employment for a period of five (5) years after termination." R0104. As his employment terminated March 7, 2014, Braccio's obligations continued through March 7, 2019. The injunction was ordered in 2017, well within the obligation period.

Section 6 of Braccio's Non-Disclosure Agreement provides:

> "It is further understood and agreed that *money damages would not be a sufficient remedy for any breach* (emphasis added) of this Agreement by Employee, and that *the Company shall be entitled to an injunction and/or specific performance as a remedy for any such breach* (emphasis added). Such remedy shall not be deemed to be the exclusive remedy for a breach of this Agreement, but shall be in addition to all other remedies available at law or in equity."

Braccio thereby waived any objections to this Application for injunctive relief. TPT is relieved from the necessity of offering further proof of irreparable harm.

Crowe and his co-defendants continue to misrepresent themselves as the actual developers and owners of the intellectual property and have been held in contempt for doing so. R0006, 1143. This continues to cause TPT to lose business opportunities and irreversibly injure TPT's reputation. Defendants' tortious interference with TPT's contracts

---

[6] "Use Restriction. Any Turbine Engine which ATS sells, transfers, leases, and/or alienates to any party other than TPT during the term of this Agreement, shall not be utilized in the Well Service Business. ATP shall be responsible for ensuring that this use restriction is contained in and agreed to by any such third party purchaser and ATS shall be responsible for ensuring said third party's compliance with the use restriction." Vendor Agreement, Section VI, Paragraph 4, p. 13.

8

and business relationships poses a risk of immediate and irreversible harm, and prevents present and future business opportunities.

## ASSIGNMENT OF ERRORS

1. The Court below erroneously interpreted LCCP arts. 3607 and 3612 by allowing a *de facto* appeal from the original Order Granting Preliminary Injunction long after the mandatory 15 day deadline expired.

2. The Court below erroneously reviewed the January 5, 2017 original Order Granting Preliminary Judgment, from which no timely appeal was taken, when the *only* judgment appealed by defendants and before the court was the Judgment dated April 2, 2018 denying defendants Motion to Dissolve.

3. The Court below erroneously applied the wrong standard of review, substituting its own decision in place of the trial court, instead of determining whether or not the trial court abused its considerable discretion.

4. The Court below erred by failing to apply the proper burden of proof to defendants under art. 3607 which required defendants to show a change of facts or circumstances in order to dissolve a preliminary injunction.

5. The Court below erred by failing to treat the Motion to Dissolve on its own merit as a separate proceeding apart from the original injunction.

6. The Court below erroneously issued its opinion and judgment pertaining to defendant Crowe and perhaps the other defendants in violation of the automatic stay under 11 USC 362 due to Crowe's filing for US bankruptcy protection.

## SUMMARY OF ARGUMENT

Louisiana Code of Civil Procedure art. 3612 makes it perfectly clear that an appeal must be taken from an order or judgment relating to a preliminary injunction within 15 days of the date of that order or judgment. If no timely appeal is taken, then an appellate court is without jurisdiction to review that order. By reviewing the original order granting preliminary judgment in the case below, when no timely appeal was taken and that issue was not before them, the Appellate Court violated the express provision of art. 3612 and created conflict between the other appellate tribunals in this state. This error then led to the

Case 4:19-bk-04406-BMW   Doc 194   Filed 11/14/19   Entered 11/14/19 15:05:09   Desc
Main Document    Page 72 of 106

Appellate Court employing the wrong standard of review of the trial court's actions and erroneously substituting its perception of the facts from the cold record in place of the trial court's great discretion in assessing the credibility of the witnesses and construing the evidence.

The Appellate court further enlarged its errors by failing to apply the proper burden of proof to the party moving to dissolve an injunction under LCCP art. 3607 and LCCP art. 963, by not treating the hearing of the motion as its own proceeding and by not requiring that party to show a change in facts or circumstances from the original order granting the injunction. The Trial Court correctly held that the mover had the burden of proof under art. 3607 and that they did not meet that burden of proof. It is highly improper for the appellate court to substitute its judgment for the that of the court below. By doing so the appellate court once again created conflict with other courts in Louisiana and also created conflict with the way federal courts construe Fed. R. Civ. P. 65, upon which art. 3607 is based. This has injected confusion into an area of law which until now was uniform.

Finally, the Appellate Court was without jurisdiction to issue any order as to defendant Crowe because of the automatic stay which arose when that defendant filed for Chapter 11 bankruptcy relief.

<u>**ARGUMENT**</u>

## 1. Art. 3612 prohibits any appeal from injunction orders after 15 days from the date such orders were entered

The original order granting the injunction at issue in the case was entered on January 5, 2017. Louisiana Code of Civil Procedure Art. 3612 mandates a 15 day deadline for filing an appeal from the issuance of an Order or Judgment pertaining to a preliminary injunction. In pertinent part it reads:

> C. An appeal from an order or judgment relating to a preliminary injunction ***must*** be taken ... within fifteen days from the date of the order or judgment. (Emphasis added).

The language is mandatory; not conditional. This Court in *Killeen v. Jenkins*, No. 98-C-2675 (La. 11/5/99), 752 So. 2d 146, affirmed that 15 day deadline. All other circuit courts have similarly affirmed the 15 day deadline and have *dismissed* appeals where that

deadline has not been met. E.g., *JODI Props., LLC v. Cochran*, No. 205-1327, 2016 La. App.

Lexis 236 (La. App. 1st Cir. 06/03/16); *Morris v. Transtates Petroleum, Inc.*, 234 So. 2d

243 (La. App. 2d Cir. 1970); *Billedeaux Hearing Center, LLC v. Urban-Knoyann*, No.

2015-653 (La. App 3d Cir. 01/13/16), 182 So. 3d 1280; *Gonsoulin v. Smith*, 360 So. 2d 215

(La. App. 4th Cir. 1978); *Werner Enterprises, Inc. v. Westend Dev. Co.*, 477 So. 2d 829 (La.

App. 5th Cir. 1985).

The defendants below failed to take a timely appeal from the Order granting the

Preliminary Injunction in this matter on January 5, 2017. Eschewing Louisiana law and

citing only the *Corpus Juris Secondum*, the Appellate Court ignored Article 3612 and the

established precedent of this Court and all other courts, including itself, and reviewed only

the evidence of the original Order granting Preliminary Injunction and *not* the defendants'

Motion to Dissolve the Preliminary Injunction. This has created an unnecessary **conflict**

with this Court and the other appellate courts of this state regarding the application of Art.

3612. In effect the court below has usurped the authority of the Louisiana Legislature and

deleted art. 3612 from the Code and has now set a disturbing precedent of essentially

allowing *unlimited time* to appeal an injunction order. This is clear error on the part of the

appellate court and must be overturned.

> 2. The Court below was without jurisdiction to review the original
> injunction order as the only judgment from which defendants appealed
> was the Judgment denying the Motion to Dissolve issued on April 2, 2018.

Defendants sole appeal before the Appellate Court below was from the judgment of

the trial court issued on April 2, 2018. That judgment denied defendants motion to dissolve.

In adopting its Reasons for Ruling dated July 17, 2017, the trial court specifically reviewed

the evidence adduced at the trial on the motion and found that the defendants did not meet

their burden of proof of showing why the injunction should be dissolved.

It is axiomatic that an appellate court can only review the matters brought before it.

There is no provision in the law which grants supervisory jurisdiction to courts for the

purpose of reviewing judgments which have already become final prior to the attempt to

invoke supervisory jurisdiction. *Morris v. Transtates Petroleum, Inc.*, 234 So. 2d 243, 245

(La. App. 2d Cir. 1970). A judgment could hardly be final if it were subject to review *after*

the time for appeal has expired. *Id.* No appeal was taken from the order granting preliminary injunction of January 5, 2017. The Appellate Court below was without jurisdiction to review that order. *Billeaudeaux Hammrud Center, LLC v. Urban-Kingston*, No. 2015-653 (La. App 3d Cir. 01/13/16), 182 So. 3d 1280, 1282; *Family Care Servs. v. Owens*, No. 45,505 (La. App. 2d Cir. 08/11/10), 46 So. 3d 234, 239; *Monsanto v. Smith*, 360 So. 2d 215 (La. App. 4th Cir. 1978); *Morris v. Transtates Petroleum, Inc.*, *supra*.

### 3. The Appellate Court applied the wrong standard of review to the Trial Court

A party is entitled to a preliminary injunction if it makes a prima facie showing that it will prevail on the merits. *Lake Bistineau Pres. Soc., Inc. v. Seales*, 40,583 (La. App. 2 Cir. 2/10/06), 922 So.2d 768, *writ denied*, 06-0620 (La. 5/26/06), 930 So.2d 27.

To be entitled to injunctive relief, therefore, the petitioner is required to offer less proof than is necessary in an ordinary proceeding. *General Motors Acceptance Corporation v. Daniels*, 377 So. 2d 346, 348 (La. 1979); *Burnham Broadcasting Company v. Williams*, No. 93-0409 (La. App. 4th Cir. 12/16/93); 629 So. 2d 1335, 1338; *Federal National Mortgage Association v. Darnell*, 446 So. 2d 395, 399 (La. App. 5th Cir. 1984); *Freeman v. Treen*, 442 So. 2d 757, 761 (La. App. 1st Cir. 1983). Because of this a trial judge is vested with great discretion. *Burnham Broadcasting Company v. Williams*, 629 So. 2d at 1338. His determination should not be disturbed in the absence of manifest abuse of that discretion. *Freeman v. Treen*, 442 So. 2d at 761; *State Through La. State Bd. of Exam'rs of Psychologists of the Dep't of Health & Human Servs. v. Atterberry*, 95-0391 (La. App. 1 Cir. 11/09/95); 664 So. 2d 1216, 1220.

Appellate review of a trial court's issuance of a preliminary injunction is therefore limited; the issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion is shown. *Releford v. Bastrop Mun. Fire*, No. 44,915 (La. App. 2d Cir. 12/09/09), 26 So. 3d 963, 968; *Enter Plastics Fin. Serv., LLC v. Jones*, No. 07-641 (La. App. 5th Cir. 02/06/08), 979 So. 2d 518, 521; *Lake Bistineau Pres. Soc., Inc. v. Seales*, 40,583 (La. App. 2 Cir. 2/10/06), 922 So.2d 768, *writ denied*, 06-0620 (La. 5/26/06), 930 So.2d 27.

It is well settled that a court of appeal may not set aside a trial court's finding of fact

Case 4:19-bk-04406-BMW    Doc 194    Filed 11/14/19    Entered 11/14/19 15:05:09    Desc
Main Document    Page 75 of 106

in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989); *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La. 1978); *Canter v. Koehring*, 283 So.2d 716, 724 (La. 1973).

Appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Rosell*, 549 So. 2d at 844. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*; *Arceneaux, supra* at 1333, *Watson v. State Farm Fire & Casualty Ins. Co.*, 469 So.2d 967 (La. 1985).

Notwithstanding the clear standard of review to be applied in this case, the Appellate Court apparently reviewed the factual record *de novo* and substituted its own factual conclusions for those of the trial court. It made no mention of the standard of review. It did not reverse the trial court on any application of law. It impermissibly reviewed the factual evidence and then limited that evidence to that which could have been brought at the time of the original hearing on preliminary injunction, disregarded the evidence from the trial of the motion to dissolve and painted the trial court as inept by taking a single comment from the trial judge out of context in the middle of the proceedings and *before* all of the evidence and testimony had been taken.[7]

The court below has assessed the credibility of the witnesses, weighed the evidence and found that a prima facie case had been made by TPT and that injunctive relief was appropriate in January, 2017, March, 2017 and June, 2017. Considerable time, resources and effort has been expended by the court in reaching that result. The trial court

---

[7] The stray comment noted by the Appellate Court from Judge Aucoin that he "did not know what those intellectual properties are" came in the middle of the trial on the Motion to Dissolve, before he heard all the evidence, before Mr. McIntyre testified about the set points and other data and processes, and should be limited to that hearing and not be unfairly misinterpreted or taken out of context. Clearly the court made a final determination on that issue when it issued its Reasons for Ruling.

13

painstakingly reviewed all of the documentary exhibits and heard the testimony of Mr. McIntyre at the January 3, 2017 hearing. The court then did so again with regard to finding a default judgment against defendant Kent Ellsworth on March 6, 2017. The court then had a third time to consider its issuance of a preliminary injunction after receiving more documentary evidence and hearing testimony from David Crowe and Ted McIntyre on June 17, 2017. Each time the court determined that injunctive relief was proper.

In his Reasons for Judgment of July 17, 2017, Judge Aucoin outlined the testimony of the witnesses and specifically noted that Mr. McIntyre owns the license for the fracking technology and that the trade secret information he seeks to protect is contained "in the digital controls for turbine fracturing equipment". R0548-49. The court noted that it "took technology developed in house" derived from McIntyre's "work product" to develop a "brake to stop the output shaft"; accomplished "high pressure pumping and water pumping by running engines off speed" and controlled the turbine engine "by how much fuel" is run through it." R0549. This relates back to McIntyre's testimony at the June 17, 2017 hearing discussing all of the steps necessary to adapt helicopter engines for use in oilfield fracking and industrial uses. R0985-1134. The evidence in the record amply supports the court's determinations.

The trial court below also listened to the testimony of Mr. McIntyre and assessed his credibility as to whether or not TPT had intellectual property and whether it was "so closely held" that it "would be lost and if lost, it can never be retrieved." R0550. It is clear that the court believed Mr. McIntyre that the loss of the IP could never be retrieved and that there would also be loss to TPT's business reputation. In upholding the preliminary injunction, the court found that TPT would be "subject to irreparable harm and that they are without an adequate remedy of law and that they are substantially likely to prevail on the merits." *Id.*

The trial court further astutely saw through the shell game of corporate entities and discerned the role of David Crowe as protagonist. R0859, 0971-0973. Judge Aucoin rightly noted that the Defendants did not appear initially to contest the preliminary injunction or object to no bond being set. R0897-0904. The court correctly recognized that Defendants

have repeatedly tried to argue the merits of the case while at the preliminary injunction stage. R0923. The court noted that the injunction is limited and does not extend to the "entire industry". R0924. The court further correctly discovered that Mr. Crowe's experience with turbines prior to working on the TPT project was only in marine and aerospace applications. R0939. Judge Aucoin has carefully considered every twist and turn in this case and has determined a prima facie case has been proved. His great discretion should not be disturbed. The Appellate Court committed grave error when it reversed the trial court without even considering that court's discretion.

**2. The Court below erred by failing to apply the proper burden of proof to defendants under art. 3607 which required defendants to show a change of circumstances in order to dissolve a preliminary injunction.**

La. Code of Civil Procedure Art. 3607, allowing a party to bring a motion for the dissolution of a preliminary injunction, is based in part upon Fed. Rule of Civ. P. 65. Pursuant to Rule 65, a District Court may modify a preliminary injunction **only** in consideration of new facts or a change of circumstances warranting a different outcome than the court's previous issuance of the preliminary injunction. *A&M Records v. Napster, Inc.*, 284 F. 3d 1091 (9th Cir. 2002)( A district court has inherent authority to modify a preliminary injunction in consideration of new facts); *Webster Bus. Credit Corp. v. Evanco Lumber Inc.*, 2009 U.S. Dist. Lexis 25885, 2009 WL 708530 (W.D. Ark. 3/16/09)( In order for the Court to grant dissolution of a preliminary injunction, the movant must show that there has been a change of circumstances warranting a different outcome than the previous issuance of the preliminary injunction); *Pro-Edge L.P. v. Gue*, 419 F. Supp. 2d 1064, 1089 (N.D. Iowa 2006)(on a Motion to Dissolve the moving party much show a change of circumstances, which upon reevaluation, warrants a different outcome).

The Louisiana Third Circuit in *Billedeaux Hearing Center, LLC v. Urban-Kingston*, *supra*, followed that federal interpretation and affirmed the trial court denial of the defendant's Motion to Dissolve on the grounds that the defendant "presented no new change of circumstances to support her Motion to Dissolve." 182 So. 3d at 283. The Trial Court below also followed this interpretation, specifically finding that the "defendants failed to carry their burden of proof" and denied the Motion to Dissolve.

15

The Appellate Court below did not follow these precedents. That court made no mention of the defendants burden and seemed to disregard it altogether. It appears to have improperly reviewed the evidence admitted at the original hearing on the preliminary injunction and impermissibly weighed that evidence. The reversal of the trial court was not based upon an issue of law, but of the review of the facts. This flies in the face of established law and procedure.

In failing to require the defendants to show a change of circumstances in order to prove their motion, or carry any burden of proof whatsoever, the opinion below has created an irreconcilable conflict with the foregoing courts and has created confusion in the law which should not be allowed to stand.

### 5. The Court below erred by failing to treat the Motion to Dissolve on its own merit as a separate proceeding apart from the original injunction

Of the few reported decisions interpreting the procedure to follow when a motion to dissolve is brought under art. 3607, the courts are uniform in finding that a separate hearing or trial on the motion is required.

The oldest case to grapple with the procedure to be used under Art. 3607 is *Allied Navigation Co. v. International Organization of Masters, etc.*, 272 So. 2d 23 (La. App. 4th Cir. 1973). In that case, the court concluded that "the only issue before us is whether the judgment of preliminary injunction should be dissolved under the facts and circumstances of the case *as it stood at the time of the trial on the motion...Id.* at 25. The court did not see a Motion to Dissolve as a procedural vehicle to obtain a new trial on a previous judgment. The court ultimately dissolved the injunction on an application of law, however it set the precedent for how a Motion to Dissolve should be treated.

The next reported case is *River Parishes Fin. Serv., LLC v. Gomes*, No. 07-641 (La. App. 5th Cir. 02/06/08), 979 So. 2d 518. In that case the court noted that the trial court below conducted a hearing on the motion and upheld the original injunction. The court reviewed the circumstances of the case and found "no abuse of discretion in the trial court's refusal to dissolve or modify the injunction." 979 So. 2d at 521.

In *Releford v. Bastrop Mun. Fire*, No. 44, 915 (La. App. 2d Cir. 12/09/09), 26 So. 3d 963, the court reviewed the actions of the trial court in entertaining a Motion to Dissolve

Case 4:19-bk-04406-BMW    Doc 194    Filed 11/14/19    Entered 11/14/19 15:05:09    Desc
Main Document    Page 79 of 106

a Preliminary Injunction and conducting a separate hearing with regard to that motion. Also involved was a hearing on a civil service appeal. The Appellate Court noted that District Court separated the two matters by first hearing arguments on the civil service appeal and then taking evidence and hearing arguments on the Motion to Dissolve. The court found no abuse of discretion in the actions of the trial court and specifically found no merit to the argument that it was error to conduct an evidentiary hearing on the Motion to Dissolve. 26 So. 3d at 968.

The most recent case is *Billedeaux Hearing Ctr., LLC v. Urban-Kingston*, No. 15-653 (La. App. 3d Cir. 01/13/16), 182 So. 3d 1280. In that case the defendant failed to file an appeal on an Order granting a Preliminary Injunction within 15 days. Later the defendant brought a Motion to Dissolve the Preliminary Injunction. The court noted that the defendant was entitled to file her Motion to Dissolve at any time after the issuance of the preliminary injunction, and that it was not improper for the trial court to decide the rule on the merits of the motion. 182 So. 3d at 1283. The court then noted that the defendant presented "no new change of circumstances to support her Motion to Dissolve." *Id*. The trial court was affirmed.

In not following this procedure, the Appellate Court below essentially deleted all of the evidence produced at the hearing on the Motion to Dissolve held before the trial court below on June 17, 2017. The Appellate Court limited its improper review of the facts to the evidence produced at the time of the original hearing on the Preliminary Injunction on January 3, 2017. The Appellate Court apparently fixed on this procedure by reference to the *Corpus Juris Secondum*, and without reference to any Louisiana code, statute or jurisprudence.

In the trial court below, the Motion to Dissolve filed by the defendants was set for hearing under Rule to Show Cause. Pursuant to Louisiana Code of Civil Procedure Art. 963:

> If the Order applied for by written motion is one to which the mover is not clearly entitled, or which requires supporting proof, the motion shall be served on and tried contradictorily with the adverse party. The Rule to Show Cause is a contradictory motion. Under a Rule to Show Cause, it is incumbent on the moving party to produce evidence sufficient to support the relief sought. *Corumia v. Broadhurst*, 584 So. 2d 377, 379 (La. App. 3d Cir. 1991). Thus, a separate hearing which stands on its own is required.

*Caruana v. Broadhurst,* 584 So. 2d 377, 379 (La. App. 3d Cir. 1991). Thus, a separate hearing which stands on its own is required. That means that the defendants below had the burden of "producing evidence sufficient to support" their motion. The trial court properly employed this procedure and found the defendants wanting.

The Appellate Court, however, completely ignored that procedure. Accordingly, the opinion of the Appellate Court below not only creates conflict with other circuits, it contradicts and violates the La. Code of Civil Procedure and its application to Rules to Show Cause on Motions to Dissolve. That opinion must not be allowed to stand.

### 6. The Appellate Court violated 11USC Sec. 362

In fairness to the Appellate Court below, it may prove that defendant Crowe did not give notice of his filing for Chapter 11 Relief under the United States Bankruptcy Code. Nonetheless, defendant Crowe did file for such relief on April 14, 2019.

Louisiana Appellate Courts take heed of the automatic stay under the United States Bankruptcy Code. The filing of a bankruptcy petition operates as a stay of all judicial proceedings. The stay, which is automatic, is effective upon the filing of the Bankruptcy Petition; requires no actual notice or formal service; and lasts for the duration of the bankruptcy proceeding absent modification by the Bankruptcy Court. *Wolf Plumbing, Inc. v. Matthews,* No. 47, 822 (La. App. 2d Cir. 09/25/13), 124 So. 3d 494, 498. The scope of the automatic stay is broad and pertains only against a "debtor". This prohibition, however, has been liberalized in a number of cases where courts have applied the automatic stay protection to non-debtor third parties relying on both the automatic stay provision and the Bankruptcy Court's equitable powers. *Id.* Courts have also extended the automatic stay to non-debtor third parties where stay protection is essential to the debtor's efforts of reorganization. *In Re: Lazarus Burman Associates,* 161 BR 891 (Bankr. EDNY 1993). Courts have also extended the automatic stay to non-bankruptcy co-defendants in "unusual circumstances." *McCartney v. Integra National Bank North,* 106 F. 3d 506 (3d Cir. 1997); *Wolf Plumbing, Inc., supra.* Accordingly, in *Wolf Plumbing,* where the court was concerned about abandonment of causes of action and the application of *contra non valentem,* the court found that the litigation before it was stayed in its entirety, even against

Case 4:19-bk-04406-BMW   Doc 194   Filed 11/14/19   Entered 11/14/19 15:05:09   Desc
Main Document    Page 81 of 106

non-debtors, and would remain that way until relief from the stay was granted by a bankruptcy court. 124 So. 3d at 500. The law does not favor piecemeal appeals. Even if the Appellate Court below did not receive notice of the automatic stay, the stay was in place without regard to such notice. The opinion of the Appellate Court below should not have been issued with regard to Mr. Crowe. So as to avoid piecemeal appeals, the court should not have addressed any parts of the appeal before it until the bankruptcy stay was lifted.

## **CONCLUSION**

TPT presented its case on January 3, 2017, with testimony and documentary evidence. A *prima facie* case was made and the court granted a preliminary injunction on January 5, 2017. No appeal was taken within the deadline set by Art. 3612. The defendants have waived any objections to that relief granted by the court.

When the defendants did contest the injunction by way of a Motion to Dissolve, tried on June 17, 2017, the trial court weighed the evidence, assessed the credibility of the witnesses and upheld its injunction. The trial court found that the defendants did not meet the burden of showing a change in circumstances.

Upon review, the Appellate Court failed to use the proper standard of review, made no determination concerning the trial court's great discretion, impermissibly reviewed the facts of the original hearing of January 3, 2017, impermissibly substituted its own interpretation of the facts for those of the trial court, refused to look at the evidence adduced at the hearing on the motion to dissolve, violated LCCP arts. 963 and 3612, violated the automatic stay under 11 USC 362, and has now created conflicts with this Court, its sister circuits and the federal courts. This confusion needs to be corrected. TPT's Writ should be granted.

## VERIFICATION

I do hereby verify the allegations of the foregoing application and certify that a copy of the application has been mailed or delivered to the respondent judge and to all other counsel, in accordance with La. Sup. Ct. R. X(2)(d), this 1st day of October, 2019 as follows:

Honorable Gregory P. Aucoin
16th Judicial District Judge
500 Main Street, Suite 612
Franklin, LA 70538

Court of Appeal, First Circuit
P.O. Box 4408
Baton Rouge, LA 70821

Mr. Adam G. Young/Mr. John A. Meade
Meade Young, LLC
556 Jefferson Street, Box 7
Lafayette, Louisiana 70501
Telephone: 337-534-0200
agy@meadeyoung.com/jam@meadeyoung.com
**Counsel for Defendants**

Mr. S. Patrick Skiles
Ramsay, Skiles & Streva
1915 Hwy. 182
Morgan City, LA 70380
Telephone: 985-395-9247
pskiles@rss-lawoffice.com
**Counsel for Defendants**

Mr. Thomas T. Townsend
T. Taylor Townsend, LLC
P.O. Box 78
Natchitoches, LA 71458
Telephone: 318-238-3612
taylor@taylortownsendlaw.com
**Counsel for Defendants**

Mr. Matthew James Fantaci/Haley Elizabeth Nix
Carver Darden et al
1100 Poydras St Ste 3100
New Orleans, LA 70163
Telephone: 504-585-3800
fantaci@carverdarden.com /nix@carverdarden.com
**Counsel for TES**

Mr. Ryan M. Goudelocke
Ms. Jessica R. Reaux
Durio, McGoffin, Stagg & Ackermann
P.O. Box 51308
Lafayette, LA 70505
Telephone: 337-233-0300
ryan@dmsfirm.com
**Counsel for Donald I. Foley, Jr. and George Jackson**

20

Mr. Christian S. Chaney
Stanley, Reuter, Ross, Thornton & Alford
909 Poydras St., Suite 2500
New Orleans, LA   70112
Telephone: 504-523-1580
csc@stanleyreuter.com
**Counsel for Kenneth Braccio and Advanced Turbine Services,
LLC (ATS)**

*/s/ D.C. Panagiotis*

---

D.C. PANAGIOTIS

# SUPREME COURT OF LOUISIANA

## NO. _____

### TURBINE POWERED TECHNOLOGY, LLC

### VERSUS

### DAVID CROWE, KENNETH BRACCIO, DANIEL FOLEY, GEORGE JACKSON, KENT ELLSWORTH, ARIZONA TURBINE TECHNOLOGY, INC., ADVANCED TURBINE SERVICES, LLC AND TURBINE INTEGRATED POWER SYSTEMS, LLC

_____

On application for Writ of Certiorari or Review to the Court of Appeal – First Circuit, Granting an Appeal from the Sixteenth Judicial District Court, Parish of St. Mary, State of Louisiana and Rendering Judgment
Docket Nos. 2018-ca-0881 and 2018-cw-0537 and
Docket No. 130379

_____

## -APPENDIX-

# 16TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. MARY

## STATE OF LOUISIANA

DOCKET NO. 130379                                                          DIV. "F"

## TURBINE POWERED TECHNOLOGY, L.L.C.

### VERSUS

## DAVID CROWE, KENNETH BRACCIO, DANIEL FOLEY, GEORGE JACKSON, KENT ELLSWORTH, ARIZONA TURBINE TECHNOLOGY, L.L.C., ARIZONA TURBINE TECHNOLOGY, INC., ADVANCED TURBINE SERVICES, L.L.C. & TURBINE INTEGRATED POWER SYSTEMS, L.L.C.

FILED: **APR 0 2 2018**                                    CHARLENE M. LeBLANC

DEPUTY CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## JUDGMENT

This matter came on for hearing on June 15, 2017, on Defendants' Motion to Dissolve Preliminary Injunction, seeking to dismiss to the Order of this court made and entered on January 5, 2017. The issue was fully briefed. After having heard the arguments of counsel, the testimony of the witnesses and assessing their credibility, and reviewing the evidence presented, the Court took the matter under advisement at the close of the hearing. The Court also reviewed the testimony and evidence submitted at the January 3, 2017 hearing on the Preliminary Injunction.

Being fully advised in the premises, the Court then issued Reasons for Judgment and a Judgment Denying defendants' motion to dissolve on July 17, 2017 finding that the Preliminary Injunction should be maintained and that defendants' failed to carry their burden of proof. That Judgment was called into question by the removal of the case to federal court. That court denied the removal and the case has now been remanded to this Court. In order to clear up any confusion, the Court re-affirms its previous Reasons for Judgment issued on July 17, 2017, a copy of which is adopted and attached hereto and incorporated herein in its entirety, and **IT IS ORDERED** that the Defendants' Motion to Dissolve Preliminary Injunction be and is **DENIED**, with all costs of court assessed against the Defendants.

Done on this 2nd day of April 2018 at Franklin, Louisiana.

SCANNED
APR 0 3 2018

HON. GREGORY P. AUCOIN
16TH JUDICIAL DISTRICT JUDGE

A FACSIMILE OF THIS PLEADING
WAS RECEIVED AND FILED ON

RECEIVED AND FILED

MAR 2 6 2018

APR 0 2 2018

0718

Dy. Clerk of Court

| | |
|---|---|
| TURBINE POWERED<br>TECHNOLOGY L.L.C. | 16TH JUDICIAL DISTRICT COURT |
| VERSUS NO. 130379, DIV. "F" | PARISH OF ST. MARY |
| DAVID CROWE, ET AL | STATE OF LOUISIANA |

**************************************************************

### REASONS FOR JUDGMENT

This matter came before the Court on June 15, 2017, on Motion to Dissolve Preliminary Injunction and For Damages and other motions that were ruled upon by the Court, the Court took under advisement the Motion to Dissolve Preliminary Injunction and For Damages.

Turbine Powered Technology L.L.C. filed suit against David Crowe, Kenneth Braccio, Donald Foley, George Jackson, Kent Ellsworth, Arizona Turbine Technology, L.L.C., Arizona Turbine Technology, Inc., Advanced Turbine Services, L.L.C. and Turbine Integrated Power Systems, L.L.C. for breach of contract, misappropriation of intellectual property, violation of the Louisiana Unfair Trade Practices Act, Louisiana Uniform Trade Secrets Act and other claims after the Defendants misappropriated intellectual property belonging to Turbine Powered Technology, L.L.C. to the benefit of the defendants. Following the filing of the petition, Turbine Powered obtained a Temporary Restraining Order against the Defendants which was made a Preliminary Injunction after a hearing on the matter on January 3, 2017.

Article 3601 of the Louisiana Code of Civil Procedure states in part that an injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law.

The preliminary injunction is designed to and serves the purpose of preventing irreparable harm by preserving the status quo between the parties pending a determination on the merits of the controversy. Schwegmann Bros. G.S. Markets v. Louisiana Milk Com'n, 290 So.2d 312 (La. 1974).

Preliminary injunction is extraordinary remedy that may only be granted if plaintiff establishes four elements: (1) substantial likelihood for success on merits; (2) substantial threat that plaintiff will suffer irreparable injury if injunction is denied; (3) that threatened injury outweighs any damage that injunction might cause defendants; and (4) that injunction will not disserve public interest. Technical Indus. v. Banks, 419 F.Supp.2d (W.D. La. 2006).

Louisiana Code of Civil Procedure 3607 states in part that an interested person may move for the dissolution or modification of a temporary restraining order or preliminary injunction.

SCANNED

1

0546

JUL 20 2017

Case 4:19-bk-04406-BMW    Doc 194    Filed 11/14/19    Entered 11/14/19 15:05:09    Desc<br>Main Document    Page 87 of 106

In the Technical Indus. v. Banks, *supra*, case, the plaintiff claimed that its method, technique, and procedure used to inspect pipe in the oil and gas industry, especially its Visonic TM, are trade secrets under Louisiana Law. The Court considered whether the plaintiff had a legally protectable trade secret, whether an express or implied contractual or confidential relationship existed between parties that obliged party receiving secret information not to disclose it; and whether the party receiving secret information wrongfully breached its duty of trust or confidence by disclosing or using information to plaintiff's injury. LSA-R.S. 51:1432-1433. The Court found that Technical had a trade secret under the law and that Banks engaged in a threatened misappropriation of it trade secret and, thus, Technical had a substantial likelihood for success under the Louisiana Uniform Trade Secrets Act.

At the hearing on the Motion to Dissolve, the Defendants argue that under La. Code of Civil Procedure Art. 3607 the defendants must show that there is no likelihood of irreparable harm, that there is an adequate remedy at law, that the plaintiff cannot prevail on the merits and that there is no bond. Therefore, at issue in this case is whether the requirements for granting an injunction were met at the time of the granting of the injunction.

David Crowe testified that he was not part of the Vendor Agreement between Turbine Powered Technology and Advanced Turbine Systems. However, he does know about portions of the agreement. He did not dispense with the requirements of showing irreparable harm or bond. He testified that Advanced Turbine Systems is an engine refurbishing company in Connecticut that did business with Tucson Embedded Systems. He was not a part of the agreement between Turbine Powered Technology and Kenneth Braccio, the owner of Arizona Turbine. He does know Braccio and has done business with him over the years and knows of the agreement between Turbine Powered Technology and Advanced Turbine Systems but he was not a part of the agreement.

He stated that the Non-Disclosure Agreement between Tucson Embedded Systems and Greenfield did not dispense with the requirement of showing harm or adequate remedy at law. He knew that Greenfield was in bankruptcy and that he worked for Greenfield. He further stated that Greenfield has not placed a demand upon him based upon the agreement nor has Tucson Embedded Systems made a demand upon him about the agreement.

David Crowe testified that he could not work for Vericore without violating the injunction. The injunction concerns the use or conveyance of license and if the injunction holds then he will not be able to get work.

2

0547

SCANNED

JUL 2 0 2017

Appendix p. 003

David Crowe cannot identify the intellectual property in the injunction. There is further no reference to patent or copyrights. However, Tucson Embedded Systems owns the trademark for the Cruz Track controller, which is evidently like the controller used by Turbine Powered Technology. Since David Crowe left Tucson Embedded Systems he no longer uses the Cruz Track controller. If someone made a demand upon him about using the Cruz Track controller, he would stop using it. David Crowe states that the injunction is too broad. He believes that the injunction prohibits him from using controls for fracking in the oil and gas industry.

Crowe states he first met Kenneth Braccio when he worked for Honeywell but they are not business partners and not owners of Arizona Turbine Technology, Inc. David Crowe owns Arizona Turbine Technology, Inc. Arizona Turbine Technology, Inc. performed fracking technology with Eco-Stim in June 2013. Eco-Stim contacted him to re-engineer what was purchased from Greenfield. He worked on pump controls not engine controls.

Crowe is not aware of any damages to Turbine Powered Technology and Ted McIntyre. He did not disclose confidential information gained while employed by Greenfield or Turbine. He sold hydraulic fracturing equipment to Advanced Turbine Systems consisting of turbine engine controls. The sales by Tucson Embedded Systems did not relate to hydraulic fracturing. Crowe and the other defendants do not own Tucson Embedded Systems. He claimed he has worked on the technology since 1989 and he did not gain the technology from Turbine Powered Technology.

Crowe was formerly employed by Tucson Embedded Systems and Tucson Embedded Systems ceased doing business in October 2015. Tucson Embedded Systems wanted to be a part owner of Arizona Technology and he wanted full ownership in company so when he left Tucson Embedded he took full ownership of Arizona Technology and he signed agreements not to take technology from Tucson Embedded Systems. Crowe took the Eco-Stim contract which was proprietary in nature. Crowe gave the contracts with Raytheon and Honeywell to Tucson Embedded Systems. He is not in default with any of the agreements with Tucson Embedded Systems.

The Buyout Agreement states that Crowe was employed by Tucson Embedded Systems from 1997-2015 and that he worked on two projects with Ted McIntyre and Turbine Powered Technology, being IDEC and development of additional controls. He stated the parties developed intellectual property that is not the property of Turbine Powered but of Tucson Embedded Systems.

Ted McIntyre, owner of Turbine Powered Technology, testified that Turbine Powered Technology owns a license for agreement to use the technology and on October 10, 2014 he sent

3

0548

SCANNED

JUL 2 0 2017

a letter to Eco-Stim stating that the equipment purchased from Greenfield by Eco-Stim would not violate Turbine Powered Technology's intellectual property if used "as is."

The intellectual property is for turbine driven hydraulic fracturing in t55 and tf40 turbine engines and t53 engines and power generation in the oil and gas industry. Turbine Powered Technology has been assigned the rights to patent and trademarks for the intellectual property.

McIntyre testified that the claim is not a patent or copyright claim but is for intellectual property for which trade secrets is a part of. He is not suing under trademark rights. The trade secrets in the injunction is continued in the digital engine controls for turbine fracturing equipment. Crowe has violated the trade secrets by advertising on his website that he has the rights to the controls for turbines for oil and gas fracturing. He testified that Turbine Powered Technology is the first and only company to use turbine engines for fracturing in the oil and gas industry.

He stated that David Crowe was operating under a Vendor Agreement and that Crowe filed for patents after he learned the technology from Turbine Powered when he returned to Arizona. In litigation in Arizona, all the patents were assigned to Turbine Powered Technology.

When asked under cross-examination what was involved in taking an engine from aero use to hydraulic fracturing use, McIntyre went to great lengths to explain how the turbine engines work in the hydraulic fracturing use. He stated that the turbine engines consist of two shafts, one compressor and the power turbine which is driven by exhaust gas. In helicopter use, the output shaft rarely stalls and he developed a brake to stop the output shaft. He adapted turbines for non-traditional applications. He does high pressure pumping and water pumping by running turbines off speed. Controlling turbine is through fuel and determine power by how much fuel and it has exhaust going into engine. It took technology developed in house and patents, which are now assigned to him, which were derived from his work product.

On re-direct, David Crowe stated that there is no difference between turbine control in a helicopter and turbine control in fracturing. The difference is the development of a unique controller that uses gas and diesel. He states that it is calculating plungers and how to calculate pump by r.p.m. The controller controls the output on the shaft.

David Crowe states that the injunction impedes his business and that his damages are in the tens of millions of dollars.

The defendants had the burden of proof to show cause why the injunction should be dissolved or modified in this case. The defendants assert that the preliminary injunction seeks to prevent the defendants from competing with Turbine Powered Technology in the hydro-fracking

4

SCANNED

JUL 2 0 2017

0549

marketplace and that Turbine Powered Technology is not at risk of suffering irreparable harm absent the injunction; that Turbine powered Technology has an adequate remedy at law and that they cannot show that they are likely to prevail on the merits. Further the requirement of security has not been met by Turbine Powered.

Whereas, Turbine Powered Technology to maintain the injunction must show that absent the continuation of the preliminary injunction they will be subject to irreparable harm and that they are without an adequate remedy at law and that they are substantially likely to prevail on the merits.

At the hearing, Ted McIntyre testified that should the injunction lapse then the intellectual property that he has so closely held would be lost and if lost it can never be retrieved. Further any income derived from the intellectual property would be lost as well as losses to their business reputation.

In the alternative, the Defendants state that should the injunction stand, then the plaintiff must provide security unless an exception is provided by law. Louisiana Code of Civil Procedure art. 3610 states a preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court, except where security is dispensed with by law.

The Court finds that security is not necessary in this matter as all the agreements sued upon if security was not necessary and, in addition, as in the Technical case, *supra*, because this matter involves trade secrets no security is necessary under the law.

The Court has reviewed the record in this case as well as the testimony and evidence in the hearing on January 3, 2017 when the Preliminary Injunction was issued. Based upon that review and this hearing on the Motion to Dissolve Preliminary Injunction, the Court finds that Defendants failed to carry their burden of proof sufficiently to grant the Motion to Dissolve the Preliminary Injunction. Therefore, the Motion to Dissolve Preliminary Injunction is denied.

The Court assesses cost to Defendants.

DONE AND SIGNED this __17__ day of __July__, 2017, at Franklin, St. Mary Parish, Louisiana.

**GREGORY P. AUCOIN**
**DISTRICT JUDGE**

RECEIVED AND FILED

SCANNED

JUL 2 0 2017

JUL 17 2017

Dy. Clerk of Court

5

0550

Appendix p. 006

| TURBINE POWERED | 16TH JUDICIAL DISTRICT COURT |
| TECHNOLOGY L.L.C. | |
| VERSUS NO. 130379, DIV. "F" | PARISH OF ST. MARY |
| DAVID CROWE, ET AL | STATE OF LOUISIANA |

*****************************************************************************

## JUDGMENT

This matter came before the Court on June 15, 2017, on Motion to Dissolve Preliminary Injunction and For Damages by David Crowe, Kenneth Braccio, Arizona Turbine Technology, Inc., Advanced Turbine Services, L.L.C. and Donald I. Foley.

> PRESENT: Dan C. Panigiotis and Holden Hoggatt, Attorneys for Turbine Powered Technology, L.L.C., and Ted McIntyre with Turbine Powered Technology.
>
> Adam G. Young, John Alden Meade and S. Patrick Skiles, Attorneys for David Crowe, Kenneth Braccio, Arizona Turbine Technology, Advanced Turbine Service, L.L.C. and Donald I. Foley, and David Crowe.

The Court, having heard the arguments of counsel, testimony of witnesses and reviewed the pleadings and memoranda finds in accordance with reasons for judgment filed herein.

IT IS ORDERED, ADJUDGED AND DECREED that the Motion to Dissolve Preliminary Injunction and For Damages is denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that cost in this matter is assessed to Defendants equally.

Done and signed this 17 day of July, 2017, in Franklin, St. Mary Parish, Louisiana.

**GREGORY P. AUCOIN**
**DISTRICT JUDGE**

SCANNED
APR 11 2018

RECEIVED AND FILED

JUL 12 2017

Dy. Clerk of Court

6

0551



Office Of The Clerk
# Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

**Rodd Naquin**
**Clerk of Court**

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

### Notice of Judgment and Disposition

September 05, 2019

Docket Number: 2018 - CA - 0881

Turbine Powered Technology, LLC
versus
David Crowe, Kenneth Braccio, Daniel Foley, George Jackson,
Kent Ellsworth, Arizona Turbine Technology, L.L.C, Arizona
Turbine Technology, Inc., Advance Turbine Services, L.L.C. &
Turbine Integrated Power Systems, L.L.C.

TO:    Diogenis Panagiotis
1540 W. Pinhook Road
Lafayette, LA 70503-3159

Haley E. Nix
1100 Poydras Street
Suite 3100
New Orleans, LA 70163

Holden Hoggatt
Port of West Saint Mary
298 Louisiana Road
Franklin, LA 70538

Jerome B. Supple
200 Willow St, Fl. 2
Franklin, LA 70538-6137

Matthew Fantaci
1100 Poydras St.
Ste. 3100
New Orleans, LA 70163

Adam G. Young
556 Jefferson St., Box 7
Lafayette, LA 70503
agy@meadeyoung.com

John Alden Meade
556 Jefferson St., Box 7
Lafayette, LA 70503
jam@meadeyoung.com

Stephen Patrick Skiles
1915 Hwy. 182 Bayou Vista
Morgan City, LA 70380

Gregory P. Aucoin
612 Courthouse Building
500 Main Street
Franklin, LA 70538

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record, and all parties not represented by counsel.

CLERK OF COURT

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2018 CA 0881

TURBINE POWERED TECHNOLOGY, LLC

VERSUS

DAVID CROWE, KENNETH BRACCIO, DANIEL FOLEY, GEORGE
JACKSON, KENT ELLSWORTH, ARIZONA TURBINE TECHNOLOGY, INC.,
ADVANCED TURBINE SERVICES, LLC AND TURBINE INTEGRATED
POWER SYSTEMS, LLC

and

2018 CW 0537

TURBINE POWERED TECHNOLOGY, LLC

VERSUS

DAVID CROWE, KENNETH BRACCIO, DANIEL FOLEY, GEORGE
JACKSON, KENT ELLSWORTH, ARIZONA TURBINE TECHNOLOGY, INC.,
ADVANCED TURBINE SERVICES, LLC AND TURBINE INTEGRATED
POWER SYSTEMS, LLC

**Judgment Rendered:**   SEP 0 5 2019

* * * * * *

Appealed from the
Sixteenth Judicial District Court
In and for the Parish of St. Mary
State of Louisiana
Suit Number 130,379

Honorable Gregory P. Aucoin, Presiding

* * * * * *

| | |
|---|---|
| D.C. Panagiotis<br>Lafayette, LA | Counsel for Plaintiff/Appellee<br>Turbine Powered Technology, LLC |
| Holden Hoggatt<br>Franklin, LA | |

Adam G. Young
Lafayette, LA

John Alden Meade
New Orleans, LA

S. Patrick Skiles
Morgan City, LA

Thomas T. Townsend
Natchitoches, LA

Counsel for Defendants/Appellants
David Crowe, Kenneth Braccio,
Arizona Turbine Technology, LLC
and Advanced Turbine Services, LLC

\* \* \* \* \* \*

BEFORE: GUIDRY, THERIOT, AND PENZATO, JJ.

2

**GUIDRY, J.**

Defendants/appellants, David Crowe, Arizona Turbine Technology, Inc., Kenneth Braccio, and Advanced Turbine Services, LLC, appeal from a judgment of the trial court dismissing their motion to dissolve a preliminary injunction granted in favor of plaintiff, Turbine Powered Technology, LLC. For the reasons that follow, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Ted Lee McIntyre, II invented a turbine-powered equipment package for hydraulic fracturing, trademarked as the "Frac Stack Pack," which uses helicopter engines to power frac pumps. McIntyre founded and developed several companies involving turbine-powered technology to use in the oil and gas industry. McIntyre granted one of these companies, MTT Properties, LLC (MTTP), the exclusive right to make, have made, use, offer for sale, and sell the Frac Stack Pack.

Additionally, to capitalize on the value of the Frac Stack Pack and turbine-powered frac technology, McIntyre created Green Field Energy Services, Inc., (Green Field) as a fracking operations company. MTTP and Green Field subsequently formed and became members of Turbine Powered Technology, LLC (TPT) to manufacture the Frac Stack Packs. MTTP assigned the Frac Stack Pack intellectual property to TPT.

On September 22, 2011, TPT and Green Field entered into a Turbine Driven Equipment License Agreement, under which TPT granted Green Field an exclusive license to the Frac Stack Pack trademark and an exclusive license to the Frac Stack Pack technology. Pursuant to this agreement, Green Field received the exclusive right to use, sell, lease, and commercialize the Frac Stack Pack equipment purchased from TPT under the agreement. However, TPT did not transfer

3

ownership of the frac intellectual property. During that time, Danny Foley and George Jackson were employees of Green Field.

TPT subsequently executed a vendor agreement with Advanced Turbine Services, LLC (ATS) on October 4, 2011, to provide additional turbine-powered frac equipment to Green Field. Pursuant to the vendor agreement, ATS agreed to provide TPT with TF40 and TF55 turbine engines and digital engine controls (FADEC and/or IDEC)[1] to be used in the frac equipment. ATS procured the digital engine controls hardware from its subcontractor, Tucson Embedded Systems, Inc. (TES), and resold the hardware to TPT. At the time, Kenneth Braccio owned and managed ATS and David Crowe was the President, Director, and majority shareholder of TES. TES subsequently shipped engine controls directly to TPT. TES executed a mutual non-disclosure agreement with Green Field, effective June 16, 2013. Green Field filed for bankruptcy in October 2013, and the bankruptcy proceedings terminated its exclusive license to TPT's intellectual property in the Frac Stack Pack and derivative technology.

On December 17, 2012, Braccio became an employee of TPT and executed a non-disclosure and confidentiality agreement. Crowe subsequently created Arizona Turbine Technology, LLC, for which Kent Ellsworth was the agent for service of process, and Arizona Turbine Technology, Inc. (AZT) to produce and sell turbine-powered frac equipment. Crowe and Braccio subsequently co-founded Turbine Industrial Power Systems (TIPS). (R. 154) Thereafter, in July 2016, Crowe sold his equity in TES back to the corporation. As part of this agreement, Crowe released all interest in properties and contracts of TES, except Eco-Stim

---

[1] FADEC refers to "Fully Authorized Digital Engine Control" and IDEC refers to "Industrial Digital Engine Control."

4

Energy Solutions, Inc., and TES released all claims of ownership or other interest in or relating to AZTTech.[2]

On November 7, 2016, TPT filed a petition for damages and injunctive relief, naming as defendants Crowe, Braccio, Foley, Jackson, Ellsworth, Arizona Turbine Technology, LLC, AZT, ATS, and TIPS. TPT alleged that defendants have usurped and now claim ownership and legal rights in and to TPT's intellectual property, trade secrets, and derivative products. TPT asserted that defendants have no legitimate legal right in or to TPT's intellectual property or derivative intellectual property, including modifications of turbine engine controls for hydraulic fracturing equipment. TPT alleged that defendants publicly and repeatedly represented themselves to be the owners of TPT's proprietary technology and that AZT publicly placed photos and descriptions of TPT's equipment and accomplishments on its website, which is designed to mislead prospective purchasers into contracting with AZT instead of TPT. TPT alleged that as manager of AZT, Crowe has individually, personally, and unlawfully misappropriated TPT's intellectual property, namely digital engine control modifications developed pursuant to and during the term of the vendor agreement between TPT and ATS.

TPT asserted that defendants AZT, Crowe, and Braccio publicly and falsely represented that they and their affiliates own the frac technology developed by and on behalf of TPT and that the misrepresentations have damaged TPT's past, current, and future business contracts and prospects. TPT alleged that Foley, Jackson, Ellsworth, ATS, TIPS, and Braccio participated in and aided and abetted AZT and Crowe's attempted and actual misappropriation.

TPT asserted claims for declaratory relief; breach of contract for breach of the vendor agreement; bad faith breach of contract; intentional and/or negligent

---

[2] AZTTech is defined in the agreement as AZT, LLC; AZT, Inc.; and TIPS.

Appendix p. 013

misrepresentation, detrimental reliance; fraud and fraud in the inducement; violation of Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq.; Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431-1439; criminal liability for business record theft; tortious interference with business relationships; unjust enrichment; breach of fiduciary duty; and injunctive relief in the form of a temporary restraining order, preliminary injunction, and permanent injunction.

TPT also filed an application for a temporary restraining order and for preliminary injunction. TPT asserted that notice would be futile and that security was dispensed with by operation of law, because the vendor agreement and non-disclosure agreement do not include or require applicant to post security and the contracts constitute the law between the parties. The trial court subsequently signed an order granting the temporary restraining order on November 14, 2016. TPT requested service on all named defendants, and a hearing on plaintiff's request for preliminary injunction was set for January 3, 2017. At the January 3, 2017 hearing, following submission of evidence by TPT, the trial court granted TPT's request for a preliminary injunction. Additionally, due to the failure of any of the defendants to make an appearance, TPT moved for a preliminary default against the defendants who had been served.[3] The trial court signed an order granting a preliminary injunction on January 5, 2017, against Ellsworth, Braccio, Arizona Turbine Technology, LLC, AZT, ATS, and TIPS.[4] The trial court also entered a preliminary default against the same defendants and set a hearing to confirm the default judgment for March 6, 2017.

---

[3] According to the record, TPT presented evidence that service had been made on all named defendants except Crowe. Crowe was not served with notice of the petition until after the trial court signed the judgment granting a preliminary injunction.

[4] We note that Foley, Crowe, and Jackson are not named in the order granting TPT's preliminary injunction. Jackson was subsequently dismissed by plaintiff on February 13, 2017; however, in a subsequently filed amended petition, Jackson was again named as a defendant.

6

Crowe, Braccio, Arizona Turbine Technology, LLC, AZT, and ATS thereafter filed exceptions to plaintiff's petition. However, Ellsworth did not make an appearance on the record. Therefore, following the March 6, 2017 hearing to confirm default judgment, the trial court signed a judgment ordering that a judgment of default be entered against Ellsworth and awarding TPT $30,239,464.00 in damages.

On May 26, 2017, defendants Crowe, Braccio, AZT, ATS, and Foley filed a motion to dissolve preliminary injunction and for damages. Defendants asserted that there is no legal or factual basis to support the preliminary injunction, including that TPT is not at risk of suffering irreparable harm absent the injunction; TPT has an adequate remedy at law; TPT cannot show that it is likely to prevail on the merits; and the requirement of security has not been met. The trial court held a hearing on June 15, 2017, on the defendants' motion to dissolve preliminary injunction. The trial court took the matter under advisement and subsequently signed a judgment on July 17, 2017, denying the motion to dissolve.

While the matter was under advisement, the defendants filed a notice of removal, stating that they had removed the action to the United States District Court for the Western District of Louisiana. TPT filed a motion to remand in the U.S. district court, which was granted on February 23, 2018, and the action was remanded to the Sixteenth Judicial District Court. Defendants filed a motion to correct the record, seeking to have the trial court re-date or re-enter a judgment denying defendants' motion to dissolve because at the time the trial court signed the July 17, 2017 judgment, it had been divested of jurisdiction because the case had been removed to federal court. Because the defendants desired to appeal from the trial court's judgment denying their motion to dissolve, they requested that the trial court cure any technical problems in the July 17, 2017 judgment. The trial court, however, denied defendants' motion.

7

Case 4:19-bk-04406-BMW    Doc 194    Filed 11/14/19    Entered 11/14/19 15:05:09    Desc
Main Document    Page 100 of 106

TPT thereafter filed a motion for contempt, claiming that the defendants were in contempt of the trial court's order granting a preliminary injunction in favor of plaintiff. At the contempt hearing, the trial court again ruled on defendants' motion to dissolve preliminary injunction, denying the motion, and subsequently signed a judgment on April 2, 2018, reaffirming its previous judgment denying the motion to dissolve. Crowe, AZT, Braccio, and ATS now appeal from the trial court's judgment. Additionally, Crowe, AZT, Braccio, and ATS have filed an application for supervisory writ of review seeking a stay of the preliminary injunction pending the appeal and expedited assignment of the appeal.

## DISCUSSION

A preliminary injunction is an interlocutory procedural device to preserve the status quo between the parties, pending a trial on the merits. Generally, a party seeking issuance of a preliminary injunction must show that he will suffer irreparable injury, loss, or damage if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits. Marchand v. Texas Brine Company, LLC, 18-0621, pp. 5-6 (La. App. 1st Cir. 1/28/19), __ So. 3d __, __. In making a prima facie showing, the plaintiff is required to offer less proof than is necessary in an ordinary proceeding for permanent injunction. State through the Louisiana State Board of Examiners of Psychologists of the Department of Health and Human Services v. Atterberry, 95-0391, p. 6 (La. App. 1st Cir. 11/9/95), 664 So. 2d 1216, 1220.

"Irreparable injury" is considered to be a loss sustained by an injured party, which cannot be adequately compensated in money damages or for which such damages cannot be measured by a pecuniary standard. Southern Marsh Collection, LLC v. State Traditions, LLC, 17-0459, p. 7 (La. App. 1 Cir. 11/1/17), 2017WL4985217. However, when the plaintiff is alleging that the defendant is

8

acting in direct violation of a prohibitory law, there is no need to prove irreparable harm. Furthermore, a showing of irreparable harm is not required when there is some specific provision of law that otherwise provides such relief. State, through the Louisiana State Board of Examiners of Psychologists of the Department of Health and Human Services, 95-0391 at p. 6, 664 So. 2d at 1220.

Louisiana Code of Civil Procedure article 3607 allows an interested person to move to dissolve a preliminary injunction after providing two days' notice to the adverse party or shorter notice as determined by the court. The sole question to be determined at a hearing to dissolve a preliminary injunction is whether or not, on the facts disclosed, the court should have granted the injunction in the first instance. On a motion to dissolve a preliminary injunction, a trial court should not consider arguments or evidence that could have been raised at the time the preliminary injunction was issued. 43A C.J.S. *Injunctions* § 430 (2019).

In the instant case, Crowe, AZT, Braccio, and ATS assert that because all of TPT's claims against them derive from alleged misappropriation and/or revelation of claimed trade secrets, TPT failed to carry its burden of making a prima facie showing that it is likely to prevail on the merits of its claims because TPT failed to identify a specific trade secret and failed to show irreparable injury. Additionally, Crowe, AZT, Braccio, and ATS assert that the preliminary injunction is invalid because it is overly broad and fails to require a bond.[5]

The Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431 *et. seq.*, prevents one person or business from misappropriating a trade secret developed by another. See Bihm v. Deca Systems, Inc., 16-0356, p. 19 (La. App. 1st Cir. 8/8/17), 226 So. 3d 466, 482. Louisiana Revised Statutes 51:1432 allows a

---

[5] Crowe, AZT, Braccio, and ATS also assert on appeal that the preliminary injunction should be dissolved because it constitutes an impermissible prior restraint on speech. However, this argument was not presented to the trial court, and therefore, it is not properly before this court for consideration on appeal. See Johnson v. Montoya, 13-1951, p. 6 (La. App. 1 Cir. 5/2/14), 145 So. 3d 418, 422.

9

Appendix p. 017

plaintiff to obtain injunctive relief for actual or threatened misappropriation of a trade secret. See B & G Crane Service, L.L.C. v. Duvic, 05-1798, pp. 3-4 (La. App. 1st Cir. 5/5/06), 935 So. 2d 164, 166.

Louisiana Revised Statutes 51:1431(4) defines a "trade secret" as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

"Misappropriation" is defined in La. R.S. 51:1431(2) as:

(a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) used improper means to acquire knowledge of the trade secret; or

(ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(aa) derived from or through a person who had utilized improper means to acquire it;
(bb) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(cc) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

The threshold inquiry in every trade secrecy case is whether a legally protectable trade secret exists. Engineered Mechanical Services, Inc. v. Langlois, 464 So. 2d 329, 333 (La. App. 1st Cir. 1984). Whether something constitutes a

10

Case 4:19-bk-04406-BMW    Doc 194    Filed 11/14/19    Entered 11/14/19 15:05:09    Desc
Main Document    Page 103 of 106

trade secret is a question of fact. Engineered Mechanical Services, Inc., 464 So. 2d at 333.

If the information is found in fact to be a protectable trade secret, it then becomes necessary to determine whether an express or implied contractual or confidential relationship existed between the parties, which obligates them not to use or disclose the secret information. Engineered Mechanical Services. Inc., 464 So. 2d at 333. Finally, the plaintiff must prove the party receiving the secret information wrongfully breached its duty of trust or confidence by disclosing or using the information to the injury of the plaintiff. B & G Crane Service, L.L.C., 05-1798 at p. 4, 935 So. 2d at 167.

In its petition seeking a preliminary injunction, TPT asserted that the trade secrets at issue are the "design, manufacture, and controls for TPT's turbine-powered hydraulic-fracturing pumping equipment … includ[ing] but … not limited to formulas, patterns, compilations, programs, methods, techniques and processes invented and developed by TPT to control turbine engines used in the hydraulic fracturing business for stimulation of oil and gas wells." At the unopposed January 3, 2017 hearing on its request for a preliminary injunction, TPT submitted several documentary exhibits establishing that TPT and its member, Green Field, had entered into several agreements related to manufacturing T55 and T40 engines with digital controls for use in the oil and gas industry. TPT entered into a vendor agreement with ATS to provide TPT with TF40 and TF55 turbine engines and digital engine controls (FADEC and/or IDEC) to be used in the frac equipment. The invoices admitted into evidence confirm that ATS acquired these controls from TES. According to the terms of the vendor agreement, TPT shall own the intellectual property for all changes or modifications paid for and/or funded by TPT under the agreement. However, the express terms of the agreement do not state that it applies to anyone other than TPT and ATS.

11

Appendix p. 019

As a result of its work with TPT, TES executed a TES Mutual Non-Disclosure Agreement with Green Field, who held the license to the frac technology, whereby both parties agreed to maintain the confidentiality of their respective proprietary information, including trade secrets, product design information, technical information, source codes, etc. Braccio, who subsequently became an employee of TPT, also executed a confidentiality agreement with TPT.

TPT also submitted website printouts from MTTP and TPT regarding the Frac Stack Pack units and technology and printouts from Eco-Stim and AZT depicting similar technology. Additionally, TPT submitted a copy of the lawsuit it filed against Energy New Technologies International Corporation for violating a confidentiality agreement it had with TPT regarding the Frac Stack Pack technology and a consent judgment rendered pursuant thereto. Finally, TPT submitted an assignment from TES to TPT of a fifty-one percent interest in US Patent No. 9,429,078 for a multi-compatible digital engine controller, for which Crowe is listed as an inventor and TES is listed as the applicant.

From our review of the evidence submitted by TPT in support of its application for preliminary injunction, we find that while TPT makes broad assertions in its petition regarding its alleged trade secrets, TPT failed to present any testimony or other evidence clarifying these broad assertions. See e.g., Engineered Mechanical Services, Inc. v. Langlois, 464 So. 2d 329, 335-337 (La. App. 1st Cir. 1984). None of the aforementioned evidence sheds any light as to the content of any alleged trade secrets alleged by TPT. Furthermore, to the extent that the information contained in US Patent No. 9,429,078 constitutes a portion of any alleged trade secret, because the information is contained in a patent, it is "generally known to … other persons who can obtain economic value from its …

12

Appendix p. 020

use" and as such, cannot form the basis of any trade secret claim.[6] See La. R.S. 51:1431(4)(a); See Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C., 637 F. 3d 604, 611-612 (5th Cir. 2011).

At the hearing on defendants' motion to dissolve preliminary injunction, the trial court acknowledged that it was still unsure as to what intellectual property was at issue in this case, even after it had already granted TPT's preliminary injunction, commenting that "[TPT is] just trying to protect some intellectual properties, which I do not know what those intellectual properties are." Additionally, McIntyre was unable to give a consistent answer regarding the source of his trade secret claims, providing multiple, differing answers as to what specifically constitutes the alleged trade secrets of TPT.

As such, considering the failure of TPT to make a prima facie showing that it will prevail on the merits of any of its claims related to its alleged trade secrets, we find that the trial court erred in dismissing defendants' motion to dissolve preliminary injunction. Additionally, due to our decision on appeal, we deny the writ application filed by Crowe, AZT, Braccio, and ATS.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court dismissing the motion to dissolve preliminary injunction and remand this matter to the trial court for further proceedings consistent with this opinion. Additionally, we deny the writ application filed by David Crowe, Advanced Turbine Technology, Inc., Kenneth Braccio, and Arizona Turbine Services, LLC. All costs of this appeal are assessed to Turbine Powered Technology, LLC.

**REVERSED AND REMANDED; WRIT DENIED.**

---

[6] TPT asserted at the hearing on the motion to dissolve and in brief on appeal that Crowe improperly filed the patent application after misappropriating their trade secrets. However, this allegation was not contained in TPT's petition or application seeking a preliminary injunction and as such, could not form a basis for the trial court granting the preliminary injunction.

13

Case 4:19-bk-04406-BMW   Doc 194   Filed 11/14/19   Entered 11/14/19 15:05:09   Desc
Main Document      Page 106 of 106